UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 9:18-CR-80153-WPD-2

UNITED STATES OF AMERICA

       Plaintiff,

v.

BALMY LINCOLN JOSEPH,

       Defendant.
_____/

## MOTION TO SUPPRESS SEARCH WARRANTS

### STATEMENT OF FACTS

The DEFENDANT, BALMY LINCOLN JOSEPH, has been charged with conspiracy to possess with intent to distribute one kilogram or more of heroine (Count I); possession with Intent to distribute one kilogram or more of heroin (Count II); possession with intent to distribute cocaine (Count III); possession with intent to distribute heroin (Count IV); in a multi-count indictment along with CO-DEFENDANT DELSON MARC (DE 15).

### THE SEARCH WARRANTS

The initial two search warrants pertinent to this case were executed by the state police officers, related to the search of a four door, black Audi[1]. Agents executed the first warrant, found ammunition in the Audi, and then in an abundance of caution got the second warrant. These two state warrants emanated from a state murder investigation.

The "fruits" of this search discovered, BALMY JOSEPH's fingerprints located inside the black 2009 Audi which contained documents related to apartment 5304 in the Luma Apartment

---

[1] Joseph has standing to contest this search since he had permission from the registered owner of the Audi to drive that vehicle and since his fingerprints and personal items were found in that car. Moreover, there is no question Joseph has standing to suppress the search of his apartment and garage.

Complex, where Mr. Joseph resided under the alias Wilbert Desir. When agents using this information obtained from the Audi, initially relating only to CO-DEFENDANT DELSON MARC went to the Luma Apartment Complex, personnel there who viewed Facebook photographs, depicting DELSON MARC, BALMY JOSEPH and two other individuals immediately identified JOSEPH as the resident of Apartment 5304.

As a result of this discovery on July 18th, 2018 members of the Palm Beach County Sherrif's Office Violent Crimes Division executed a state search warrant at the residence shared by DELSON MARC and BALMY JOSEPH, located at 7120 Okeechobee Boulevard #5304, West Palm Beach, Florida. Agents also executed a separate state search warrant inside the residence's detached garage. BALMY JOSEPH had rented this residence and its detached garage using the stolen identity of Wilbert Desir.

The original search warrants authorized officers to search both the residence and detached garage for documentary and electronic evidence related to the fraudulent use of personal identification information and organized fraud. After discovering narcotics within the residence, officers applied for and received additional narcotics-related search warrants for both the residence and detached garage.

During the search of the residence, agents and detectives located a black laptop bag on the kitchen countertop. Inside the laptop bag, detectives recovered multiple credit cards in the names of several different individuals, two laptop computers, and a credit card scanner. Additionally, agents and detectives recovered approximately 14 grams of cocaine in the left interior pocket of a leather jacket that was hanging in JOSEPH's bedroom closet. Officers also located 59 grams of heroin in the right front interior pocket and lower left exterior pocket of the same leather jacket. In JOSEPH's master bathroom, agents and detectives located a plastic bag containing numerous clear capsules that are used to sell, package, and distribute illegal narcotics.

It is common practice for drug dealers to put heroin in clear capsules for drug distribution. As JOSEPH was being taken into custody, he broke two cellular phones he had in his possession. Based on the investigation, JOSEPH was arrested for the charges of trafficking in heroin, possession of cocaine, possession of a credit card machine, dealing in credit cards of another, trafficking in counterfeit credit cards, and tampering with physical evidence. While searching the residence, agents and detectives also located evidence that DELSON MARC stored in the residence with JOSEPH. Officers located several credit cards and debit cards in the names of several different individuals in MARC's bedroom. Agents also found a backpack in MARC's bedroom with $26,700.00 wrapped in rubber bands.

Officers used a garage clicker located in MARC's backpack to open the door of the attached garage where they located a padlocked freezer chest. Officers then used a key found in MARC's room earlier to open the padlock on the freezer. Inside the freezer officers found (1) a plastic bag containing 818 grams of heroin; (2) a plastic bag containing 737 grams of heroin; (3) a plastic bag containing 636 grams of heroin; (4) a plastic bag containing 521.5 grams of heroin; (6) a plastic bag containing 1014 grams of heroin; (7) a plastic bag containing 633.5 grams of heroin; (8) a plastic bag containing 1020 grams of heroin; (9) a plastic bag containing 27.5 grams of heroin; (12) a plastic bag containing 443.5 grams of heroin; (13) a plastic bag containing 128.5 grams of heroin; (16) a plastic bag containing 177 grams of heroin. In total, the heroin weighed approximately 8,569 grams (8.5 kilograms). Officers also located several ninja and miscellaneous brand blenders containing an unidentified white residue. Each of the heroin bags field-tested positive (see criminal complaint DE1).

After, the execution of the search warrant, Mr. JOSEPH was arrested on July 18, 2018. While being arrested JOSEPH stated that he did not live in the Luma Apartment Complex and stated he was there visiting a friend and was outside waiting for an Uber.

3

DEFENDANT seeks suppression of all items of evidence seized from in the apartment and garage, as well as the suppression of JOSEPH's post arrest statement, based upon the fruit of the poisonous tree doctrine.

DEFENDANT is entitled to suppression because the search of his apartment and garage on July 18th, 2018 are dependent upon the earlier search warrant executed upon the black Audi on July 9th, 2018. Without the information obtained from that search, there would be no basis for the search executed pursuant to the later warrants executed on July 18th, 2018.

## THE SEARCH WARRANTS EXECUTED ON THE AUDI

These search warrants are based upon surveillance and investigation of two vehicles, a Honda Accord, from which the assailants emerged and killed the victim on July 6th, 2018 and a black Audi which allegedly followed the victim on July 6th, 2018, but which was not involved in the shooting.

On July 9th, 2018, during surveillance at 8pm an individual driving a four door black Audi returned to his residence. The Audi was parked, the detectives claim. In plain view they observed an iPhone resting on the drivers sear, marijuana and what appeared to be crack cocaine resting in a plastic bag in the console cup holder. Moreover, the police indicated the search began at 1pm, but the warrants were obtained at a later time[2]. These statements in the warrant are challenged as being false, since the tint of the Audi's windows would have been two dark to permit the detectives to make a visual observation of the vehicle's contents. Moreover, the further assertion by the affiant that "I know human contact with another person on items could possibly (emphasis added) leave behind evidence like fingerprint or DNA evidence," is too attenuated to provide the probable cause necessary for a valid search warrant.

---

[2] Thus the search apparently took place before the warrants were approved.

Furthermore, the second search warrant, based upon the same language after Detectives found a fully loaded black semi-automatic pistol on the driver's floor board, must also be suppressed for the same reasons as those set forth above.

## MEMORANDUM OF LAW

In *Franks v. Delaware*, 438 U.S. 154 (1978), the Supreme Court considered the issue of whether a defendant in a criminal proceeding has the right, under the fourth and fourteenth amendments, to challenge the truthfulness of fictitious statements made in the affidavit supporting a warrant. The Court held that where the defendant makes a substantive preliminary showing that an affiant knowingly and intentionally included a false statement in an affidavit, or made the false statement with reckless disregard for its truth and the false statement was necessary to a finding of probable cause, then constitutional mandate requires that a hearing be held at the defendant's request. There must be a preliminary showing that a material omission or false statement can be proven, not a mere allegation or an unsupported request for a hearing. *United States v. Barsoum*, 763 F.3d 1321, 1329 (11th Cir. 2014).

Here, the allegations relating to a plain view search will be challenged by the DEFENDANT. He can testify that the tint was so dark that no one could see into the vehicle. Moreover photographs demonstrating this fact will be introduced into evidence. The DEFENDANT has standing to contest this search since his fingerprint was found in the Audi.

Once this misrepresentation is eliminated, there is insufficient statements remaining in the warrant to support a finding of probable cause. See *United States v. Cross,* 928 F.2d 1030 (11th Cir. 1991); *United States v Weber,* 808 F.2d. 1422 (11th Cir. 1987); *United States v. Kirk,* 781 F.2d 1498 (11th Cir. 1986); *United States v. Kapordelis,* 569 F.3d 1291, 1308-1310 (11th Cir. 2009); *United States v. Gamory,* 635 F.3d 480 (11th Cir. 2011).

Insofar as the search warrants executed on July 18th, 2018 are concerned which were based upon the above search warrant, a different inquiry is necessary when a search warrant application contains information that was derived from a prior illegal search. In that situation the inquiry is not just whether the remaining information was sufficient to support the issuance of a search warrant, but also whether the police officer would have sought a warrant, had he not been aware of the prior illegal search *United States v. Albury,* 782 F.3d 1285 (11th Cir. 2015); *United States v. Noriega,* 676 F.3d 1252, 1263 (11th Cir. 2012); *Murrary v. United States,* 487 US 533, 542, 108 S Ct. 2529, 101 L. Ed 2d 472 (1988).

Here law enforcement would not have sought the later warrants, nor would they have inadvertently discovered JOSEPH's residence location without the false information contained in the first warrants. Moreover, they would not have been in a position to stop BALMY JOSEPH and have elicited his denial of where he lived but for the first warrant's misrepresentation. As Such this statement is fruit of the poisonous tree and it must be suppressed as well see *Wong Sun v. United States,* 371 U.S. 471, 835 Ct. 407, 9 L.Ed 2d 441 (1963). *United States v. Jones,* 697 F.2d 989 (11th Cir. 1983). *United States v. Drosfen,* 819 F 2d 1067 (11th Cir 1987).

For the foregoing the reasons the fruits of the search warrants and statements derived therefrom in this case must all be suppressed.

Respectfully submitted,

s/ Michael B. Cohen, Esq.

*Michael B. Cohen*

Michael B. Cohen, Esq.
Florida Bar No: 210196

## CERTIFICATE OF SERVICE

IT IS HEREBY CERTIFIED that a true and correct copy of the foregoing was furnished via CMECF E-Filing to all applicable parties on October 25, 2018.

Respectfully submitted,

S/ Michael B. Cohen, Esq.

*Michael B. Cohen*

Michael B. Cohen, Esq.

Florida Bar No: 210196

6400 North Andrews Ave., Ste 505

Fort Lauderdale, Florida 33309

Ph (954) 928-0059

Fax (954) 928-0929