UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 18-80153-CR-DIMITROULEAS(S)

UNITED STATES OF AMERICA

v.

DELSON MARC,

        Defendant.
_____/

## FACTUAL BASIS FOR CHANGE OF PLEA

*If this matter were to proceed to trial, the United States would prove the following facts beyond a reasonable doubt. Delson Marc (hereinafter "defendant" or "Marc") agrees that these facts are sufficient to prove his (Marc's) guilt beyond a reasonable doubt.*

During January 2018, a West Palm Beach detective received information from a past-proven reliable confidential informant (hereinafter "CI") that a person known to him as "Yoo" or "L" was a large-scale heroin distributor. The CI provided a description of, and a phone number for, "Yoo" or "L". The CI reported recently observing "Yoo" or "L" with 4-5 "bricked up" ounces of heroin. The CI also reported that "Yoo" or "L" was associated with a trucking business located in the area of 829 Benoist Farms Road, West Palm Beach. The CI stated that "Yoo" or "L" had bragged about importing large amounts of heroin. The CI provided officers with a description of some of the vehicles known to be driven by "Yoo" or "L".

On January 30, 2018, the West Palm Beach detective traveled to Doerr's Trailers on Benoist Farms Road and attempted to surveille the area. While there, a silver Nissan Altima driven by a person matching the CI's description of "Yoo" or "L" slowly drove by the detective's undercover vehicle. The driver of the silver Nissan Altima appeared to be writing down the undercover vehicle's license plate. The detective terminated surveillance and left the area.

Later on January 30, 2018, detectives directed the CI to place a controlled call to "Yoo" or "L" to set up a meeting. "Yoo" or "L" agreed to meet with the CI at a predetermined location. Detectives who were surveilling the truck yard watched a silver Nissan Altima exit the yard and travel towards the predetermined meeting location. Upon arrival, detectives watched and listened as the CI met with "Yoo" or "L". "Yoo" or "L" instructed the CI that he ("Yoo" or "L") only made "large plays" and would not sell any amount of heroin for less than $300. "Yoo" or "L" also instructed the CI that future references to the "dirt road" meant the tractor-trailer yard, located at 829 Benoist Farms Road. Detectives confirmed that "Yoo" or "L" was the same individual

1

who had earlier counter-surveilled the undercover vehicle. Detectives also confirmed that the person nicknamed "Yoo" or "L" was Delson Marc, an individual well known to local and federal law enforcement as a large-scale heroin dealer.

On January 31, 2018, detectives directed the CI to purchase $300 worth of heroin from Delson Marc. The CI placed a controlled phone call to Marc. The CI reported that he (CI) was on his way to the "dirt road". The CI was searched for narcotics and contraband with negative results. The CI was provided a recording device that allowed the detectives to contemporaneously see and hear the impending drug transaction. Once the CI was five minutes away from the tractor-trailer yard, the CI called Marc. Marc was upset that the CI had kept him (Marc) waiting. Marc indicated that he was already present in a Mustang convertible. Upon the CI's arrival at the tractor-trailer yard, detectives watched Marc exit the passenger side of the Mustang and enter the passenger side of the CI's vehicle. Marc again expressed his displeasure with being kept waiting. Marc then began to count out heroin capsules and gave the capsules to the CI in exchange for $300. Marc stated that the "caps were on fire," indicating that they were potent. Marc then exited the CI's vehicle and returned to the Mustang. The CI left the area and immediately met with detectives. The detectives took custody of the heroin capsules. The heroin field-tested positive and was confirmed to be heroin by the DEA laboratory.

On February 7, 2018, law enforcement attempted to introduce an undercover officer to Delson Marc. The CI was instructed to call Delson Marc to arrange a purchase of $2200 worth of heroin. The CI was issued serialized money and was equipped with a recording device. The CI was searched for narcotics and contraband with negative results. The undercover officer was also equipped with a recording device. Surveillance agents saw a Mercedes vehicle drive towards the predetermined location and conduct two "heat runs" looking for law enforcement. The Mercedes, driven by Delson Marc, then arrived at the location. Marc refused to get out of his vehicle and refused to meet directly with the undercover officer. The undercover officer stood by and watched as Marc handed the informant approximately one ounce of heroin. The informant carried the heroin to the undercover. The undercover then handed $1100 to the informant and told him that Marc would need to meet with the undercover to get the rest of the money. The undercover waived the remaining money at Marc, but Marc refused to get out of the car. Finally, the undercover gave the informant the remaining funds who, in turn, handed it to Marc. The undercover watched as the informant handed the money to Marc. Once Marc received the money, he promptly drove away. Immediately afterwards and in the undercover's presence, Marc called and sent text messages to the informant indicating that he (Marc) was nervous about meeting the undercover. The heroin field-tested positive and was confirmed to be heroin by the DEA laboratory.

On February 22, 2018, the informant contacted detectives to report that he (the informant) had received a phone call from Marc and that Marc planned to stop by the informant's residence. Agents quickly set up surveillance at the residence. They saw Marc arrive and park in the driveway where he met with the informant. During this meeting, Marc gave the informant two heroin capsules and requested that the informant test the quality and strength of the capsules. Marc advised that he would be back shortly. After Marc left, the informant immediately met

2

with agents and turned over the two capsules. Due to time constraints, the informant was not initially equipped with a recording device. After Marc left, agents searched the informant with negative results and gave the informant a recording device. A short time later, Marc returned to the residence. Marc handed the informant a single heroin capsule and told him to test the strength and the quality. The informant entered the residence, waited a few minutes, and then returned to Marc's vehicle. The informant told Marc that the second sample was better than the first sample. Marc stated that "brown" was difficult to get at that moment. Marc discussed some of the additives or "cut" he used with the heroin. After Marc departed the area, agents met with the informant and took custody of the single heroin capsule. The heroin field-tested positive and was confirmed to be heroin by the DEA laboratory.

Thereafter, agents continued to try to attempt additional controlled purchases of heroin from Delson Marc. However, agents were not able to arrange any additional transactions with Delson Marc.

On July 7, 2018, PBSO detectives set up surveillance on a Honda Accord that had been utilized the day before to commit a homicide. The Honda was parked in the parking lot of an apartment complex. Detectives watched to see if anyone would attempt to access the Honda Accord. As detectives watched, a black Cadillac Escalade driven by Delson Marc arrived at the complex. Marc circled the parking lot and eventually parked in a location that allowed him to view the Honda Accord. Detectives surveilled Delson Marc as he (Marc) surveilled the Honda Accord, the vehicle used to facilitate the homicide. At one point, detectives saw Balmy Joseph lean out of the rear passenger-side window.

As detectives watched, Marc drove out of the parking lot and immediately returned, followed by a flatbed tow truck. The tow truck pulled up in front of the Honda Accord. A passenger from Marc's vehicle got out and handed the tow truck driver the key to the Honda. The tow truck driver drove the Honda onto the flatbed. Marc's Escalade then exited the parking lot, followed by the tow truck.



Detectives initiated a traffic stop on the tow truck, and the driver pulled over. When he realized that the tow truck was no longer behind him, Marc circled back to the area. Marc saw the marked police cars and immediately fled the scene at a high rate of speed. Marc and his two passengers, including Balmy Joseph, abandoned the Escalade and fled on foot. Officers located a purple Crown Royal bag containing heroin capsules that were packaged for distribution on the ground next to the abandoned Escalade. Marc and Joseph were able to avoid detection. A second passenger was captured by the K-9. The heroin field-tested positive and was confirmed to be heroin by the DEA laboratory.

Thereafter, detectives and the U.S. Marshals searched for Delson Marc who had an outstanding state warrant for fleeing and eluding. On July 12, 2018, detectives spotted Delson Marc in a car that was adjacent to Marc's recreational vehicle located in Doerr's Trailers, 759 Benoist Farms Road, West Palm Beach. Detectives backed out and waited for backup units to arrive. When additional detectives and the U.S. Marshals arrived, they saw Marc seated in the

front passenger seat of a black Nissan Maxima. The Maxima attempted to flee but was blocked in by other parked vehicles. The driver and backseat passenger fled the Maxima and carried with them a black backpack. Marc remained in the front passenger seat. He was taken into custody on the outstanding warrant and was found to have over $2000 cash and seven cell phones on his person. The next day, July 13, 2018, detectives obtained a search warrant for Marc's recreational vehicle after a narcotics detection K-9 "hit" on the vehicle. Inside Marc's locked RV, detectives found a green plastic shopping bag that was stored in an open area. The bag contained a Springfield Armory, Model XD-40, .40 caliber pistol bearing serial number US411460, approximately six rounds of Barnes .40 caliber ammunition, approximately one round of Speer .40 caliber ammunition, approximately three rounds of Federal .40 caliber ammunition, approximately eight rounds of Winchester .40 caliber ammunition, and dozens of heroin capsules that were packaged for distribution. The heroin field-tested positive and was confirmed to be heroin by the DEA laboratory.

In the days before Marc's arrest, detectives had received a tag reader hit from the Luma Apartment Complex, 7120 Okeechobee Blvd., West Palm Beach, showing that Marc's Escalade was parked in the complex on the morning of July 6, 2018, the day of the homicide. Detectives presented a group photograph of Delson Marc and his known associates to the leasing personnel at the apartment complex. One employee immediately identified Balmy Joseph as the renter of apartment 5304; however, she reported that Joseph utilized the identity of W.D. Leasing records indicated that Joseph had rented the apartment in September 2017, and that he provided W.D.'s actual date of birth, social security number, and driver's license number on the rental application. Detectives interviewed the real W.D., who confirmed that he did not know Joseph and had not given him permission to use his identity. Detectives believe that Joseph rented the apartment utilizing a false name in furtherance of his heroin drug conspiracy with Delson Marc.

On July 18, 2018, officers executed a state search warrant at the residence of Balmy Lincoln Joseph, located at 7120 Okeechobee Boulevard #5304, West Palm Beach, Southern District of Florida. Agents also executed a separate state search warrant inside the residence's detached garage. As officers arrived to execute the search warrant, they saw Balmy Joseph standing outside the rental office. As K-9 officers approached Joseph, he broke two cellular phones he had in his possession. He also denied living in the apartment complex and claimed to be visiting a friend. Officers located the key to apartment 5304 in Joseph's pocket.

The original search warrants authorized officers to search both the residence and detached garage for documentary and electronic evidence related to the fraudulent use of personal identification information and organized fraud. After discovering narcotics within the residence, officers applied for and received additional narcotics-related search warrants for both the residence and detached garage.

During the search of the residence, agents and detectives located a black laptop bag on the kitchen countertop. Inside the laptop bag, detectives recovered multiple credit cards in the names of several different individuals, two laptop computers, and a credit card scanner. Additionally, agents and detectives recovered approximately 14 grams of fentanyl in the left interior pocket of a

4

leather jacket that was hanging in Joseph's bedroom closet. Officers also located 59 grams of heroin in the right front interior pocket and lower left exterior pocket of the same leather jacket. In Joseph's master bathroom, agents and detectives located a plastic bag containing numerous clear capsules that are used to sell, package, and distribute heroin. Based on the investigation, Joseph was arrested for state charges of trafficking in heroin, possession of cocaine, possession of a credit card machine, dealing in credit cards of another, trafficking in counterfeit credit cards, and tampering with physical evidence.

While searching the residence, agents and detectives also located evidence that Delson Marc shared the residence with Joseph. In the western-most bedroom of the residence, agents and detectives located a black backpack containing a black Gucci wallet with Delson Marc's Florida driver's license, prescription bottles in Marc's name, and approximately $26,700 wrapped in rubber bands. On the bedroom floor, agents located multiple key rings containing several different keys, and a garage door remote with a sticker "G303". There were also prescription medicine bottles bearing Marc's name located in the medicine cabinet of the bathroom adjacent to Marc's bedroom. Officers also located a detailed drug ledger and paperwork related to Marc's 2017 arrest and additional correspondence bearing his name in his bedroom. The drug ledger listed the names of the individuals from whom Marc acquired heroin for redistribution and individuals to whom Marc actually distributed heroin.

Officers used the garage clicker (labeled G303) located near Marc's backpack to open the door of the detached garage. Officers saw four Forgiato rims leaning against the garage wall. Officers located a padlocked freezer chest approximately 4 feet by 3 feet wide. Officers used a single key obtained from the larger set of keys found in Marc's room earlier to open the padlock on the freezer. Inside the freezer, officers found kilograms of heroin. Officers also located several ninja and miscellaneous brand blenders containing narcotics residue. All of the narcotics were laboratory tested and confirmed to be heroin, fentanyl, or ketamine. The heroin was determined to have a net weight of 7.24 kilograms. The fentanyl was determined to have a net weight of 122.31 grams. The ketamine was determined to have a net weight of 1.249 kilograms.

During the execution of the search warrants, officers were monitoring Marc's jail calls using the Securus Jail Call Platform. During a call from Marc to telephone number (561) 718-XXXX, utilized by an unknown male ("UM"), Marc asked, "Oh she got it?" UM replied, "Na, I ain't even talking about that, that man, this shit ugly bro." MARC replied, "What's that mean?" UM answered, "Man…. (9 second pause)….full throttle shit, bro." Marc asked, "Whatchu mean?" UM repeated, "Full throttle shit, bro." Marc asked, "The FORGIE'S?" UM affirmed. During this call, agents believe that UM was warning Marc that the police were present at Marc's apartment and garage. Agents know that "FORGIE'S" or "4g's" is common street terminology for Forgiato brand custom rims for tires, the same tire rims that were next to the freezer in which the heroin was located.

A short time later, officers intercepted another jail call placed by Marc to the same (561) 718-XXXX. During this call, Marc stated, "Yeah, I'm just saying, listen, you know for the trucking, umm shit you know we are trying to get it cranked up. But if FOR…if FORGIE if

FORGIE, you know what I mean, it's going to be tough though, bro. You heard me?" UM replied, "You just, you just, you know, you just worry about that, bro. Just worry about the trucking company. And just make sure you take care of my jit, dawg." The conversation continued. Marc then said, "Ok, look, you know how we got the um, (pause)… on the 15th, we were supposed to get reinstated right? But you know, the FORGIE supposed to get that bitch crunk back up, though." UM affirmed. Marc then said, "FORGIE, FORGIE 54 or no?" UM responded, "Man, that shit is all the way loud, bro, it's all the way loud, bro, it's up there." The conversation continued. Marc then instructed, "Say no more, say no more." UM replied, "No bro, it's all the way loud, it's bad, bro." Marc then said, "I'm dead. That's what I'm trying to tell you." UM continued, "Listen bro, once the other party do what he is supposed to do, that's what I'm saying, bro, when you come." Marc interrupted UM and said, "You got to understand, bro, listen to me, bro, you already know how I have been screaming to you, bro, you ain't really said." Marc continued, "Oh man, you not understanding, bro." UM then said, "No, you are not understanding, bro, ok." Marc said, "You gotta understand though homie, listen, if that shit is gone, that means I'm dead, bro."

Officers obtained Marc's DNA standard. His DNA standard was compared with swabs taken from various pieces of evidence in this case. An analysis revealed the following: the DNA swabs from the master lock located on the Haier freezer in which the 8 kilograms of heroin were located contains one contributor. The DNA profile obtained from the swabs is approximately **seven quadrillion, seventy trillion times** more probable if the sample originated from Delson Marc than if it originated from an unknown person.

Delson Marc is a convicted felon, and was so on July 13, 2018. A search of Marc's criminal history reveals the following:

- On March 3, 2017, Delson Marc was convicted of possession of codeine, a 3rd degree felony, case number 15-10859CF10A, in the Circuit Court of the 17th Judicial Circuit in Broward County, Florida.

- On January 20, 2016, Delson Marc was convicted of felon in possession of a firearm, a 2nd degree felony, case number 2015CF001491AMB, in the Circuit Court of the 15th Judicial Circuit in Palm Beach County, Florida.

- On August 8, 2008, Delson Marc was convicted of fleeing or attempting to elude, a 3rd degree felony, case number 2007CF008985AXX (VOP), in the Circuit Court of the 15th Judicial Circuit in Palm Beach County, Florida.

DEA agents consulted with ATF Special Agent Alan Oxley, who has been previously qualified as an expert in the interstate nexus of firearms and ammunition in the Southern District of Florida. S/A Oxley viewed images and a description of the firearm and ammunition that were seized by officers on July 13, 2018 from Marc's recreational vehicle. S/A Oxley determined that the firearm and

6

ammunition were manufactured outside of Florida, and therefore, had traveled in interstate commerce to arrive here.

ARIANA FAJARDO ORSHAN
UNITED STATES ATTORNEY

Date: 11/5/18     By: _____
                      RINKU TRIBUIANI
                      ASSISTANT UNITED STATES ATTORNEY

Date: 11/5/18     By: _____
                      BRADFORD COHEN
                      ATTORNEY FOR DEFENDANT

Date: 11/5/18     By: _____
                      ROBERT BUSCHEL
                      ATTORNEY FOR DEFENDANT

Date: 11/5/18     By: _____
                      DELSON MARC
                      DEFENDANT

7