UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NUMBER 18-80153-Cr-DIMITROULEAS

**UNITED STATES OF AMERICA,**

    *Plaintiff,*

**vs.**

**DELSON MARC,**

    *Defendant.*
_____/

## SECOND MOTION TO WITHDRAW GUILTY PLEA

The Defendant, **DELSON MARC**, by and through undersigned counsel, pursuant to Federal Rule of Criminal Procedure 11(d)(2)(B), hereby files this Second Motion to Withdraw Guilty Plea. In support, the Defendant states:

1. On November 5, 2018, the Defendant, **DELSON MARC** appeared before this Honorable Court for trial. At the time, the Defendant was represented by Robert Melchiorre, Bradford Cohen and Robert Buschel. Mr. Melchiorre had been representing the Defendant since July 25, 2018, which was one day after the Defendant's initial appearance. (Document 9) Robert Buschel entered a Notice of Attorney Appearance on October 4, 2018 (Document 43) and Bradford Cohen entered a Notice of Appearance on October 25, 2018 (Document 55). As court commenced, defense counsel advised the Court that the Defendant had signed a Plea Agreement (Document 92). The Defendant now seeks to withdraw his Plea Agreement and proceed to trial.

2. In the Plea Agreement, the Defendant agreed to plead guilty to count 4 of the Superseding Indictment which charged conspiracy to possess with intent to distribute heroin, count 5 which charged possession with intent to distribute heroin and count 8 which charged possession of a firearm by a convicted felon. In exchange, the government would dismiss counts 1, 2, 3, 6 and

7, each of which charged which charged possession with intent to distribute heroin and Count 9, charging possession of a firearm in furtherance of a drug trafficking crime.

3. When this Honorable Court conducted a plea colloquy with the Defendant, the Court advised him that he was subject to a 20-year minimum mandatory sentence upon each of his guilty pleas to counts 4 and 5 of the superseding indictment (Document 45) based upon the government's filing of a Previous Conviction Information pursuant to 21 U.S.C. §851[1]. This statement by the Court was later rendered erroneous due to a change in the law governing a Section 851 Information which was favorable to the Defendant.

In December 2018, the United States Congress passed the First Step Act, which provided significant federal sentencing reform and had application to the Defendant. Specifically, it amended 21 U.S.C. §841(b)(1)(A)(viii), eliminating the Government's ability to file an 851 Information unless the prior conviction for a felony drug offense was a "serious drug felony or serious violent felony." Consequently, the 851 Information which had been filed against the Defendant for his prior conviction in Broward County Circuit Court for possession of codeine could no longer support an 851 enhancement. As a result, the Defendant was no longer facing a minimum mandatory 20 years in jail on counts 4 and 5. Rather, he was now facing only a 10-year minimum mandatory jail sentence on each count. The Defendant relied upon the advice of then-counsel and the Court in pleading guilty, which was subsequently rendered inaccurate.

4. The Defendant had been repeatedly advised by his attorneys that if he were found guilty the lowest possible total sentence he could receive for counts 4 and 5 would be 20 years in prison. When his then-counsel presented him with the Plea Agreement **on the morning of trial**, the Defendant was advised that if he pled guilty, the government would dismiss count 9 of the

---

[1] Transcript of Calendar Call and Plea Colloquy, November 5, 2018, pp. 5 through 10.

superseding indictment, charging possession of a firearm in furtherance of a drug trafficking crime, which carried a 5-year minimum mandatory sentence which had to run consecutive to any sentence he received on counts 4 and 5. His attorneys also advised him that there would be a joint sentencing recommendation for 20 years as a total sentence, and that is what he would receive from the Court.

5. The change in the law with the enactment of The Frist Step Act had an additional effect on the Plea Agreement which the Defendant signed. At paragraph 10 of the Plea Agreement, the Defendant agreed to waive his right to any decrease in the advisory sentencing guideline range for acceptance of responsibility pursuant to USSG §3E1.1. The Defendant's then-attorneys explained that he would not receive a two-point reduction in his advisory sentencing guidelines range pursuant to U.S.S.G. §3E1.1 for acceptance of responsibility. The Defendant was told that it didn't make a difference because his advisory sentencing guidelines range encompassed a 20-year sentence, and the relinquishment of the two-point reduction for acceptance of responsibility would not affect his total sentence of 20 years minimum mandatory.

6. The above-described advice turned out to be erroneous and detrimental to the Defendant by accepting the plea agreement. The Defendant's advisory sentencing guideline range has been calculated at 262 to 327 months, which is greater than the 240 months (or 20 year minimum mandatory) sentence which induced him to reluctantly accept the plea and waive the two-point downward adjustment for acceptance of responsibility to which he was entitled. Additionally, based upon this advice, the Defendant has waived his right to request a downward variance from the advisory sentencing guideline range and his right to appeal the sentence imposed.

7. The Defendant was originally indicted on August 2, 2018 (Document 15). The Defendant advised his then-counsel that he wanted to proceed to trial, and repeatedly insisted on

reviewing all the discovery provided by the government in his case. On August 16, 2018, the Government filed its Initial Response to the Standing Discovery Order (Document 24). Additional Discovery Responses were provided on September 14, 2018 (Document 34) and September 28, 2018 (Document 42).

8. In the Discovery Response dated September 14, then-counsel for the Defendant was provided with three CDs containing audio and video recordings of drug transactions occurring between the Defendant and a confidential source. Despite repeated requests to personally review the video footage and audio recordings, the Defendant never reviewed this very significant evidence with counsel. The primary reason that the Defendant was unable to observe and review this evidence is because he has been housed in the Broward County Jail which does not have facilities to allow pretrial detained inmates to review audio and video discovery except during visits with their counsel. The only method by which an inmate may review that evidence is to bring in a laptop computer with the permission of the Broward Sherriff's Office and play it during an attorney-client meeting. This option was attempted on one or two occasions, but the defense team's computers were unable to play the audio recordings and video footage for unknown reasons. Nevertheless, the Defendant continued to insist upon seeing that information rather than having to settle for his then-counsel's description. Depriving the Defendant of his right to assist in the preparation of his defense affected his substantial rights.

9. On October 18, 2018, a Superseding Indictment was filed. Prior to the filing of the Superseding Indictment, the Defendant had reviewed some of the paper discovery in the case, but not the audio recordings and video footage. On October 4, 2018 (Document 43) and October 29, 2018 (Document 64) additional discovery was provided. The Discovery Responses describe documentary evidence which was being provided as well as CDs and DVDs containing video

footage, audio recordings and photographs. The video footage which was provided consists in part of in-dash camera footage dated July 7, 2018 and surveillance footage on July 7, 2018.

However, after the Superseding Indictment was filed, the Defendant did not receive from his counsel any additional discovery to review.

10. During the course of his representation by predecessor counsel, the Defendant repeatedly advised them that he wanted to proceed to trial. However, his attorneys were always urging him to plead guilty to the charges and not to go to trial. This caused a rift between the Defendant and then-counsel, as the Defendant's inability to personally review the evidence impacted his trust in his attorneys' preparation of his case for trial and their and advice to plead guilty.

11. On October 26, 2018, ten days before trial was scheduled to commence, the Government filed a Previous Conviction Information pursuant to 21 U.S.C. §851 (Document 57), which doubled the statutory minimum mandatory term that the Defendant was subject to on counts 4 and 5 of the Superseding Indictment from 10 years to 20 years. At some point after that 851 Information was filed, defense counsel explained its implications to the Defendant, and again urged him to accept a plea rather than proceed to trial. During the time period from October 26 to November 5, 2018, the Defendant continued to demand that he be able to review the audio recordings and video footage, to no avail.

12. On November 5, 2018 the Defendant was transported to the Broward County Federal Courthouse for trial. His then-attorneys met with him in the United States Marshal's lockup and presented him with the written Plea Agreement. His counsel advised him that if he pled guilty, he would be sentenced to the 20-year minimum mandatory term required for counts 4 and 5 of the Superseding Indictment and count 8 charging him with Possession of a Firearm by a

Convicted Felon. In exchange, the Government would be dismissing count 9 of the Superseding Indictment at sentencing, which charged the Defendant with possession of a firearm during the commission of a drug trafficking offense pursuant to 18 USC §924(d)(1) which would have subjected the Defendant to a consecutive 5-year minimum mandatory sentence. Additionally, the Government would be seeking dismissal of counts 1, 2, 3, 6 and 7 of the Superseding Indictment at sentencing. However, the Plea Agreement which counsel presented to the Defendant required that he give up any credit for acceptance of responsibility, pursuant to USSG §3E1.1. Finally, the Defendant was advised by his counsel that the Government and the defense would be jointly recommending a sentence of 20 years in prison. Most importantly, the Defendant was advised that he would not ever be able to receive a sentence of less than 20 years in prison, which was the minimum mandatory.

13. The Defendant expressed his frustration to his lawyers, because he had repeatedly insisted upon seeing the evidence which they advised him was "overwhelming," insisted that he wanted to go to trial and did not understand why they were insisting that he plead guilty. Any faith which the Defendant had in his counsel at that time was completely eliminated. The Defendant was now faced with a dilemma: does he proceed to trial with attorneys whom he perceived were unprepared and unwilling to try his case, or does he plead guilty and accept a 20-year prison sentence? Realizing that if he did not plead guilty a trial would commence that day, the Defendant made the decision at the time to accept the plea agreement.

14. When the Defendant appeared before this Honorable Court, he felt forced, pressured and coerced into accepting the plea agreement. The Defendant knew that if he did not answer the Court's questions properly during the plea colloquy that the Court would not accept his

guilty plea and trial would commence. Believing that he had no other choice, the Defendant answered the Court's questions and his guilty plea was accepted.

15.    The Defendant's advisory sentencing guideline range was calculated in the Presentence Investigation Report to be 262 to 327 months. If he had not been forced to give up his right to acceptance of responsibility his advisory sentencing guideline range would be reduced to 210 to 262 months. That could have saved the Defendant 30 months – or 2 1/2 years – in prison at a minimum.

16.    Additionally, if the Defendant had not agreed to the then minimum mandatory 20-year sentence per paragraph 6 of the Plea Agreement, he would have been able to move this Honorable Court for a downward variance from the sentencing guidelines. Due to the agreement which his attorneys pressured him to sign, the Defendant is now precluded from seeking any such relief.

17.    The Defendant is therefore moving to withdraw this guilty plea as a consequence of the favorable change in federal sentencing law enacted as part of the First Step Act, his then-counsel's unwillingness or inability to provide him with all of the discovery in his case, including but not limited to the audio recordings and video surveillance provided in the Government's Discovery Response, and the Defendant's inability to assist counsel in the preparation of a defense and receive affective assistance of counsel at trial.

## **MEMORANDUM OF LAW**

The issue presented to the Court appears to be one of first impression: Whether a plea colloquy affects the substantial rights of the Defendant when the Court instructs him on the minimum mandatory in effect at the time, but a change in the law renders that advice erroneous?

Rule 11(c)(1) imposes upon a district court the obligation and responsibility to conduct a searching inquiry into the voluntariness of a defendant's guilty plea. *United States v. Stitzer,* 785 F.2d 1506, 1513 (11th Cir.), *cert. denied,* 479 U.S. 823, 107 S.Ct. 93, 93 L.Ed.2d 44 (1986). Three core concerns underlie this rule: (1) the guilty plea must be free from coercion; (2) the defendant must understand the nature of the charges; and (3) the defendant must know and understand the consequences of his guilty plea. *United States v. Hourihan,* 936 F.2d 508, 511 n. 4 (11th Cir.1991); *United States v. Bell,* 776 F.2d 965, 968 (11th Cir.1985), *cert. denied,* 477 U.S. 904, 106 S.Ct. 3272, 91 L.Ed.2d 563 (1986); *United States v. Dayton,* 604 F.2d 931, 935 (5th Cir.1979), *cert. denied,* 445 U.S. 904, 100 S.Ct. 1080, 63 L.Ed.2d 320 (1980). If one of the core concerns is not satisfied, then the plea of guilty is invalid. *Stitzer,* 785 F.2d at 1513.

When the court was conducting the plea colloquy with the Defendant, it advised him of the 20-year minimum mandatory he was facing based upon the government filing an 851 enhancement. At the time, it was the correct advice. However, after the plea was accepted but before sentencing the First Step Act was enacted, which resulted in the 851 enhancement being rendered legally insufficient to support the increased minimum mandatory. This also had a "domino effect" on the rest of the Defendant's plea agreement, namely his waiver of a two-point downward adjustment for acceptance of responsibility and the joint recommendation of the defense and government to seek a 20-year sentence. The Defendant submits that his detrimental reliance on the advice of his then-counsel and the favorable change in the law eliminated any knowledge and understanding of the consequences of his guilty plea as explained during the plea colloquy[2]. This development specifically implicates one of the core concerns of Rule 11, rendering the Defendant's plea invalid.

---

2 A guilty plea colloquy is not deficient solely because the district court did not advise a defendant of rights established by *subsequent* judicial decisions or changes in the law. *Cf. United States v. Littlejohn,* 224 F.3d

A defendant may withdraw a guilty plea before a sentence is imposed if he shows a "fair and just reason" for the withdrawal. Fed.R.Crim.P. 11(d)(2)(B) (2003); *United States v. Cesal*, 391 F.3d 1172 (11th Cir. 2004). A pre-sentence motion to withdraw is to be liberally construed, but there is no absolute right to have a guilty plea withdrawn. *United States v. Buckles,* 843 F.2d 469, 471 (11th Cir.1988). To determine whether the defendant has given a fair and just reason for withdrawal, the district court examines the totality of the circumstances, including: "(1) whether close assistance of counsel was available; (2) whether the plea was knowing and voluntary; (3) whether judicial resources would be conserved; and (4) whether the government would be prejudiced if the defendant were allowed to withdraw his plea." *Cesal @ 1179,* citing *United States v. Freixas*, 332 F.3d 1314 (11th Cir.2003).

Fair and just reasons for withdrawal may also include inadequate Rule 11 plea colloquies, newly discovered evidence, intervening circumstances, or any other reason for withdrawing the plea that did not exist when the defendant entered his plea. *United States v. Ortega-Ascanio*, 376 F.3d 879 (9th Cir. 2004); *See United States v. Turner,* 898 F.2d 705, 713 (9th Cir.), *cert. denied,* 495 U.S. 962, 110 S.Ct. 2574, 109 L.Ed.2d 756 (1990) (citing *United States v. Rios– Ortiz,* 830 F.2d 1067, 1068 (9th Cir.1987)). The Defendant submits that enactment of the First Step Act provides the very "fair and just reason" contemplated by the legal standard.

Counsel has been unable to locate an analogous scenario to the case at bar. However, in *United States v. Siegel*, 102 F.3d 477 (11th Cir. 1996) neither the district court nor the government

---

960, at 967-68 (9th Cir.2000)  (finding no error where the district court had no knowledge or reason to know of defendant's prior convictions at the time of the plea hearing, so failed to advise defendant that his sentence could be enhanced based on those convictions). And it is also established that substantive changes in the law do not invalidate guilty pleas. *Brady v. United States,* 397 U.S. 742, 756-58, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970) (holding that the Constitution does not require invalidation of guilty pleas "simply because it later develops that the State would have had a weaker case than the defendant had thought or that the maximum penalty then assumed applicable has been held inapplicable in subsequent judicial decisions")

informed Siegel during the Rule 11 proceedings of the twenty-year maximum sentences that he could receive on counts four, five, and six, that he would be required to serve a five-year mandatory minimum prison sentence if he pled guilty to the offense charged in count seven and the district court failed to advise Siegel that if he pled guilty to count eight he would be required to serve a twenty-year mandatory minimum sentence, to be served consecutively to the sentences imposed on counts one through seven. The court held that the district court's failure to personally inform Siegel of the maximum sentences associated with counts four, five, and six and its failure to personally advise him of the mandatory nature of the penalties associated with the charges contained in counts seven and eight contravene the explicit and unambiguous directives contained in Rule 11(c)(1). Because the district court failed to abide by the unequivocal provisions of this rule, the 11th Circuit concluded that the trial court failed to address Rule 11's core requirement that the defendant be informed of and understand the direct consequences of his plea. "Contrary to the government's contentions, the district court's failure to address this core concern of Rule 11 was not harmless, as there is no evidence in the record from the Rule 11 proceeding which demonstrates that Siegel was aware of these maximum and mandatory minimum penalties on these counts." *Id* @ 482.

The Defendant here is not claiming that the plea colloquy from November 5, 2018 was deficient for failing to advise him of the minimum and maximum sentences. Rather, he is claiming that the colloquy on minimum and maximum sentences by the Court at the change of plea was rendered inaccurate thereby ameliorating the Defendant's understanding of the consequences of his plea. When coupled with the erroneous advice given to him by then-defense counsel, the failure to review very important audio and video evidence with him, his then-counsel's insistence that he plead guilty, waive of acceptance of responsibility and agree to a 20-year sentence it is clear that

the totality of the circumstances significantly affected his substantial rights, and provide a valid reason for withdrawal of the plea.

In the final analysis, the Defendant has presented a just and fair reason for requesting that he be permitted to withdraw his plea. The Defendant did not receive the close assistance of counsel contemplated by the 4-prong test prescribed by the 11th Circuit Court of Appeals. If the Defendant is permitted to withdraw his guilty plea, judicial resources will be used, but only to the extent that a short trial will take place. The codefendant in this case did proceed to trial, which lasted for three days of testimony and arguments. A fourth day occurred for jury deliberations which appear to have been very brief, approximately 30 minutes (Documents 129, 131-133). The government will not suffer any undue prejudice if this case were to proceed to trial, as it involves the same witnesses and evidence which were presented in the trial of the codefendant.

**WHEREFORE**, the Defendant, **DELSON MARC** moves this Honorable Court to grant this Second Motion to Withdraw Guilty Plea.

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on this 4th day of February, 2019, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the following: Rinku Tribuiani, AUSA (Rinku.Tribuaini@usdoj.gov), U.S. Attorney's Office, 500 East Broward Boulevard, Ft. Lauderdale, Florida 33394.

Respectfully Submitted,

**LAW OFFICES OF BARRY M. WAX**
701 Brickell Ave, Suite 1550
Miami, Florida 33131
Telephone:   (305) 373-4400
Facsimile:   (305) 728-5139
Email:       barry@barrywax.com

BY:   /s/ Barry M. Wax.
      Barry M. Wax
      Florida Bar Number 509485