UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 18-80153-CR-DIMITROULEAS(S)(S)

UNITED STATES OF AMERICA

v.

BALMY LINCOLN JOSEPH,

        Defendant.
_____/

**Government's Response to Defendant's Objections to PSI and
Motion for an Upward Variance from the Advisory Sentencing Guideline Range**

The United States of America, by and through the undersigned Assistant United States Attorney, hereby files this response to the defendant's objections to the PSI (DE 171), and moves this Court to impose a sentence above the advisory sentencing guideline range.

**A. First Step Act – Prior Conviction Information**

On October 26, 2018, the Government filed a Previous Conviction Information (hereinafter "Information") pursuant to 21 U.S.C. § 851, based upon the defendant's 2011 felony drug conviction for sale of marijuana within 1000 feet of a school. As a result of this Information, the defendant's statutory minimum sentence increased from 10 years to 20 years.

After the Government filed the Information, and before the defendant proceeded to trial, the First Step Act became law. The First Step Act (hereinafter "Act") narrows the prior drug convictions that qualify as predicate offenses under 21 U.S.C. §§ 841(b)(1)(A) and (B). Previously, any defendant charged with a narcotics-related offense who had a prior conviction for any "felony drug offense" was subject to having his minimum and maximum sentences increased

1

if the government filed a previous conviction information.  A "felony drug offense" was defined as any drug crime with a maximum term of more than one year, regardless of the sentence imposed.

As a result of the Act, the term "felony drug offense" has been replaced by, in pertinent part, "serious drug felony".  A "serious drug felony" includes only felonies with a maximum term of 10 years or more and, in addition, the offense only qualifies if a defendant *served* more than 12 months in prison and was released within the 15 years preceding the commencement of the instant offense.

PSI ¶ 42 lists the defendant's 2011 felony drug conviction for sale of marijuana within 1000 feet of a school, and the defendant's sentence for this charge.  On May 31, 2012, the defendant was sentenced to 30 days in jail, with credit for 5 days. After a series of probation violations, the defendant received a sentence of 364 days in jail, with credit for 243 days.  A review of the defendant's jail record indicates that the defendant actually *served* a total of 360 days for this felony drug conviction.  As a result, the Government concedes that the defendant's 2011 conviction for sale of marijuana within 1000 feet of a school does not qualify as a "serious drug felony" as defined by the First Step Act.

### B. First Step Act - Safety Valve

Under 18 U.S.C. § 3553(f), in sentencing for a drug offense, a court may ignore a statutory mandatory minimum sentence if a defendant meets five specific criteria. In addition, under § 2D1.1(b)(18) of the Sentencing Guidelines, a person who meets the five criteria gets a 2-level reduction in the offense level calculation, regardless of whether he was subject to a statutory mandatory minimum sentence.

2

Previously, the first criterion was that a defendant could not have more than 1 criminal history point. The other criteria were: (2) he did not use or threaten violence, or possess a firearm, during the offense; (3) the offense did not result in death or serious bodily injury to any person; (4) the defendant was not an organizer, leader, manager, or supervisor, and was not engaged in a continuing criminal enterprise; and (5) the defendant truthfully provided to the government all information and evidence the defendant has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan. 18 U.S.C. § 3553(f), U.S.S.G. § 5C1.2.

Section 402 of the First Step Act amends the first requirement and allows some defendants with more than one criminal history point to gain relief under the safety valve. Requirements (2) through (5) are unchanged. Under the new law, a person with up to 4 criminal history points, excluding 1-point offenses, is eligible, with some additional exclusions that are not germane to the defendant's case.

Based on the First Step Act, the defendant's criminal history no longer disqualifies him from receiving the benefit of the safety-valve. However, the defendant has steadfastly refused to provide the Government with a truthful statement containing all information and evidence that the defendant has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan. Therefore, the defendant remains ineligible for safety-valve relief.

As a result of the First Step Act, as to each of Counts One and Two, the defendant faces a mandatory minimum term of imprisonment of 10 years up to a statutory maximum term of life imprisonment, followed by supervised release of at least 5 years up to life, and a maximum fine of $10 million. As to each of Counts Three and Four, the defendant faces a maximum of 20 years

3

imprisonment, followed by supervised release of at least 3 years up to life, and a maximum fine of $1 million. As to Counts One and Two, the defendant's advisory guideline range is 210-262 months imprisonment. As to Counts Three and Four, the defendant's advisory guideline range is 210-240 months imprisonment.

### C. Request for an Upward Variance

Based upon the following factors, as to Counts One and Two, the Court should sentence the defendant to a term of imprisonment above the advisory guideline range:

<u>Nature and circumstances of the offense</u>

Having heard the trial testimony, the Court is well aware that the offenses of conviction are extremely serious in nature. Given the plague of opioid and fentanyl overdoses occurring in South Florida, the presence of over 7 kilograms of heroin, .148 kilograms of fentanyl, and 1.12 kilograms of ketamine in the defendant's residence is alarming. Moreover, although agents seized the narcotics from the defendant on July 18, 2018, common sense dictates that the defendant was engaged in this drug conspiracy for a far greater length of time. Simply put, drug dealers do not begin their criminal activity entrusted by their sources of supply with over $1 million worth of narcotics. Instead, drug dealers work their way up the proverbial totem pole by distributing smaller amounts of narcotics before they are able to distribute this amount of heroin/fentanyl/ketamine. The drug ledger located in co-defendant Marc's bedroom makes clear that the drug conspiracy involved several very high-level drug distributors. The purity levels of the heroin and fentanyl were also notable.

<u>History and Characteristics of the defendant – Identity Theft</u>

As the Court is also aware, the defendant secured the residence in which he and the co-defendant lived by fraudulent means. Not only was this premises used to distribute heroin, it was also used by the defendant to engage in identify theft. Agents recovered in the defendant's kitchen dozens of credit cards and correspondence bearing other names, along with a credit card scanner. Agents also recovered a document listing dozens of individuals and their personal identifiable information. This document was identical to a document recovered from the defendant in 2014, as detailed in PSI ¶ 57.

More specifically, on August 20, 2014, a police officer initiated a traffic stop on the defendant's vehicle. After he smelled marijuana, the deputy searched the defendant's car. The deputy located a semi-automatic handgun and nine (9) unauthorized access devices in the form of pre-paid debit/credit cards. The defendant was a convicted felon and was prohibited from possessing any firearms. On September 25, 2014, state probation officers searched the defendant's residence. They located multiple pieces of notebook paper containing names, dates of birth, addresses and social security numbers, hand-written notes, credit cards and debit cards bearing other names, and seven pages of Tenet Physician Service print-outs containing names, dates of birth, and social security numbers. In all, the defendant possessed 277 items of PII and 37 additional unauthorized access devices in the form of pre-paid debit/cards, some of which were related to the filing of fraudulent tax returns.

The FBI interviewed twelve individuals who confirmed that they did not file tax returns associated with the debit cards in the defendant's possession. Additionally, nine individuals whose PII and pre-paid debit cards were found in the defendant's possession filed identity theft affidavits with the IRS claiming to be victims of tax related identity theft. IRS agents compared

5

the names from the PII in the defendant's possession with filed tax returns and found evidence of fraud. As an example, on June 10, 2014, a tax return was filed for J.D. claiming a refund of $1964.00. On June 18, 2014, the refund was electronically deposited onto a Green Dot electronic card ending in 1811. On June 20, 2014, the same Green Dot electronic card was used to purchase a Western Union money order in the amount of $500 made payable to "Balmy Joseph". On July 22, 2014, the same Western Union money order was deposited into a checking account belonging to the defendant. J.D. confirmed that she did not file the aforementioned tax return.[1]

According to PSI ¶ 45, in July 2016, the defendant utilized a fraudulent driver's license and credit card to attempt to purchase thousands of dollars worth of electronic merchandise. When confronted by law enforcement, the defendant provided a false name. The police officer ultimately found the defendant in possession of additional fraudulent Visa cards.

The defendant's criminal history and conduct in the instant case demonstrate that he is a prolific thief who preys upon innocent individuals. The defendant has no regard for the consequences of his actions or the effect of his crimes on his identity theft victims.

History and Characteristics of the defendant – Possession of Firearms

The defendant's history with firearms dates back to 2011. According to PSI ¶ 50, the defendant was one of multiple individuals who committed a burglary during which the perpetrators stole a firearm. For unknown reasons, this case was later dismissed.

Next, according to PSI ¶ 42, the defendant violated his drug probation by possessing a firearm on September 5, 2013. No additional information is provided about the circumstances of this offense.

---

[1] The facts underlying the IRS investigation were previously disclosed to the defendant. At the upcoming sentencing hearing on March 21, 2019, IRS Special Agent Chris Perham will be present and available for questioning.

6

As previously mentioned, on August 20, 2014, the defendant was found in possession of a semi-automatic handgun.

In November 2017, as PSI ¶ 53 details, the defendant rented a vehicle which he used to stalk the mother of his child. During the course of that offense, as noted in PSI ¶ 58, the defendant's rental vehicle was found to contain a black Glock 19 9 mm pistol which had been stolen during a prior auto burglary. Swabs taken from the firearm were processed for the presence of DNA. The swabs from the handle grip of the firearm show 3 contributors. The DNA profile is twenty-four septillion, seven hundred sextillion times more likely if it originated from the defendant and two unknown individuals than if it originated from three unknown individuals. The swabs from the frame/slide of the firearm show 3 contributors. The DNA profile is 192 trillion times more likely if it originated from the defendant and two unknown individuals than if it originated from three unknown individuals. The swabs from the front site show 3 contributors and the defendant is excluded. The defendant is charged with felon in possession of a firearm in case no. 18-80230-Cr-Marra. That case remains pending.

In July 2018, during the execution of the search warrant in the instant case, agents recovered a single round of ammunition in close proximity to the freezer in which the kilograms of heroin were located. Although no firearm was recovered in the residence, the presence of the ammunition makes clear that the defendants possessed a firearm.

Other 18 U.S.C. § 3553(a) Factors

The defendant poses a significant threat to the safety of the community, through his illicit drug trade, his criminal possession of firearms, and his penchant for committing identity theft. Indeed, the defendant's history of identity theft distinguishes him from his co-defendant. Also,

7

while neither the defendant nor his co-defendant had ever been sentenced to a prison term before engaging in the instant conduct, the defendant had been sentenced to 364 days in jail, while the co-defendant's harshest sentence was a 60-day jail term.  Unfortunately, the defendant's 364-day jail term was insufficient to deter him from engaging in future criminal conduct.  Based on these factors, the defendant should receive a higher sentence than his co-defendant.  The Government respectfully recommends that the Court sentence the defendant to a term of at least 360 months imprisonment.

## Conclusion

In light of the above, the defendant deserves a sentence of no less than 360 months imprisonment.  This sentence takes into consideration the seriousness of the offense, the history and characteristics of the defendant, the need to protect the public, and the need to specifically deter the defendant from committing future crimes.

*Wherefore*, the United States respectfully requests that the Court amend the defendant's PSI to reflect the changes brought about by the First Step Act, and impose a sentence of no less than 360 months imprisonment.

Respectfully submitted,

ARIANA FAJARDO ORSHAN
UNITED STATES ATTORNEY

By:  *s/Rinku Tribuiani*
Assistant United States Attorney
Florida Bar No. 0150990
S. Australian Avenue, Suite 400
West Palm Beach, Florida 33401
Tel: 561-820-8711
Fax: 561-820-8777

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on this day, March 11, 2019, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to received electronically Notices of Electronic Filing.

                  s/ *Rinku Tribuiani*
                  Assistant United States Attorney

## SERVICE LIST

**United States of America v. Balmy Lincoln Joseph**
**Case No. 18-80153-Cr-Dimitrouleas(s)(s)**
**United States District Court, Southern District of Florida**

**Rinku Tribuiani**
Assistant U.S. Attorney
rinku.tribuiani@usdoj.gov
500 Australian Avenue, Suite 400
West Palm Beach, Florida 33401
Tel: 561-820-8711
Fax: 561-820-8777

**Michael Cohen, Esq.**
6400 North Andrews Avenue, Ste. 505
Fort Lauderdale, FL 33309
Tel: 954-928-0059
Attorney for Defendant
Method of Service: CM/ECF