UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF FLORIDA

FORT LAUDERDALE DIVISION

CASE NO. 18-80153-CR-WPD


UNITED STATES OF AMERICA,          .
                                   .
              Plaintiff,           . Fort Lauderdale, Florida
                                   . February 8, 2019
              v.                   . 2:00 p.m.
                                   .
DELSON MARC,                       .
                                   .
              Defendant.           .
. . . . . . . . . . . . . . . .    .


                    -   -   -   -   -

          Transcript of Sentencing Hearing had

     before the Honorable William P. Dimitrouleas,

            United States District Judge.

                    -   -   -   -   -


Proceedings recorded by mechanical stenography, transcript
produced by computer.

FRANCINE C. SALOPEK, OFFICIAL COURT REPORTER
(954)769-5657

**APPEARANCES:**

For the Government:    Rinku T. Tribuiani
                           John J. Parnofiello
                           Assistant U.S. Attorneys
                           500 S. Australian Avenue
                           Suite 400
                           West Palm Beach, Florida  33401

For the Defendant:     Barry M. Wax, Esq.
                           Law Offices of Barry M. Wax
                           701 Brickell Avenue
                           Suite 1550
                           Miami, FL 33131

Court Reporter:        Francine C. Salopek, RMR, CRR
                           Official Court Reporter
                           United States District Court
                           299 E. Broward Blvd., Room 205F
                           Fort Lauderdale, Florida  33301
                           (954)769-5657

- - - - -

| | |
|---|---|
| 1 | <u>**FRIDAY, FEBRUARY 8, 2019, 2:00 P.M.**</u> |
| 2 | *(The Judge entered the courtroom)* |
| 3 | **THE COURT:**  Please be seated. |
| 4 | All right.  *United States vs.* Delson Marc.  If counsel |
| 5 | would announce their appearances for the record. |
| 6 | **MS. TRIBUIANI:**  Rinku Tribuiani and John Parnofiello |
| 7 | on behalf of the United States.  Good afternoon, your Honor. |
| 8 | **MR. WAX:**  Good afternoon, your Honor.  Barry Wax on |
| 9 | behalf of Delson Marc who's present at counsel table. |
| 10 | **THE COURT:**  All right.  We're here for sentencing here |
| 11 | today, but there's a pending second motion to withdraw guilty |
| 12 | plea.  What's your position on that, Mr. Wax? |
| 13 | **MR. WAX:**  Your Honor, we have articulated our position |
| 14 | rather cogently in our written motion.  You appointed me to |
| 15 | represent Mr. Marc about a month ago today if I'm not mistaken, |
| 16 | after you allowed his previous attorneys to withdraw, based on |
| 17 | the differences that arose between them. |
| 18 | And he had filed a pro se motion to withdraw plea, |
| 19 | expressing to the Court reasons why he had wanted to do that, |
| 20 | and they primarily dealt with his relationship with his |
| 21 | predecessor counsel in this case. |
| 22 | Your order denying the motion to withdraw plea was |
| 23 | without prejudice to file an amended motion. |
| 24 | I was unable to meet with Mr. Marc the first week, |
| 25 | because I was in to trial in front of Judge Williams, but I did |

1  see him the following Saturday.  And he was very emphatic about

2  his desire to withdraw his plea.

3       Recognizing that the original motion that had been

4  filed was essentially legally insufficient, I looked for a

5  basis by which he would be able to obtain the relief that he

6  was requesting.  And the one area that I could see was the

7  change in the law that took place between the time he pled

8  guilty and the date when sentencing had been scheduled.

9       And that was necessarily the FIRST STEP Act's

10  elimination of the ability of the government to use a simple

11  possessory drug offense as a predicate for an enhancement under

12  21 U.S.C. Section 851.  And so the FIRST STEP Act, which was

13  that change in the law, actually had the effect of rendering

14  the 851 enhancement filed in this case into a nullity, because

15  it was based --

16       **THE COURT:**  What that does is it gives me the

17  discretion to sentence below 20 years.

18       **MR. WAX:**  That's correct, your Honor.  You've actually

19  isolated the issue.  Because during the plea colloquy, based on

20  the 851 information that had been filed, there was no lower

21  sentence than 20 years.  And so your Honor, in the plea

22  colloquy, was establishing that Mr. Marc understood that.  And

23  that he understood that --

24       **THE COURT:**  I mean doesn't that kind of work the other

25  way?  If he would have been told that he was facing a 20-year

```
 1   mandatory minimum, and he relied on that and said I don't want
 2   20 years and he went to trial, and he got convicted, and then
 3   it turns out that the information was erroneous, that he could
 4   have, you know, only had a ten-year mandatory minimum, and had
 5   he known that, he wouldn't have gone to trial, he would have
 6   pled guilty, I can see that rational in that situation.  I'm
 7   having a tough time understanding it when it's the other way
 8   around, when the change in the law only would benefit possibly
 9   Mr. Marc.
10        MR. WAX:  Yeah.  And I've had that discussion, your
11   Honor.  And I've wrestled with that.  Because what you've done
12   is basically carved that out of the argument.
13        When you look at that in isolation, in a vacuum, so to
14   speak, it seems as if that's the rational understanding, the
15   rational analysis.  The law favored you, you're in a better
16   position than when you started.  And he actually is or would
17   be -- he's not because of his plea agreement, which binds him
18   to a 20-year recommendation.
19        THE COURT:  Well, it binds him to a 20-year
20   recommendation; it doesn't bind me to a 20-year sentence.
21        MR. WAX:  That's correct.  But it precludes us, for
22   instance, for arguing for a variance.  I can't do that, so I
23   would have to relay on your Honor --
24        THE COURT:  But I could do that on my own.
25        MR. WAX:  You could do that on your own, but --
```

```
1            THE COURT:  Who knows, maybe the government would
2     agree --
3            MR. WAX:  Well --
4            THE COURT:  -- that you could argue the variance based
5     on the change of the law.
6            MR. WAX:  And I had that conversation with
7     Ms. Tribuiani and it was -- and we actually anticipated that
8     your Honor might say, okay, Mr. Wax, I'm gonna release you from
9     that condition of your plea agreement, and you can now allocute
10    for a sentence below 20 years.
11            And as Ms. Tribuiani put it, though, it would have to
12    be fair where the government would be able to argue for a
13    sentence of more than 20 years.  I don't think your Honor would
14    be able -- in the interests of fairness, give me that
15    advantage.  If you were to take it, of course, I would accept
16    it.  But be that as it may, you have to look at the change in
17    the law --
18            THE COURT:  I think the government has a point, that
19    is, they eliminated the 924(c) count, which would have had a
20    five-year mandatory minimum consecutive --
21            MR. WAX:  Um-hum.
22            THE COURT:  -- and in return for that, they wanted at
23    least a minimum sentence of 20 years to be recommended.
24            So, if they're gonna say, you can argue for less than
25    20 years, why wouldn't it be fair to say that they can argue
```

1   for more than 20 years?

2         **MR. WAX:**  Oh, I'm not saying it wouldn't be fair.  I'm

3   saying that I think that fairness dictates that result.

4         **THE COURT:**  So, they're agreeing -- Ms. Tribuiani,

5   you're in agreement on that, that if you could argue for more

6   than 20 years, then Mr. Marc can argue for less than 20 years.

7         **MS. TRIBUIANI:**  Your Honor, I am.  Of course, I need

8   to argue in favor of the finality of plea agreements.  Having

9   said that, if the Court is inclined to release Mr. Wax from

10  that provision, then I would ask the Court also to release me

11  from that provision.

12        **MR. WAX:**  And here's the issue, Judge.  I'm a rather

13  prepared attorney.  I try to do everything I can to come into a

14  courtroom fully loaded and ready to go.  And I have put this

15  case and given it great priority because of the time frames

16  that I've had.

17        I'm not prepared today to argue for a variance.  I

18  could do it, but it wouldn't be the type of argument that I'm

19  used to making.

20        I have not -- I have focused my energies in this case

21  on the motion to withdraw the guilty plea, and objections to

22  the presentence report.  Not on anything more than that.  And

23  candidly, your Honor, I have not even had the opportunity to

24  review the discovery in this case, because I've relied upon

25  what I learned from my review of the presentence report, the

1  factual proffer that was agreed to by the parties and those

2  things that enabled me to come to this point.

3      I think that the Court's offer, if that is in fact

4  what it is, is a generous offer and if the Court is inclined to

5  decline the offer to plea, and then release us from the joint

6  recommendation contained in the plea agreement, then I would

7  just ask for more time to prepare for sentencing and be able to

8  effectively argue that.

9      **THE COURT:** Well, I'm not going to release anybody

10  from anything.  The government can take a position with you

11  that they're not going to object to arguments from below the

12  guidelines.  And you can take a position with them,

13  strategy-wise, that you're not going to object.  And I rule on

14  objections.  But I'm not gonna involve myself into the plea

15  negotiations and tinker with the plea negotiations.  You guys

16  can agree to whatever strategy you want to utilize at this

17  sentencing hearing.

18      **MR. WAX:** And I would have to discuss that with my

19  client, your Honor, and see if that would be something that he

20  would be willing -- in the event that your Honor is going to

21  deny this motion.  My client prays that the Court grants his

22  motion, because as he had said -- as we articulated in the

23  motion, and as he has said, he has always wanted to proceed to

24  trial.

25      **THE COURT:** He sure didn't say that during the change

1    of plea.

2         **MR. WAX:**  And, you know, your Honor, I understand

3    that.  You know, I've spent -- I've had three lengthy meetings

4    with Mr. Marc.  I think that I have a good understanding of his

5    perspective on this matter.

6         When you look at the argument that I've made, the next

7    to the FIRST STEP Act argument and you put it together with his

8    complaints about his attorney, really what it all came down to

9    is he felt he had no choice but to plead guilty.  He felt his

10   lawyers were not prepared for trial.  He hadn't seen the visual

11   evidence, the audio and video evidence that he wanted to see,

12   that he insisted on seeing because of how important it was to

13   the trial.  And it all seemed to create the perfect storm.

14        I know from experience, watching people and

15   representing people and standing next to people when they are

16   colloquied by the Court, how the trappings of the courtroom,

17   and the formalities can intimidate people.  And for better or

18   for worse, you know, Mr. Marc felt that he had to plead guilty

19   at that time, and --

20        **THE COURT:**  This wasn't a state court change of

21   plea --

22        **MR. WAX:**  I know.

23        **THE COURT:**  -- where the lawyer has the client initial

24   a bunch of rights and it's a five-minute change of plea.  This

25   was a sixty-page transcript.  And at one point, I told him, if

1  I decide that this plea is free and voluntarily made, it would

2  be very unlikely that he would ever be allowed to withdraw his

3  plea.  In that event, I would just ask the court reporter for a

4  transcript and probably deny a request to withdraw the plea.

5       I mean, why should I go through all the trouble of

6  satisfying myself that something's done freely and voluntarily

7  only to have someone come back a month, two months, whatever,

8  later, and say I changed my mind, it wasn't voluntarily, and I

9  didn't understand what was going on when I gave answers under

10 oath that are different from what I'm saying now.

11      **MR. WAX:**  And I don't think that, you know, candidly,

12 your Honor, I'm not certain that there's a good answer for that

13 from the defense.

14      The truth of the matter is, your Honor, I read that

15 transcript many times.  There were many times that you said

16 statements similar to the one that you just recited.  I think

17 early on in the colloquy, you even said it's unlikely that I'll

18 let you wiggle out of the plea.  I think that was some of the

19 language you used also, so --

20      **THE COURT:**  Usually I talk about the government

21 wiggling out of acceptance of responsibility, but we probably

22 didn't get to that in this case, because there wasn't any

23 acceptance.

24      **MR. WAX:**  And that's another issue that came to the

25 fore for Mr. Marc.  You know, I didn't understand how it was

1   possible that he was deprived of the two levels of acceptance

2   that he's entitled to.

3        **THE COURT:**  He's not entitled to it, when the jury's

4   down the hall and we're about to pick a jury --

5        **MR. WAX:**  No, the two levels he wouldn't be precluded.

6   The third level he would be precluded from, but --

7        **THE COURT:**  The third level he's precluded if the

8   government doesn't make the motion and their failure to make

9   the motion's are in a bad faith or unconstitutional grounds.

10  But even the two levels can be denied.  They don't have to be

11  denied, but they can be denied, because it's not -- it's not

12  preventing the government for having to expend resources.

13       And when you plead in the morning at trial, when you

14  tell the government on a Sunday before the jury's coming in

15  that you're gonna sign a plea agreement, I think the Court can

16  deny acceptance of responsibility.

17       **MR. WAX:**  Perhaps, your Honor.  My personal

18  experience, in all the years that I've been dealing with this

19  since the guidelines were enacted, is that -- and I've had

20  clients plead on the morning of trial, too -- is that the

21  acceptance is a major inducement to do that.

22       What happened here is I don't think anyone anticipated

23  that his guidelines would be above 20 years.  We are in a range

24  of 262 to 327 right now.  The joint recommendation contemplated

25  by the plea agreement is 240, which is two levels less.  It's

```
1    actually one level less, if you go one level down.
2            If he had gotten his acceptance of responsibility, he
3    would be in that level.  And 240 was squarely in the middle of
4    that level.  And that's what he bargained for.
5            A lot of the result of Mr. Marc's wanting to withdraw
6    his plea was based upon the PSR coming back higher than his
7    lawyers had calculated the guidelines --
8            THE COURT:  I thought the PSR --
9            MR. WAX:  -- with.  That happens.
10           THE COURT:  I thought the PSR came back initially
11   offense 34, criminal history category IV for a range of 210 to
12   262, but then it went up two levels because of the fleeing.
13           MR. WAX:  Correct.
14           THE COURT:  Okay.
15           MR. WAX:  It went up two levels because of the
16   fleeing.
17           THE COURT:  Right.
18           MR. WAX:  But the PSR that I've read that I was
19   provided by Mr. McKinney from probation was the one that's at
20   level 36, 262 to 327.
21           THE COURT:  Wasn't there one before that --
22           MR. WAX:  I'm not aware.
23           THE COURT:  -- that was level 34?
24           MS. TRIBUIANI:  Yes, your Honor, there was.  The draft
25   PSI indicated that Mr. Marc was going to be 210 to 262.  At
```

1   that point he filed his first pro se motion to withdraw his

2   plea.

3          **THE COURT:**  I think at the time he filed the motion to

4   withdraw the plea, the PSI, I was coming out 210 to 262, but

5   because of the 20-year mandatory minimum, it was 240 to 262.

6          **MR. WAX:**  Correct.

7          **MS. TRIBUIANI:**  That's right.

8          **MR. WAX:**  Correct.  And you know that I filed an

9   objection to the PSR on the two levels today.

10          **THE COURT:**  Right.  And we'll talk about that if I

11   deny the motion to withdraw the plea.

12          **MR. WAX:**  But, your Honor, you know, it's really a

13   situation, from the moment I met Mr. Marc, where he said to me

14   I want a trial, that's what I want, that's what I've always

15   wanted.  And we talked about the plea, the change of plea and

16   the transcript and those things.

17          That was a very extensive plea colloquy, your Honor.

18   I've been in front of you many, many years, and I've had plea

19   colloquys with you and they are lengthy and considered.

20          This one was extremely lengthy and considered.  And

21   you asked the questions and he answered them, and those are the

22   answers that we have to live and die by.

23          Be that as it may, Mr. Marc has articulated his desire

24   to proceed to trial and that's about the most compelling

25   argument I can make to the Court.

| | |
|---|---|
| 1 | **THE COURT:**  Well, let me hear from the government. |
| 2 | **MS. TRIBUIANI:**  Your Honor, the defendant has not met |
| 3 | his burden to show a fair and just reason for requesting the |
| 4 | withdrawal of his plea. |
| 5 | As the Court notes, the plea colloquy was extensive, |
| 6 | it was lengthy.  And by my count, the defendant testified under |
| 7 | oath seven different times that he was throwing himself on the |
| 8 | mercy of the Court.  He clearly understood that your Honor |
| 9 | could actually sentence him to two life sentences, not just the |
| 10 | 20 years to which he was agreeing. |
| 11 | The state of the law is such that even though the |
| 12 | FIRST STEP Act has been implemented, as the Supreme Court in |
| 13 | *Brady* noted, "a guilty plea is not rendered involuntary by a |
| 14 | subsequent legal pronouncement that reduces the statutory |
| 15 | maximum sentence below what the defendant was advised of at the |
| 16 | time of his plea." |
| 17 | That's Brady vs. United States, 397 U.S. 742, 1970. |
| 18 | There is no legal ground on which this motion should |
| 19 | be granted, your Honor, other than -- |
| 20 | **THE COURT:**  I think I have the discretion, if I think |
| 21 | that Mr. Marc was lying to me and he was lying to me because of |
| 22 | misadvice from his attorneys, and his plea wasn't voluntary, I |
| 23 | think I've got the discretion to allow him to withdraw his |
| 24 | plea. |
| 25 | **MS. TRIBUIANI:**  You do have the discretion, your |

1   Honor.  But in that situation, what's to stop any defendant

2   from coming forward with a similar argument, right?  He waited

3   until after he got the PSI.  He didn't like what he was seeing

4   in the PSI, even though it's specifically what he bargained

5   for.  And that's what prompted him to file his first motion to

6   withdraw his plea.

7            There's no legal basis for this whatsoever.  The FIRST

8   STEP Act actually helps him, it benefits him, coupled with the

9   fact that he is no longer facing the 924(c) charge, the

10  consecutive five years that he would be facing.  He has earned

11  a number of benefits by virtue of this plea agreement.

12           And if Mr. Wax is able to argue for a variance, then

13  there's really no prejudice to the defendant whatsoever from

14  going forward with the sentencing in this case.

15           The defendant clearly had close assistance of counsel.

16  He had not one, not two, but three different lawyers.

17  Mr. Melchiorre had represented the defendant in the past.  They

18  had a long-standing relationship with one another.

19           **THE COURT:**  He wasn't here during the change of plea.

20           **MS. TRIBUIANI:**  He actually was.  He was sitting in

21  the gallery, Judge.

22           **THE COURT:**  Oh.

23           **MS. TRIBUIANI:**  He was, but in any --

24           **THE COURT:**  I don't think he said anything, did he?

25           **MS. TRIBUIANI:**  He didn't say anything, no, your

```
1   Honor.  It was a little uncomfortable for him because obviously

2   Mr. Cohen was taking the lead, but be that as it may.

3          The defendant hired three different lawyers.

4   Mr. Cohen went over the plea agreement with the defendant at

5   length.  We know that he was reviewing it with him the day

6   before he actually pled guilty.  He sent your Honor an email,

7   copied me on it, the plea agreement is dated November 4th with

8   the defendant's signature.  So we know that the defendant

9   thought long and hard about this with Mr. Cohen before deciding

10  to enter his guilty plea.

11         As I indicated, the timing of the motion militates

12  against allowing its withdrawal.

13         And, frankly, your Honor, the defendant admitted his

14  factual guilt during the change of plea.

15         THE COURT:  Yeah, but if I allow him to withdraw the

16  plea, that wouldn't be admissible against him in the trial.

17         MS. TRIBUIANI:  That's correct, your Honor.  However,

18  it is a factor the Court can consider in determining whether to

19  grant this motion.

20         And so for all these reasons, again I submit the

21  defendant has simply not met his burden of establishing that he

22  ought to be allowed to withdraw his plea.

23         THE COURT:  Anything further, Mr. Wax?

24         MR. WAX:  Judge, just to correct, the plea agreement

25  was signed November 5th, not November 4th.
```

1        **MS. TRIBUIANI:**  I know it's minor --

2        **MR. WAX:**  No, it was signed on November 5th.  That

3    was --

4        **THE COURT:**  That's the Monday --

5        **MR. WAX:**  That's the day that you took the plea.

6        **THE COURT:**  Right.

7        **MS. TRIBUIANI:**  Judge, I know it's a minor point, and

8    I don't mean to begrudge it, may I just show counsel one thing?

9        **MR. WAX:**  Sure.

10       *(Discussion had off the record between counsel)*

11       **MR. WAX:**  Actually, I missed it, too.  I thought it

12   was a five --

13       **MS. TRIBUIANI:**  Right.

14       **MR. WAX:**  Yeah, Judge, I mean you will have to look at

15   it yourself, but it's odd, it looks like the date next to

16   Mr. Marc's name is a four that's over a five.  It's kind of

17   squiggly, but I always thought it was a five.

18       **THE COURT:**  I mean, it just depends whether he signed

19   it when Mr. Cohen would have visited him in the jail on Sunday

20   or whether he signed it in court on Monday.

21       **MR. WAX:**  Right.  Apparently, Judge, yes.

22       **THE DEFENDANT:**  May I speak?

23       **MR. WAX:**  No.

24       Judge, may I have a moment, please.

25       **THE COURT:**  Sure.

1          *(Discussion had off the record between counsel and*
2      *client)*
3          **MR. WAX:**  Nothing further from the defense, your
4      Honor.  Thank you.
5          **THE COURT:**  Does Mr. Marc want to say something before
6      I rule on the motion for a new trial?
7          *(Discussion had off the record between counsel and*
8      *client)*
9          **THE DEFENDANT:**  Yeah.
10         **MR. WAX:**  He does, your Honor.
11         **THE COURT:**  Okay.
12         **THE DEFENDANT:**  For the record, sir, my -- I
13     understand for the record that plea agreement before this Court
14     and which my previous Attorneys, Rob Melchiorre and Bradford M.
15     Cohen, negotiated with the U.S. attorney without my consent and
16     without my family's consent.
17         **MS. TRIBUIANI:**  I'm sorry, could we just place the
18     defendant under oath?
19         **THE COURT:**  I'm sorry?
20         **MS. TRIBUIANI:**  Can we place him under oath?
21         **THE COURT:**  Okay.
22         **ROOM CLERK:**  Please stand and raise your right hand.
23         *(Delson Marc, witness herein, was sworn)*
24         **THE DEFENDANT:**  Yes, ma'am.
25         **THE COURT:**  Okay.  You understand, Mr. Marc, you don't

```
 1   have to say anything about the motion for a new trial.  You can
 2   if you want to.  Your lawyer's been to law school, he's tried a
 3   lot of cases, he gives you the benefit of his legal advice, but
 4   it's your life, you don't have to follow the advice.
 5            Do you understand that?
 6            THE DEFENDANT:  Yes, sir.
 7            THE COURT:  If we get to sentencing, then you got a
 8   right to allocute or tell me whatever you want me to know about
 9   the case.  But if we get to sentencing, I will have already
10   ruled on a motion for new trial.  So if you want me to hear
11   something on the motion for new trial --
12            THE DEFENDANT:  Yeah.
13            THE COURT:  -- then fine, I'll listen to it.  But
14   you're under oath, and if you need to talk to your lawyer about
15   the strategy of doing that, you can.  If you've had enough time
16   to think about it and talk about it with your lawyer, then I'll
17   listen.
18            MR. WAX:  Your Honor, the statement that he wishes to
19   read goes to the motion to withdraw the plea.  And --
20            THE COURT:  And I'll be more than happy to listen to
21   it.
22            MR. WAX:  That's what he would like to read.
23            THE DEFENDANT:  Yeah.
24            THE COURT:  Thank you, your Honor.
25            THE DEFENDANT:  I'm stating for the record that the
```

1   plea agreement before this Court in which the previous

2   attorneys Rob Melchiorre and Bradford M. Cohen --

3         **THE COURT REPORTER:**  I'm sorry, the names?

4         **MR. WAX:**  Speak slowly.

5         I can give you the spellings after.

6         **THE DEFENDANT:**  I'm stating for the record that the

7   plea agreement before this Court, in which I -- the previous

8   Attorney Rob Melchiorre and Bradford M. Cohen, negotiated with

9   the assistant United States attorney without my consent and

10  without my family's consent, who paid both attorneys over

11  $85,000 for a jury trial, in which I'm entitled to, and which I

12  demand this Court to protect my constitutional rights to a

13  trial by jury.

14        Secondly, this Court has dismissed both attorneys who

15  represented me in this matter, and thereby has appointed a

16  public defender office, based on this Court's own determination

17  that both attorneys should be taken off this case.

18        Thirdly, the contract, the plea agreement before this

19  Court by the two attorneys is a conflict of interest and

20  miscarriage of justice and have no standing to be accepted by

21  this Court in which both attorneys negotiated these acts,

22  unbeknownst to me and without my permission, and mislead my

23  family that I was going to have a jury trial.

24        Notwithstanding that neither attorney who presented

25  this contract, plea agreement in this matter is before the

1  Court, and that this Court is forcing the public defender's

2  attorney to represent me based on what the other two attorneys'

3  plea agreements say or do not say.

4         Fourthly, the Court should notice that the plea

5  agreement states that defendant agrees to plead guilty to

6  Count 4, 5 and 8, which identified Balmy Lincoln Joseph in a

7  conspiracy, which I totally disagree and objects to any such

8  action.

9         Moreover, according to the indictment, Count 1, 2 and

10  3, which clearly allege that I possess a detectable amount of

11  heroin, and the only reason that Attorneys Rob Melchiorre and

12  Bradford M. Cohen could have agreed with the Assistant U.S.

13  Attorney to get me to the plea to Count 4, 5, and 8 was for

14  sentencing enhancements in which the Assistant United States

15  Attorney could give me 20 years or more, knowing that I only

16  could face up to 20 years, and that the alleged amounts of use

17  of heroin did not invoke a 20-year sentence, even if I was

18  found guilty by a jury.

19         The Court should investigate the grand jury

20  proceeding, which there is no testimony of the alleged

21  conspiracy.  In fact, the Court will find whether or not the

22  grand jury indicated *(sic)* Delson Marc under a conspiracy

23  statute --

24         **THE COURT REPORTER:**  I'm sorry, "indicated"....

25         **MR. WAX:**  Indicted.

1     **THE DEFENDANT:**  21 United States Code 846, or is this

2    a rubber stamp indictment by the Assistant United States

3    Attorney to allege a conspiracy for sentencing purposes?

4     Wherefore, I ask this Court to dismiss this plea

5    agreement by Rob Melchiorre and Bradford M. Cohen and to allow

6    the public attorney *(sic)* to do the Court appointed to this

7    case *(sic)*, to prepare for trial, and not to force the public

8    defender office to define on me in the matter in which the

9    United States attorney office has presented to you through the

10    Attorneys Rob Melchiorre and Bradford M. Cohen, your Honor.

11     **THE COURT:**  Anything further before I rule on the

12    motion for new trial?

13     **MR. WAX:**  Nothing from the defense, your Honor.

14     **MS. TRIBUIANI:**  No, your Honor.

15     **THE COURT:**  I mean, I don't know that the lawyers have

16    to have the family's consent before they advise a client

17    whether to plead guilty or not.  It's the client's decision;

18    it's not the family's decision.  Maybe they paid the money, but

19    the plea agreement is between Mr. Marc and the United States

20    government.  His family has nothing to do with it.

21     The amount of money that Mr. Marc or his family paid

22    the lawyers has no bearing on what is happening here in court.

23    If he would have gone to trial, maybe that type of fee would

24    have been justified.  But I don't involve myself in whether or

25    not lawyers' fees are appropriate or not.  It's got nothing to

1    do with the voluntariness of the plea.

2           I don't understand the comments about dismissing an

3    attorney.  There was a conflict between Mr. Marc and his

4    lawyers that he couldn't resolve, that he couldn't patch up,

5    and because of that inability to communicate, I allowed the

6    lawyers to withdraw and appointed a lawyer that wouldn't have a

7    conflict.

8           When you're trying to represent someone at sentencing,

9    and they're saying that the lawyer railroaded them and did a

10   lousy job, that it is a conflict of interest, because of what

11   Mr. Marc is saying that the lawyers said.  And my granting the

12   motions to withdraw was no indication that I felt that any of

13   the lawyers representing Mr. Marc had done anything

14   inappropriate; it was a recognition that the communication had

15   broken down to the point where Mr. Marc was accusing the

16   lawyers of unethical activity and that would prevent them from

17   ethically being able to represent Mr. Marc anymore without

18   there being the appearance of impropriety.

19          I didn't force Mr. Wax to represent Mr. Marc.  He

20   didn't want the lawyers to stay on his case, and he said he

21   couldn't afford to hire a private attorney.

22          And there's no basis to investigate the grand jury or

23   to make any finding that there was any type of lack of evidence

24   regarding a conspiracy before the grand jury.

25          I heard the trial in Balmy Joseph's case, and I heard

1   the evidence.  And the evidence in Balmy Joseph's case

2   certainly indicated that there was sufficient evidence for a

3   conspiracy.  The factual proffer that Mr. Marc signed supports

4   a conspiracy.

5        And, you know, obviously when you only hear one

6   defendant's case in a trial, sometimes the evidence is slanted.

7   Sometimes when cases are severed or tried separately for

8   whatever reason, the person who is on trial conveniently can

9   point the finger at the person who's not there.  And maybe that

10  happened with Balmy Joseph.  And maybe that's why, in my

11  impression of the evidence through the Balmy Joseph trial is

12  that the evidence against Mr. Marc was overwhelming.

13       I think the lawyers did an excellent job for Mr. Marc.

14  I think that this motion to withdraw the plea is not in his

15  best interests.  I'm a little surprised the government didn't

16  come in and say, okay, fine, you can withdraw the plea.  Now,

17  we're back to square one and we're gonna ask for a consecutive

18  sentence on Count 9 if there's a conviction after a jury trial.

19       But the government is advocating that the plea was

20  voluntarily.  I think it was voluntary.  I've read the

21  transcript.  And changing your mind later on for whatever

22  reason isn't a valid reason, a fair and just reason to withdraw

23  the plea, and I find that motion to withdraw the plea is denied

24  and I'll enter an order to that effect.

25       So, we're here for sentencing here today.  Mr. Marc

1    pled guilty to:  Count 4, conspiracy to possess with the intent

2    to distribute a kilogram or more of heroin; Count 5, possession

3    with the intent to distribute a kilo or more of heroin; and

4    Count 8, possession of a firearm by a convicted felon.

5           I adjudicated him guilty, deferred sentencing, ordered

6    a Presentence Investigation Report that I've received and

7    reviewed.

8           Have counsel had an opportunity to review the

9    Presentence Investigation Report, Ms. Tribuiani?

10          **MS. TRIBUIANI:**  Yes, your Honor.

11          **THE COURT:**  Mr. Wax?

12          **MR. WAX:**  Yes, your Honor.

13          **THE COURT:**  Mr. Marc, have you read the Presentence

14   Investigation Report and discussed it with your lawyer?

15          **THE DEFENDANT:**  Yes, sir.

16          **THE COURT:**  Any objection to the Presentence

17   Investigation Report from the government?

18          **MS. TRIBUIANI:**  No, your Honor.

19          **THE COURT:**  Mr. Wax, you have an objection to the

20   fleeing and alluding two-level enhancement, right?

21          **MR. WAX:**  That's correct, your Honor.

22          **THE COURT:**  I don't know, have you had a chance to see

23   the videotape of the fleeing, because I saw it in the Balmy

24   Joseph trial.

25          **MR. WAX:**  I did see the video, your Honor.  I watched

1     it in preparation for the objections.

2             **THE COURT:**  I mean, wasn't he running a red light, and

3     cars were having to take evasive action to avoid him and he was

4     speeding away, so that the police had to stop their pursuit?

5             **MR. WAX:**  I did see him turn left when there was

6     oncoming traffic, your Honor, and I did see him accelerate to a

7     high rate of speed.  And certainly that constituted a basis for

8     the fleeing and alluding charge.

9             However, from my reading of the evidence in the case,

10    that investigation that was taking place was in relation to a

11    completely different crime than the crimes for which Mr. Marc

12    has been indicted and convicted in this case.

13            **THE COURT:**  Well, why isn't that -- I mean, he didn't

14    plead to Count 6, but why wasn't Count 6 what was going on on

15    July 7th?

16            **MR. WAX:**  Count 6 is what was going on July 7th.  But

17    the Count 6 that he's charged with in the indictment is for a

18    possession with intent to distribute heroin.

19            It is --

20            **THE COURT:**  That was found outside the car after he

21    abandoned the car --

22            **MR. WAX:**  Correct.

23            **THE COURT:**  -- after the high speed chase.

24            **MR. WAX:**  Correct, your Honor.

25            But the investigation that prompted the high speed

1   chase was based on a completely different matter that is not

2   part of this conspiracy.

3            If you recall, or from the evidence in the case, there

4   was a Honda Accord that was parked in a parking lot that the

5   police were surveilling because they believed that it had been

6   involved in a murder.  And so when the police saw the Honda

7   Accord there, they saw --

8            **THE COURT:**  So, what you're saying is that maybe

9   Mr. Marc was fleeing not because of the heroin in the car, but

10  because he may have been fearful of being arrested for a

11  murder?

12           **MR. WAX:**  I'm not sure why he was fleeing.  And I

13  can't disclose to the Court anything that might be privileged,

14  your Honor.

15           But based upon the content of the Presentence

16  Investigation Report, which is -- there's a pausity of

17  information to, if you read it.  Paragraph 16 is the only part

18  of the PSR that says that -- that even would relate remotely to

19  the two-level enhancement.

20           And what it says is, on July 7th, 2018, Palm Beach

21  Sheriff's Office detectives initiated a traffic stop on a tow

22  truck and the driver pulled over.  When Mark realized that the

23  tow truck was no longer behind him, he circled back to the

24  area.

25           Now, there's no predicate in the PSR for this

1   activity.  It just sort of comes out of the factual proffer,

2   which was redacted initially.  There were two preceding

3   paragraphs that may have given content to this, but are not

4   part of the factual proffer or the PSR.  And so you then see --

5   it then indicates he saw the marked police cars and immediately

6   fled the scene at a high rate of speed.  Marc and his two

7   passengers abandoned the Escalade and went on foot.  The

8   officers found drugs.

9         There's no indication in here that anyone -- and I got

10  to only rely on the PSR for my objection -- that anyone was

11  placed in danger of serious bodily injury or death.  There's no

12  indication that it was anything other than flight from a police

13  officer.  And this --

14       **THE COURT:**  It says:  "Immediately fled the scene at a

15  high rate of speed," right?

16       **MR. WAX:**  Yes.  But high rate of speed, for better or

17  worse in south Florida, your Honor, is the norm.  I hate to

18  sound facetious but it's the truth.  Just because someone's

19  speeding doesn't mean they're creating a danger.

20       **THE COURT:**  Well, if they're fleeing from a police

21  officer at a high rate of speed, that may not be the norm.

22       **MR. WAX:**  No, it's not the norm.  But I also cited the

23  case in my objection that says the mere flight alone is not

24  enough for that reckless endangerment enhancement.  But more

25  specifically, it must be tied to an offense of conviction, of

1    conviction.

2            **THE COURT:**  Well, Count 4, conspiracy to possess with

3    the intent to distribute a kilogram or more of heroin.

4            **MR. WAX:**  And if that is part of this conspiracy, if

5    that was what prompted the flight, then, certainly the reckless

6    endangerment enhancement arguably would exist.  But there's

7    nothing in the Presentence Investigation Report to establish

8    that.

9            **THE COURT:**  I mean why -- I mean, he's charged with

10   conspiring to possess with the intent to distribute heroin --

11           **MR. WAX:**  Right.

12           **THE COURT:**  -- over a period of time.

13           **MR. WAX:**  Um-hum.

14           **THE COURT:**  During that period of time, he flees from

15   the police and heroin is found outside the car after the car's

16   abandoned.  Why wouldn't that heroin that came out of the car

17   ostensibly not be part of the conspiracy and a motivation for

18   the people who fled the police and then ran away from the car

19   on foot, why wouldn't that have been their motivation?

20           **MR. WAX:**  Because you have three people in the car.

21   You don't know who possessed that heroin.  It was found in an

22   opaque closed bag.  You don't know that Mr. Joseph had

23   knowledge of the presence of that heroin in the car.

24           **THE COURT:**  I don't think I have to find something

25   beyond a reasonable doubt to impose an enhancement under the

1    guidelines.

2              **MR. WAX:**  But there still has to be proof of it, your

3    Honor.  Where is the proof?  That's the basis --

4              **THE COURT:**  I guess, the disadvantages you have is I

5    heard Mr. Joseph's trial, so I heard all the other proof as it

6    related to Mr. Joseph and as it relates to Mr. Marc.

7              But let me ask the government.  I mean, if this was

8    anticipated during the plea, why wasn't that enhancement

9    something that was discussed in the plea agreement?

10             **MS. TRIBUIANI:**  Your Honor, before we get there, let

11   me direct Mr. Wax's attention to paragraph 84 of the PSI.  That

12   paragraph specifically details the facts that we are talking

13   about here.

14             Mr. Marc was originally arrested for fleeing in a

15   state case.  And the details and circumstances of that chase,

16   which is the subject of this objection, are contained in

17   paragraph 84.  Specifically, deputies observed the vehicle

18   being driven by the defendant, they attempted a traffic stop on

19   the defendant's vehicle for reckless driving patterns and a

20   suspended driver's license.

21             The defendant accelerated his vehicle and ran a red

22   light, thus causing a passing vehicle to slam on their brakes

23   to avoid hitting the defendant's vehicle.  The defendant then

24   proceeded at a high rate of speed without regard for the safety

25   of himself, the occupants, law enforcement, or other citizens.

```
 1              The traffic stop was discontinued due to the
 2    defendant's erratic and dangerous driving pattern.
 3         THE COURT:  So why can't I conclude from that that the
 4    reason Mr. Marc was alluding them or fleeing them was because
 5    he had a suspended driver's license?
 6         MS. TRIBUIANI:  Well, you could, your Honor, except
 7    that it doesn't matter.  The Court doesn't have to find the
 8    reason for the flight.  The fact is that the flight occurred
 9    during the course of committing the crime.
10              The conspiracy that's charged, to which the defendant
11    pled, encompasses this offense date.  This evidence
12    specifically was going to come in as proof of that conspiracy.
13    He's with Balmy Joseph at the time, Judge, as the Court knows
14    from the trial testimony.  And as soon as they abandon the
15    vehicle, the heroin is tossed outside of the vehicle, and they
16    attempt to flee the area.
17              So, it's part and parcel with the other evidence
18    regarding the heroin conspiracy.  This flight occurred during
19    that heroin conspiracy which is a count of conviction.
20         THE COURT:  So, let me ask you, is that something that
21    the Presentence Investigation Report came up with afterwards,
22    and you agree with it?  Or is that something that was
23    anticipated during the plea negotiations and it just couldn't
24    be agreed on, that was negligently left out of the agreement?
25         MS. TRIBUIANI:  Your Honor, no.  Mr. Cohen and I
```

1  specifically spoke about that enhancement.  We initially agreed

2  to the 240 months.  Did not know at the time what the actual

3  guideline range was going to be calculated as, but it was both

4  parties' understanding that if the guidelines were going to be

5  above the 240, nevertheless the parties were going to recommend

6  the 240, even if it constituted a downward variance.

7         **THE COURT:**  Any other objections to the Presentence

8  Investigation Report?

9         **MR. WAX:**  No, your Honor, we don't have any other

10 objections.

11        **THE COURT:**  Any legal cause to show why sentence

12 should not be imposed?

13        **MR. WAX:**  No, your Honor.

14        **THE COURT:**  Anything you want to say, Mr. Marc, before

15 I impose sentence?

16        **THE DEFENDANT:**  No, your Honor.

17        **THE COURT:**  Anything further before I impose sentence?

18        **MS. TRIBUIANI:**  Your Honor, I just want to give the

19 Court some background information about this specific

20 defendant.

21        We first learned about Delson Marc in 2014.  DEA

22 agents conducted a series of undercover heroin buys from an

23 individual whose source of supply was Delson Marc.  And during

24 one of those transactions, agents actually watched their target

25 retrieve the heroin from a person in a specified vehicle.  And

1   the agents later confirmed that the vehicle had been rented by

2   Delson Marc.

3        That target, after being arrested, confessed that he

4   had purchased heroin from Mr. Marc on 10 to 15 separate

5   occasions from seven grams up to 1.5 ounces of heroin.

6        The following year, in 2015, the sheriff's office

7   responded to a gang-related drive-by shooting, which occurred

8   at a recording studio that was operated by Delson Marc.

9        During that incident, Mr. Marc was shot in his hand

10  and he was captured on video surveillance returning fire.

11       Agents believe that the person responsible for that

12  shooting was a man named Frederick Stockton.  And the Court

13  should be aware and familiar with that name, because of course

14  Mr. Stockton was gunned down in July, 2018.  We believe that

15  Delson Marc and Balmy Joseph were responsible for that murder.

16       Now, during the course of investigating the shooting

17  at Mr. Marc's studio, agents obtained a state search warrant

18  and recovered 148 grams of heroin.

19       Delson Marc refused to cooperate with law enforcement

20  and nothing else came of that event.

21       Thereafter, in 2016, Judge Hurley signed an order

22  authorizing the interceptions of wire and electronic

23  communications on a phone utilized by a man with the initials

24  K.C.  We went up on K.C.'s phone because we believe that Delson

25  Marc was his source of supply.  Ultimately, K.C. spoke about

1   Delson Marc on the phone, but Delson Marc was not intercepted.

2         Several of the individuals who were eventually

3   arrested in that case named Delson Marc as one of, if not the

4   biggest heroin dealer in Palm Beach County.

5         We learned that Delson Marc was a very smart, savvy,

6   drug dealer.  He insulated himself and only dealt with

7   individuals whom he personally knew.

8         Judge, thereafter, agents obtained phone trackers for

9   phones utilized by Delson Marc, vehicle trackers for tractor

10  trailers utilized by Delson Marc, we installed a pole camera at

11  the tow yard.  We investigated Delson Marc as much as we

12  possibly could.

13        In 2017, we attempted a second wire tap on a phone

14  utilized by another individual believing that the source of

15  that heroin was Delson Marc.  Ultimately, we did not intercept

16  any pertinent calls with Mr. Marc.

17        During one surveillance period, Mr. Marc actually

18  walked right up to an undercover DEA agent and asked her why

19  she was following him.  I say all this because we know that

20  Mr. Marc was not afraid of law enforcement and he was a very,

21  very good drug dealer.

22        It got to a point, Judge, when the agents would bring

23  up Delson Marc's name, I literally said to them, move on,

24  you're never going to get this guy, he's too smart.

25        In fact, in the weeks leading up to the July arrest, I

1    had the agents disclose to Mr. Marc the fact that we had been

2    installing trackers on his phones and his vehicles.  There was

3    no point in continually going back for the delayed

4    notification.  That paperwork was actually found in Mr. Marc's

5    bedroom during the ensuing search warrant.

6         I tell the Court all of this because I want you to

7    have an understanding that Mr. Delson Marc is a drug kingpin in

8    every sense of that word.  Now, as the Court knows, the series

9    of events that finally led to Delson Marc's arrest was

10   initiated by Frederick Stockton's murder.  Stockton's

11   girlfriend told police that Delson Marc was responsible for

12   that murder.  And he certainly had a motive, retaliation for

13   the earlier 2015 shooting in which he was injured.

14        Now, shortly after that shooting in 2015, it's my

15   understanding that Stockton went to prison on unrelated charges

16   and had only recently been released from custody in 2018.  So,

17   the July, 2018 murder was one of, if not the earliest

18   opportunity that Delson Marc had to exact his revenge.

19        As the Court knows, the very next day after that

20   murder, Delson Marc and Balmy Joseph attempted to dispose of

21   the vehicle used to facilitate the murder.  They had no qualms

22   about fleeing from the police in their reckless and dangerous

23   manner and were able to successfully evade capture that day.

24        Now, eventually, Delson Marc was arrested near his RV.

25   And I remind the Court that he had on him at the time seven

1    cell phones, cash, and that his RV was found to contain heroin

2    and a firearm.

3         And it -- obviously again, as the Court aware,

4    detectives later obtained a search warrant for his apartment

5    and his garage and located the bulk of the heroin, fentanyl and

6    ketamine.

7         The heroin weighed over seven kilograms.  It was worth

8    over a million dollars.

9         Now, the fentanyl, your Honor, was disturbingly pure.

10   We normally see fentanyl that's a little bit more diluted and

11   this was not.

12        Ketamine, as the Court is aware, is a horse

13   tranquilizer and the fact is Mr. Marc was using it to cut his

14   heroin.

15        Importantly, Delson Marc was not actually using the

16   heroin.  We know that because the CI, with whom he dealt

17   earlier in 2018, was tasked with testing the strength, the

18   quality, and the purity of the heroin.  That's why Delson Marc

19   kept going back to him.

20        So, this is not a case of a drug dependent, low-level

21   dealer who's selling narcotics to support his own habit.  We

22   are as far away from that scenario as we can possibly be.

23        Delson Marc is a drug kingpin.  You don't get to his

24   level, the very top of a drug trafficking organization without

25   a lot of time, and a lot of trouble.

37

```
 1            Now, turning to the pretrial services report, your
 2    Honor, the defendant's contact with the criminal justice system
 3    began at the age of 12.  I'm not going to go through all of his
 4    criminal conduct, but the descriptions of some of those
 5    offenses paint a picture of a man, who is belligerent,
 6    sometimes violent, and who thinks he is above the law.
 7            So, for all of those reasons, your Honor, a serious
 8    sentence is certainly warranted in this case.
 9            The plea agreement binds me to recommend a 240-month
10    sentence.
11            I'm asking the Court to also incorporate into the
12    judgment the language from the preliminary order of forfeiture.
13            Thank you.
14            THE COURT:  Anything further before I impose sentence?
15            MR. WAX:  If I may, your Honor?  If I may?
16            THE COURT:  Yes.
17            MR. WAX:  We are here for sentencing today on
18    Counts 4, 5 and 8 of the indictment.  We are not here for
19    sentencing on any other matters.  The government has described
20    their perspective, their belief about other uncharged offenses,
21    which Mr. Marc may have been involved in in their opinion.
22            He has not been charged with those crimes yet.  I
23    don't know if that ever will come to past or if there is
24    sufficient evidence for them to charge Mr. Marc with this
25    crime.  What it sounds as if, though, is that they do have
```

1   their suspicions.

2         But be that as it may, the government saw fit in this

3   matter, when negotiating the plea agreement with predecessor

4   counsel, to recommend the sentence of 20 years.  And I would

5   ask the Court at this time, because the defense also is bound

6   by that 20 years, that the Court abide by the agreement of the

7   parties and what was contemplated in the plea agreement, and

8   when it was presented to Mr. Marc, and he signed it.

9         So, the defense's recommendation is, as well, that the

10  Court follow that and sentence Mr. Marc to a term of 20 years.

11        **THE COURT:**  Do you agree with that strategy, Mr. Marc?

12        **THE DEFENDANT:**  Yes, your Honor.

13        **THE COURT:**  All right.  Having considered the

14  sentencing guidelines, having considered the factors in 18

15  United States Code, Section 3553(a), it's up to the Court to

16  determine what a reasonable and sufficient sentence is.

17        And I overrule the objections to the Presentence

18  Investigation Report.  I think that the fleeing was obstruction

19  of justice.  I think the two-level enhancement is appropriate.

20        The Fifth Circuit case that Mr. Wax cited to, I think,

21  is distinguishable.  That had to do with a bank robber who

22  later was pulled over for identity theft and drugs and he fled,

23  and the Fifth Circuit said that the fleeing didn't have

24  anything to do with the offense of conviction, which was bank

25  robbery.

1          This is a situation where Mr. Marc was charged with

2     conspiracy to possess with the intent to distribute heroin.

3     And the logical conclusion from the Presentence Investigation

4     Report is he was fleeing the police at a high rate of speed

5     recklessly, because there was heroin in the car and the heroin

6     was abandoned after the car was abandoned.  So, I overrule the

7     objection.

8          So, we come up with an offense level 36, criminal

9     history category IV for a range of 262 to 327 months.

10          You know, whether I sustain the objection to the

11     fleeing and alluding, or whether I overruled it, as I have, the

12     Court would have imposed the same sentence, and that is I'm

13     gonna honor the plea agreement and impose a 240-month sentence.

14          Let me say this.  That had this been a trial, had the

15     government not come in and recommended a 20-year sentence, and

16     had the trial turned out the similar type of evidence as I

17     heard in Balmy Joseph's trial, then I very well may have gone

18     above the guidelines and imposed a life sentence in this case.

19          But the government made a tactical decision to

20     recommend a 20-year sentence.  I think it was a good decision

21     on behalf of Mr. Cohen and his co-counsel to negotiate this and

22     get rid of the 924(c) count.  And I'm gonna honor the plea

23     agreement.  So, it will be judgment of Court and sentence of

24     law that Mr. Marc be sentenced to 20 years in prison on

25     Counts 4 and 5, ten years in prison on Count 8 to run

```
 1   concurrent.
 2           I place him on five years of supervised release as to
 3   Counts 4 and 5, three years of supervised release as to
 4   Count 8.
 5           While on supervised release, he shall not commit any
 6   crimes.  He shall be prohibited from possessing a firearm or
 7   other dangerous device.  He shall not possess any controlled
 8   substances.  He shall comply with the standard conditions of
 9   supervised release, including the special condition that he
10   have no contact with Balmy Joseph.
11           I also order that he submit to a reasonable search of
12   his person or property conducted at a reasonable time and
13   manner by his probation officer.
14           I order that he get a drug-and-alcohol evaluation and
15   successfully complete any treatment deemed necessary and
16   contribute to the costs of the treatment based on an ability to
17   pay.
18           I order that he provide complete access to financial
19   information to his probation officer.
20           I order that he obtain prior written approval from the
21   Court before entering into any self-employment.  I find that
22   he's not able to pay a fine, I waive the fine.
23           THE DEFENDANT:  Your Honor, I ask you --
24           THE COURT:  You can talk after I'm done with the
25   sentence.
```

```
 1          I find that he's not able to pay a fine, I waive the
 2     fine, impose a $300 special assessment and order that unpaid
 3     amount of the special assessment be paid during the period of
 4     the supervised release.
 5          THE DEFENDANT:  I don't want to waive anything.
 6          THE COURT:  I order the Springfield Armory .40 caliber
 7     pistol, the six rounds of Barnes .40 caliber ammunition, one
 8     Speer .40 caliber ammunition, three rounds of Federal .40
 9     caliber ammunition, eight rounds of Winchester .40 caliber
10     ammunition and $26,700 in U.S. currency be forfeited.
11          Mr. Marc, it's my duty to inform you that you have 14
12     days within which to appeal the judgment and sentence of this
13     Court.  Should you desire to appeal and be without funds with
14     which to prosecute an appeal, an attorney will be appointed to
15     represent you in connection with that appeal.
16          Should you fail to appeal within that 14-day period,
17     it will constitute a waiver of your right to appeal.
18          But my understanding was that there was an appeal
19     waiver in this case, is that correct?
20          MS. TRIBUIANI:  Yes, your Honor.
21          THE COURT:  Also, it's my duty to elicit from counsel
22     for all parties fully articulated objections to the Court's
23     findings of fact and conclusions of law as announced at the
24     sentencing hearing, and to further elicit any objection which
25     any party may have to the manner in which the sentence was
```

```
 1    imposed in this case.
 2              Are there any objections from the government?
 3         MS. TRIBUIANI:  No, your Honor.
 4         THE COURT:  Mr. Wax?
 5         MR. WAX:  Yes, your Honor.  We object to the Court's
 6    denial of the second motion to withdraw guilty plea for the
 7    reasons articulated therein, also adopting the oral arguments
 8    made here before your Honor today.
 9              We also object to the denial of the objections to the
10    Presentence Investigation Report with respect to the two-level
11    imposition of reckless endangerment under USSG 3C1.2 and adopt
12    the arguments made in our written objections to the Presentence
13    Report and the oral arguments today.
14         THE COURT:  All right.  The objections are overruled.
15              Anything you wanted to say, Mr. Marc, before we
16    recess?
17         MR. WAX:  He didn't understand that you were not
18    imposing a fine.  He thought he was waiving something.  He
19    didn't want to waive.  He's not waiving.  I explained that to
20    him, your Honor.
21         THE DEFENDANT:  I don't want to waive anything.
22         THE COURT:  You didn't waive anything, Mr. Marc.
23         MR. WAX:  He didn't.
24              Also, Judge, I would move the Court to include in the
25    judgment a recommendation that while he's in the custody of the
```

1   Bureau of Prisons, that he be permitted to participate in the

2   500-hour Residential Drug Abuse Program, based upon the

3   information contained in paragraphs 95 through 97 of the

4   presentence investigation report.

5          **THE COURT:**  All right.  I'll recommend the RDAP

6   program, realizing that program is persuasive not controlling

7   on the Bureau of Prisons, but I make it for whatever it's

8   worth.

9          The marshal will execute the sentence of the Court.

10         Good luck to you, Mr. Marc.

11         **MR. WAX:**  Judge, I have one more request.  Would the

12   Court recommend to the Bureau of Prisons placement in a

13   facility in Florida?

14         **THE COURT:**  Recommend a Florida facility, realizing

15   that recommendation is persuasive, not controlling on the

16   Bureau of Prisons, but I make it for whatever it's worth.

17         **MR. WAX:**  Thank you.

18         **THE DEFENDANT:**  Your Honor, I actually don't want to

19   waive everything and keep all three of my bonds.

20         **THE COURT:**  What bonds?

21         **MR. WAX:**  You haven't waived anything.

22         **THE DEFENDANT:**  All right.

23         **MR. WAX:**  Nothing further from the defense, your

24   Honor.

25         **THE COURT:**  I mean, did Mr. Marc ever bond out of

1    jail?

2         **MR. WAX:**  No, your Honor.

3         **THE DEFENDANT:**  All three of my bonds.

4         **THE COURT:**  I don't understand what that is.

5         **MR. WAX:**  I'll discuss it with him.

6         **THE COURT:**  All right.  We'll be in recess.

7         **ROOM CLERK:**  All rise.

8         *(The Judge exited the courtroom)*

9         *(Proceedings concluded amount 2:57 p.m.)*

10                      - - - - -

11

12

13

14

15

16

17

18

19                   C E R T I F I C A T E

20    I certify that the foregoing is a correct transcript from

21    the record of proceedings in the above-entitled matter.

22

23
        /S/Francine C. Salopek              3-20-19
24    Francine C. Salopek, RMR-CRR          Date
      Official Court Reporter
25

**MR. WAX: [69]**
**MS. TRIBUIANI: [24]**
**ROOM CLERK: [2]**  18/21 44/6
**THE COURT REPORTER: [2]**  20/2
21/23
**THE COURT: [88]**
**THE DEFENDANT: [19]**

---

**$**

**$26,700 [1]**  41/10
**$300 [1]**  41/2
**$85,000 [1]**  20/11

---

**.**

**.40 [5]**  41/6 41/7 41/8 41/8 41/9

---

**/**

**/S/Francine [1]**  44/23

---

**1**

**1.5 [1]**  33/5
**10 [1]**  33/4
**12 [1]**  37/3
**14 [1]**  41/11
**14-day [1]**  41/16
**148 [1]**  33/18
**15 [1]**  33/4
**1550 [1]**  2/7
**16 [1]**  27/17
**18 [1]**  38/14
**18-80153-CR-WPD [1]**  1/4
**19 [1]**  44/23
**1970 [1]**  14/17

---

**2**

**20 [18]**
**20-year [8]**  4/25 5/18 5/19 5/20 13/5
21/17 39/15 39/20
**2014 [1]**  32/21
**2015 [3]**  33/6 35/13 35/14
**2016 [1]**  33/21
**2017 [1]**  34/13
**2018 [5]**  27/20 33/14 35/16 35/17
36/17
**2019 [2]**  1/7 3/1
**205F [1]**  2/10
**21 [2]**  4/12 22/1
**210 [3]**  12/11 12/25 13/4
**240 [6]**  11/25 12/3 13/5 32/2 32/5
32/6
**240-month [2]**  37/9 39/13
**262 [7]**  11/24 12/12 12/20 12/25 13/4
13/5 39/9
**299 [1]**  2/10
**2:00 [2]**  1/8 3/1
**2:57 [1]**  44/9

---

**3**

**3-20-19 [1]**  44/23
**327 [3]**  11/24 12/20 39/9
**33131 [1]**  2/7
**33301 [1]**  2/10
**33401 [1]**  2/4

---

**34 [2]**  12/11 12/23
**3553 [1]**  38/15
**36 [2]**  12/20 39/8
**397 [1]**  14/17
**3C1.2 [1]**  42/11

---

**4**

**400 [1]**  2/4
**4th [2]**  16/7 16/25

---

**5**

**500 [1]**  2/3
**500-hour [1]**  43/2
**5657 [1]**  2/11
**5th [2]**  16/25 17/2

---

**7**

**701 [1]**  2/6
**742 [1]**  14/17
**769-5657 [1]**  2/11
**7th [2]**  26/15 26/16 27/20

---

**8**

**84 [2]**  30/11 30/17
**846 [1]**  22/1
**851 [3]**  4/12 4/14 4/20

---

**9**

**924 [3]**  6/19 15/9 39/22
**95 [1]**  43/3
**954 [1]**  2/11
**97 [1]**  43/3

---

**A**

**abandon [1]**  31/14
**abandoned [5]**  26/21 28/7 29/16 39/6
39/6
**abide [1]**  38/6
**ability [2]**  4/10 40/16
**above [5]**  11/23 32/5 37/6 39/18
44/21
**above-entitled [1]**  44/21
**Abuse [1]**  43/2
**accelerate [1]**  26/6
**accelerated [1]**  30/21
**accept [1]**  6/15
**acceptance [6]**  10/21 10/23 11/1
11/16 11/21 12/2
**accepted [1]**  20/20
**access [1]**  40/18
**Accord [2]**  27/4 27/7
**according [1]**  21/9
**accusing [1]**  23/15
**Act [4]**  4/12 9/7 14/12 15/8
**Act's [1]**  4/9
**action [2]**  21/8 26/3
**activity [2]**  23/16 28/1
**acts [1]**  20/21
**adjudicated [1]**  25/5
**admissible [1]**  16/16
**admitted [1]**  16/13
**adopt [1]**  42/11
**adopting [1]**  42/7
**advantage [1]**  6/15
**advice [2]**  19/3 19/4

---

**advise [1]**  22/16
**advised [1]**  14/15
**advocating [1]**  24/19
**afford [1]**  23/21
**afraid [1]**  34/20
**afternoon [2]**  3/7 3/8
**afterwards [1]**  31/21
**age [1]**  37/3
**agent [1]**  34/18
**agents [8]**  32/22 32/24 33/1 33/11
33/17 34/8 34/22 35/1
**agree [4]**  6/2 8/16 31/22 38/11
**agreement [26]**
**agreements [2]**  7/8 21/3
**agrees [1]**  21/5
**alcohol [1]**  40/14
**allege [2]**  21/10 22/3
**alleged [2]**  21/16 21/20
**allocute [2]**  6/9 19/8
**allow [3]**  14/23 16/15 22/5
**allowed [4]**  3/16 10/2 16/22 23/5
**allowing [1]**  16/12
**alluding [4]**  25/20 26/8 31/4 39/11
**alone [1]**  28/23
**amended [1]**  3/23
**AMERICA [1]**  1/6
**ammunition [4]**  41/7 41/8 41/9 41/10
**amount [4]**  21/10 22/21 41/3 44/9
**amounts [1]**  21/16
**analysis [1]**  5/15
**announce [1]**  3/5
**announced [1]**  41/23
**answer [1]**  10/12
**answers [2]**  10/9 13/22
**anticipated [4]**  6/7 11/22 30/8 31/23
**anymore [1]**  23/17
**apartment [1]**  36/4
**appeal [7]**  41/12 41/13 41/14 41/15
41/16 41/17 41/18
**appearance [1]**  23/18
**appearances [2]**  2/1 3/5
**appointed [5]**  3/14 20/15 22/6 23/6
41/14
**approval [1]**  40/20
**area [2]**  4/6 27/24 31/16
**arguably [1]**  29/6
**argue [10]**
**arguing [1]**  5/22
**argument [6]**  5/12 7/18 9/6 9/7 13/25
15/2
**arguments [4]**  8/11 42/7 42/12 42/13
**Armory [1]**  41/6
**arose [1]**  3/17
**arrest [2]**  34/25 35/9
**arrested [5]**  27/10 30/14 33/3 34/3
35/24
**articulated [5]**  3/13 8/22 13/23 41/22
42/7
**assessment [2]**  41/2 41/3
**assistance [1]**  15/15
**assistant [5]**  2/3 20/9 21/12 21/14
22/2
**attempt [1]**  31/16
**attempted [3]**  30/18 34/13 35/20

## A

**attorney [15]**
**attorneys [12]**
**attorneys' [1]** 21/2
**audio [1]** 9/11
**Australian [1]** 2/3
**authorizing [1]** 33/22
**Avenue [2]** 2/3 2/6
**avoid [2]** 26/3 30/23
**aware [4]** 12/22 33/13 36/3 36/12

## B

**background [1]** 32/19
**bag [1]** 29/22
**Balmy [11]**
**bank [2]** 38/21 38/24
**bargained [2]** 12/4 15/4
**Barnes [1]** 41/7
**Barry [3]** 2/5 2/6 3/8
**basis [5]** 4/5 15/7 23/22 26/7 30/3
**Beach [3]** 2/4 27/20 34/4
**bearing [1]** 22/22
**bedroom [1]** 35/5
**began [1]** 37/3
**begrudge [1]** 17/8
**behind [1]** 27/23
**belief [1]** 37/20
**believe [3]** 33/11 33/14 33/24
**believed [1]** 27/5
**believing [1]** 34/14
**belligerent [1]** 37/5
**below [4]** 4/17 6/10 8/11 14/15
**benefit [2]** 5/8 19/3
**benefits [2]** 15/8 15/11
**beyond [1]** 29/25
**biggest [1]** 34/4
**bind [1]** 5/20
**binds [3]** 5/17 5/19 37/9
**Blvd [1]** 2/10
**bodily [1]** 28/11
**bond [1]** 43/25
**bonds [3]** 43/19 43/20 44/3
**bound [1]** 38/5
**Bradford [6]** 18/14 20/2 20/8 21/12 22/5 22/10
**Brady [2]** 14/13 14/17
**Brady vs. United [1]** 14/17
**brakes [1]** 30/22
**Brickell [1]** 2/6
**broken [1]** 23/15
**Broward [1]** 2/10
**bulk [1]** 36/5
**bunch [1]** 9/24
**burden [1]** 14/3 16/21
**Bureau [4]** 43/1 43/7 43/12 43/16
**buys [1]** 32/22

## C

**calculated [2]** 12/7 32/3
**caliber [5]** 41/6 41/7 41/8 41/9 41/9
**calls [1]** 34/16
**camera [1]** 34/10
**candidly [2]** 7/23 10/11
**capture [1]** 35/23

**captured [1]** 33/10
**car [10]**
**car's [1]** 29/15
**cars [2]** 26/3 28/5
**carved [1]** 5/12
**cash [1]** 36/1
**category [2]** 12/11 39/9
**cause [1]** 32/11
**causing [1]** 30/22
**cell [1]** 36/1
**certify [1]** 44/20
**chance [1]** 25/22
**charge [3]** 15/9 26/8 37/24
**charged [5]** 26/17 29/9 31/10 37/22 39/1
**charges [1]** 35/15
**chase [3]** 26/23 27/1 30/15
**choice [1]** 9/9
**CI [1]** 36/16
**circled [1]** 27/23
**Circuit [2]** 38/20 38/23
**circumstances [1]** 30/15
**cited [2]** 28/22 38/20
**citizens [1]** 30/25
**client [6]** 8/19 8/21 9/23 18/2 18/8 22/16
**client's [1]** 22/17
**clients [1]** 11/20
**close [1]** 15/15
**closed [1]** 29/22
**co [1]** 39/21
**co-counsel [1]** 39/21
**Code [2]** 22/1 38/15
**cogently [1]** 3/14
**Cohen [12]**
**colloquied [1]** 9/16
**colloquy [5]** 4/19 4/22 10/17 13/17 14/5
**colloquys [1]** 13/19
**comments [1]** 23/2
**commit [1]** 40/5
**committing [1]** 31/9
**communicate [1]** 23/5
**communication [1]** 23/14
**communications [1]** 33/23
**compelling [1]** 13/24
**complaints [1]** 9/8
**complete [2]** 40/15 40/18
**comply [1]** 40/8
**computer [1]** 1/24
**conclude [1]** 31/3
**concluded [1]** 44/9
**conclusion [1]** 39/3
**conclusions [1]** 41/23
**concurrent [1]** 40/1
**condition [2]** 6/9 40/9
**conditions [1]** 40/8
**conduct [1]** 37/4
**conducted [2]** 32/22 40/12
**confessed [1]** 33/3
**confirmed [1]** 33/1
**conflict [4]** 20/19 23/3 23/7 23/10
**connection [1]** 41/15
**consecutive [3]** 6/20 15/10 24/17

**consent [5]** 18/15 18/16 20/9 20/10 22/16
**conspiracy [17]**
**conspiring [1]** 29/10
**constitute [1]** 41/17
**constituted [2]** 26/7 32/6
**constitutional [1]** 20/12
**contact [2]** 37/2 40/10
**contain [1]** 36/1
**contained [3]** 8/6 30/16 43/3
**contemplated [2]** 11/24 38/7
**content [2]** 27/15 28/3
**continually [1]** 35/3
**contract [2]** 20/18 20/25
**contribute [1]** 40/16
**controlled [1]** 40/7
**controlling [2]** 43/6 43/15
**conveniently [1]** 24/8
**conversation [1]** 6/6
**convicted [3]** 5/2 25/4 26/12
**conviction [5]** 24/18 28/25 29/1 31/19 38/24
**cooperate [2]** 33/19
**copied [1]** 16/7
**counsel [12]**
**count [18]**
**Count 4 [4]** 21/6 21/13 25/1 29/2
**Count 8 [2]** 39/25 40/4
**Count 9 [1]** 24/18
**Counts [3]** 37/18 39/25 40/3
**Counts 4 [2]** 37/18 39/25
**County [1]** 34/4
**court [58]**
**Court's [4]** 8/3 20/16 41/22 42/5
**courtroom [4]** 3/2 7/14 9/16 44/8
**CR [1]** 1/4
**create [1]** 9/13
**creating [1]** 28/19
**crime [3]** 26/11 31/9 37/25
**crimes [3]** 26/11 37/22 40/6
**criminal [4]** 12/11 37/2 37/4 39/8
**CRR [2]** 2/8 44/24
**currency [1]** 41/10
**custody [2]** 35/16 42/25
**cut [1]** 36/13

## D

**danger [2]** 28/11 28/19
**dangerous [3]** 31/2 35/22 40/7
**date [4]** 4/8 17/15 31/11 44/24
**dated [1]** 16/7
**DEA [2]** 32/21 34/18
**DEA agent [1]** 34/18
**dealer [4]** 34/4 34/6 34/21 36/21
**dealt [3]** 3/20 34/6 36/16
**death [1]** 28/11
**decide [1]** 10/1
**decision [4]** 22/17 22/18 39/19 39/20
**decline [1]** 8/5
**deemed [1]** 40/15
**defendant [21]**
**defendant's [6]** 16/8 24/6 30/19 30/23 31/2 37/2
**defender [2]** 20/16 22/8

## D

**defender's [1]** 21/1
**defense [5]** 10/13 18/3 22/13 38/5
 43/23
**defense's [1]** 38/9
**deferred [1]** 25/5
**delayed [1]** 35/3
**DELSON [30]**
**demand [1]** 20/12
**denial [2]** 42/6 42/9
**denied [4]** 11/10 11/11 11/11 24/23
**deny [4]** 8/21 10/4 11/16 13/11
**denying [1]** 3/22
**dependent [1]** 36/20
**depends [1]** 17/18
**deprived [1]** 11/1
**deputies [1]** 30/17
**described [1]** 37/19
**descriptions [1]** 37/4
**desire [3]** 4/2 13/23 41/13
**details [2]** 30/12 30/15
**detectable [1]** 21/10
**detectives [2]** 27/21 36/4
**determination [1]** 20/16
**determine [1]** 38/1
**determining [1]** 16/18
**device [1]** 40/7
**dictates [1]** 7/3
**die [1]** 13/22
**differences [1]** 3/17
**diluted [1]** 36/10
**Dimitrouleas [1]** 1/14
**direct [1]** 30/11
**disadvantages [1]** 30/4
**disagree [1]** 21/7
**disclose [2]** 27/13 35/1
**discontinued [1]** 31/1
**discovery [1]** 7/24
**discretion [4]** 4/17 14/20 14/23 14/25
**discuss [2]** 8/18 44/5
**discussed [2]** 25/14 30/9
**discussion [4]** 5/10 17/10 18/1 18/7
**dismiss [1]** 22/4
**dismissed [1]** 20/14
**dismissing [1]** 23/2
**dispose [1]** 35/20
**distinguishable [1]** 38/21
**distribute [6]** 25/2 25/3 26/18 29/3
 29/10 39/2
**DISTRICT [4]** 1/1 1/2 1/15 2/9
**disturbingly [1]** 36/9
**DIVISION [1]** 1/3
**dollars [1]** 36/8
**doubt [1]** 29/25
**downward [1]** 32/6
**draft [1]** 12/24
**drive [1]** 33/7
**drive-by [1]** 33/7
**driven [1]** 30/18
**driver [1]** 27/22
**driver's [2]** 30/20 31/5
**driving [2]** 30/19 31/2
**drug [9]**
**drug-and-alcohol [1]** 40/14

**drugs [2]** 28/8 38/22
**duty [2]** 41/11 41/21

## E

**earliest [1]** 35/17
**early [1]** 10/17
**earned [1]** 15/10
**effect [2]** 4/13 24/24
**effectively [1]** 8/8
**eight [1]** 41/9
**electronic [1]** 33/22
**elicit [2]** 41/21 41/24
**eliminated [1]** 6/19
**elimination [1]** 4/10
**email [1]** 16/6
**emphatic [1]** 4/1
**employment [1]** 40/21
**enabled [1]** 8/2
**enacted [1]** 11/19
**encompasses [1]** 31/11
**endangerment [3]** 28/24 29/6 42/11
**energies [1]** 7/20
**enforcement [3]** 30/25 33/19 34/20
**enhancement [10]**
**enhancements [1]** 21/14
**ensuing [1]** 35/5
**enter [2]** 16/10 24/24
**entitled [4]** 11/2 11/3 20/11 44/21
**erratic [1]** 31/2
**erroneous [1]** 5/3
**Escalade [1]** 28/7
**Esq [1]** 2/5
**essentially [1]** 4/4
**establish [1]** 29/7
**establishing [2]** 4/22 16/21
**ethically [1]** 23/17
**evade [1]** 35/23
**evaluation [1]** 40/14
**evasive [1]** 26/3
**event [3]** 8/20 10/3 33/20
**events [1]** 35/9
**evidence [15]**
**excellent [1]** 24/13
**execute [1]** 43/9
**exist [1]** 29/6
**exited [1]** 44/8
**expend [1]** 11/12
**experience [2]** 9/14 11/18
**explained [1]** 42/19
**expressing [1]** 3/19
**extensive [2]** 13/17 14/5
**extremely [1]** 13/20

## F

**face [1]** 21/16
**facetious [1]** 28/18
**facilitate [1]** 35/21
**facility [2]** 43/13 43/14
**facing [3]** 4/25 15/9 15/10
**fact [8]** 8/3 15/9 21/21 31/8 34/25
 35/1 36/13 41/23
**factor [1]** 16/18
**factors [1]** 38/14
**facts [1]** 30/12

**factual [5]** 8/1 16/14 24/3 28/1 28/4
**fail [1]** 41/16
**failure [1]** 11/8
**fairness [2]** 6/14 7/3
**faith [1]** 11/9
**family [1]** 20/23 22/20 22/21
**family's [4]** 18/16 20/10 22/16 22/18
**favor [1]** 7/8
**favored [1]** 5/15
**fearful [1]** 27/10
**February [2]** 1/7 3/1
**Federal [1]** 41/8
**fee [1]** 22/23
**fees [1]** 22/25
**felon [1]** 25/4
**fentanyl [3]** 36/5 36/9 36/10
**Fifth [2]** 38/20 38/23
**file [2]** 3/23 15/5
**filed [7]** 3/18 4/4 4/14 4/20 13/1 13/3
 13/8
**finality [1]** 7/8
**finally [1]** 35/9
**financial [1]** 40/18
**findings [1]** 41/23
**fine [7]** 19/13 24/16 40/22 40/22 41/1
 41/2 42/18
**finger [1]** 24/9
**fire [1]** 33/10
**firearm [3]** 25/4 36/2 40/6
**fit [1]** 38/2
**five-minute [1]** 9/24
**five-year [1]** 6/20
**FL [1]** 2/7
**fled [4]** 28/6 28/14 29/18 38/22
**flee [1]** 31/16
**fleeing [15]**
**flees [1]** 29/14
**flight [6]** 28/12 28/23 29/5 31/8 31/8
 31/18
**FLORIDA [7]** 1/2 1/7 2/4 2/10 28/17
 43/13 43/14
**focused [1]** 7/20
**foot [2]** 28/7 29/19
**force [2]** 22/7 23/19
**forcing [1]** 21/1
**fore [1]** 10/25
**foregoing [1]** 44/20
**forfeited [1]** 41/10
**forfeiture [1]** 37/12
**formalities [1]** 9/17
**FORT [3]** 1/3 1/7 2/10
**Fourthly [1]** 21/4
**frames [1]** 7/15
**Francine [3]** 2/8 44/23 44/24
**frankly [1]** 16/13
**Frederick [2]** 33/12 35/10
**free [1]** 10/1
**freely [1]** 10/6
**FRIDAY [1]** 3/1
**front [2]** 3/25 13/18
**funds [1]** 41/13

## G

**gallery [1]** 15/21

**G**

gang [1]  33/7
gang-related [1]  33/7
garage [1]  36/5
generous [1]  8/4
girlfriend [1]  35/11
gives [2]  4/16 19/3
gonna [7]  6/8 6/24 8/14 11/15 24/17
  39/13 39/22
gotten [1]  12/2
government [21]
grams [2]  33/5 33/18
grand [4]  21/19 21/22 23/22 23/24
grant [1]  16/19
granted [1]  14/19
granting [1]  23/11
grants [1]  8/21
great [1]  7/15
ground [1]  14/18
grounds [1]  11/9
guideline [1]  32/3
guidelines [8]  8/12 11/19 11/23 12/7
  30/1 32/4 38/14 39/18
guilt [1]  16/14
guilty [15]
gunned [1]  33/14

**H**

habit [1]  36/21
hall [1]  11/4
hand [2]  18/22 33/9
happy [1]  19/20
hate [1]  28/17
hear [3]  14/1 19/10 24/5
heard [5]  23/25 23/25 30/5 30/5
  39/17
hearing [3]  1/13 8/17 41/24
helps [1]  15/8
here's [1]  7/12
heroin [31]
high [9]
higher [1]  12/6
hire [1]  23/21
hired [1]  16/3
history [2]  12/11 39/9
hitting [1]  30/23
Honda [2]  27/4 27/6
honor [68]
Honorable [1]  1/14
horse [1]  36/12
hour [1]  43/2
hum [2]  6/21 29/13
Hurley [1]  33/21

**I**

I'll [7]  10/17 19/13 19/16 19/20 24/24
  43/5 44/5
I'm [27]
I've [16]
identified [1]  21/6
identity [1]  38/22
immediately [2]  28/5 28/14
implemented [1]  14/12
impose [6]  29/25 32/15 32/17 37/14

39/13 41/2
imposed [4]  32/12 39/12 39/18 42/1
imposing [1]  42/18
imposition [1]  42/11
impression [1]  24/11
impropriety [1]  23/18
inability [1]  23/5
inappropriate [1]  23/14
incident [1]  33/9
inclined [2]  7/9 8/4
include [1]  42/24
including [1]  40/9
incorporate [1]  37/11
indicated [5]  12/25 16/11 21/22
  21/24 24/2
indicates [1]  28/5
indication [3]  23/12 28/9 28/12
indicted [2]  21/25 26/12
indictment [4]  21/9 22/2 26/17 37/18
individual [2]  32/23 34/14
individuals [2]  34/2 34/7
inducement [1]  11/21
inform [1]  41/11
information [6]  4/20 5/3 27/17 32/19
  40/19 43/3
initial [1]  9/23
initially [3]  12/10 28/2 32/1
initials [1]  33/23
initiated [2]  27/21 35/10
injured [1]  35/13
injury [1]  28/11
insisted [1]  9/12
installed [1]  34/10
installing [1]  35/2
instance [1]  5/22
insufficient [1]  4/4
insulated [1]  34/6
intent [6]  25/1 25/3 26/18 29/3 29/10
  39/2
intercept [1]  34/15
intercepted [1]  34/1
interceptions [1]  33/22
interest [2]  20/19 23/10
interests [2]  6/14 24/15
intimidate [1]  9/17
investigate [2]  21/19 23/22
investigated [1]  34/11
investigating [1]  33/16
investigation [14]
invoke [1]  21/17
involuntary [1]  14/13
isolated [1]  4/19
isolation [1]  5/13
issue [3]  4/19 7/12 10/24
IV [2]  12/11 39/9

**J**

jail [2]  17/19 44/1
job [2]  23/10 24/13
John [2]  2/2 3/6
joint [2]  8/5 11/24
Joseph [10]
Joseph's [4]  23/25 24/1 30/5 39/17
Judge [17]

judgment [4]  37/12 39/23 41/12
  42/25
July [6]  26/15 26/16 27/20 33/14
  34/25 35/17
jury [10]
jury's [2]  11/3 11/14
justice [3]  20/20 37/2 38/19
justified [1]  22/24

**K**

K.C [2]  33/24 33/25
K.C.'s [1]  33/24
keep [1]  43/19
ketamine [2]  36/6 36/12
kilo [1]  25/3
kilogram [2]  25/2 29/3
kilograms [1]  36/7
kingpin [2]  35/7 36/23
knowing [1]  21/15
knowledge [1]  29/23
knows [4]  6/1 31/13 35/8 35/19

**L**

lack [1]  23/23
language [2]  10/19 37/12
LAUDERDALE [3]  1/3 1/7 2/10
law [15]
lawyer [6]  9/23 19/14 19/16 23/6 23/9
  25/14
lawyer's [1]  19/2
lawyers [13]
lawyers' [1]  22/25
lead [1]  16/2
leading [1]  34/25
learned [3]  7/25 32/21 34/5
led [1]  35/9
legal [5]  14/14 14/18 15/7 19/3 32/11
legally [1]  4/4
length [1]  16/5
lengthy [4]  9/3 13/19 13/20 14/6
level 36 [2]  12/20 39/8
levels [7]  11/1 11/5 11/10 11/25
  12/12 12/15 13/9
license [2]  30/20 31/5
life [3]  14/9 19/4 39/18
light [2]  26/2 30/22
Lincoln [1]  21/6
listen [3]  19/13 19/17 19/20
literally [1]  34/23
loaded [1]  7/14
logical [1]  39/3
long-standing [1]  15/18
lousy [1]  23/10
low-level [1]  36/20
lower [1]  4/20
luck [1]  43/10
lying [2]  14/21 14/21

**M**

major [1]  11/21
man [3]  33/12 33/23 37/5
mandatory [4]  5/1 5/4 6/20 13/5
manner [3]  35/23 40/13 41/25
MARC [81]

49

## M

**Marc's [6]**  12/5 17/16 33/17 34/23
  35/4 35/9
**Mark [1]**  27/22
**marked [1]**  28/5
**marshal [1]**  43/9
**matter [9]**
**matters [1]**  37/19
**maximum [1]**  14/15
**McKinney [1]**  12/19
**mean [13]**
**mechanical [1]**  1/24
**meet [1]**  3/24
**meetings [1]**  9/3
**Melchiorre [7]**  15/17 18/14 20/2 20/8
  21/11 22/5 22/10
**mercy [1]**  14/8
**mere [1]**  28/23
**Miami [1]**  2/7
**middle [1]**  12/3
**militates [1]**  16/11
**million [1]**  36/8
**minimum [5]**  5/1 5/4 6/20 6/23 13/5
**minor [2]**  17/1 17/7
**minute [1]**  9/24
**misadvice [1]**  14/22
**miscarriage [1]**  20/20
**mislead [1]**  20/22
**missed [1]**  17/11
**mistaken [1]**  3/15
**moment [2]**  13/13 17/24
**Monday [2]**  17/4 17/20
**money [2]**  22/18 22/21
**month [4]**  3/15 10/7 37/9 39/13
**months [3]**  10/7 32/2 39/9
**morning [2]**  11/13 11/20
**motion [27]**
**motion's [1]**  11/9
**motions [1]**  23/12
**motivation [2]**  29/17 29/19
**motive [1]**  35/12
**move [2]**  34/23 42/24
**Mr. [80]**
**Mr. Cohen [6]**  16/2 16/4 16/9 17/19
  31/25 39/21
**Mr. Delson [1]**  35/7
**Mr. Joseph [2]**  29/22 30/6
**Mr. Joseph's [1]**  30/5
**Mr. Marc [52]**
**Mr. Marc's [4]**  12/5 17/16 33/17 35/4
**Mr. McKinney [1]**  12/19
**Mr. Melchiorre [1]**  15/17
**Mr. Stockton [1]**  33/14
**Mr. Wax [10]**
**Mr. Wax's [1]**  30/11
**Ms. [4]**  6/7 6/11 7/4 25/9
**Ms. Tribuiani [4]**  6/7 6/11 7/4 25/9
**murder [8]**  27/6 27/11 33/15 35/10
  35/12 35/17 35/20 35/21

## N

**name [3]**  17/16 33/13 34/23
**named [2]**  33/12 34/3
**names [1]**  20/3

**narcotics [1]**  36/21
**near [1]**  35/24
**necessary [1]**  40/15
**negligently [1]**  31/24
**negotiate [1]**  39/21
**negotiated [3]**  18/15 20/8 20/21
**negotiating [1]**  38/3
**negotiations [3]**  8/15 8/15 31/23
**neither [1]**  20/24
**norm [3]**  28/17 28/21 28/22
**normally [1]**  36/10
**noted [1]**  14/13
**notes [1]**  14/5
**notice [1]**  21/4
**notification [1]**  35/4
**Notwithstanding [1]**  20/24
**November [4]**  16/7 16/25 16/25 17/2
**nullity [1]**  4/14
**number [1]**  15/11

## O

**oath [5]**  10/10 14/7 18/18 18/20
  19/14
**object [4]**  8/11 8/13 42/5 42/9
**objection [9]**
**objections [11]**
**objects [1]**  21/7
**observed [1]**  30/17
**obstruction [1]**  38/18
**obtain [2]**  4/5 40/20
**obtained [3]**  33/17 34/8 36/4
**occasions [1]**  33/5
**occupants [1]**  30/25
**odd [1]**  17/15
**offense [4]**  4/11 12/11 28/25 31/11
  38/24 39/8
**offenses [2]**  37/5 37/20
**offer [3]**  8/3 8/4 8/5
**office [5]**  20/16 22/8 22/9 27/21 33/6
**officer [4]**  28/13 28/21 40/13 40/19
**officers [1]**  28/8
**Offices [1]**  2/6
**Official [2]**  2/9 44/24
**Oh [2]**  7/2 15/22
**oncoming [1]**  26/6
**opaque [1]**  29/22
**operated [1]**  33/8
**opinion [1]**  37/21
**opportunity [3]**  7/23 25/8 35/18
**oral [2]**  42/7 42/13
**order [10]**
**ordered [1]**  25/5
**organization [1]**  36/24
**original [1]**  4/3
**originally [1]**  30/14
**ostensibly [1]**  29/17
**ought [1]**  16/22
**ounces [1]**  33/5
**overrule [2]**  38/17 39/6
**overruled [2]**  39/11 42/14
**overwhelming [1]**  24/12

## P

**p.m [3]**  1/8 3/1 44/9

**page [1]**  9/25
**paint [1]**  37/5
**Palm [3]**  2/4 27/20 34/4
**paperwork [1]**  35/4
**paragraph [4]**  27/17 30/11 30/12
  30/17
**Paragraph 16 [1]**  27/17
**paragraph 84 [2]**  30/11 30/17
**paragraphs [2]**  28/3 43/3
**paragraphs 95 [1]**  43/3
**parcel [1]**  31/17
**parked [1]**  27/4
**parking [1]**  27/4
**Parnofiello [2]**  2/2 3/6
**part [6]**  27/2 27/17 28/4 29/4 29/17
  31/17
**participate [1]**  43/1
**parties [4]**  8/1 32/5 38/7 41/22
**parties' [1]**  32/4
**party [1]**  41/25
**passengers [1]**  28/7
**passing [1]**  30/22
**patch [1]**  23/4
**pattern [1]**  31/2
**patterns [1]**  30/19
**pausity [1]**  27/16
**pay [3]**  40/17 40/22 41/1
**pending [1]**  3/11
**people [6]**  9/14 9/15 9/15 9/17 29/18
  29/20
**perfect [1]**  9/13
**Perhaps [1]**  11/17
**period [5]**  29/12 29/14 34/17 41/3
  41/16
**permission [1]**  20/22
**permitted [1]**  43/1
**person [5]**  24/8 24/9 32/25 33/11
  40/12
**personal [1]**  11/17
**personally [1]**  34/7
**perspective [2]**  9/5 37/20
**persuasive [2]**  43/6 43/15
**pertinent [1]**  34/16
**phone [5]**  33/23 33/24 34/1 34/8
  34/13
**phones [3]**  34/9 35/2 36/1
**pick [1]**  11/4
**picture [1]**  37/5
**pistol [1]**  41/7
**place [5]**  4/7 18/17 18/20 26/10 40/2
**placement [1]**  43/12
**Plaintiff [1]**  1/7
**plea [74]**
**plead [7]**  9/9 9/18 11/13 11/20 21/5
  22/17 26/14
**pled [5]**  4/7 5/6 16/6 25/1 31/11
**point [9]**
**pole [1]**  34/10
**police [11]**
**position [5]**  3/12 3/13 5/16 8/10 8/12
**possess [6]**  21/10 25/1 29/2 29/10
  39/2 40/7
**possessed [1]**  29/21
**possessing [1]**  40/6

50

**P**

possession [3]  25/2 25/4 26/18
possessory [1]  4/11
prays [1]  8/21
preceding [1]  28/2
precluded [3]  11/5 11/6 11/7
precludes [1]  5/21
predecessor [2]  3/21 38/3
predicate [2]  4/11 27/25
prejudice [2]  3/23 15/13
preliminary [1]  37/12
preparation [1]  26/1
prepare [2]  8/7 22/7
prepared [3]  7/13 7/17 9/10
presence [1]  29/23
present [1]  3/9
presented [3]  20/24 22/9 38/8
presentence [15]
pretrial [1]  37/1
prevent [1]  23/16
preventing [1]  11/12
primarily [1]  3/20
priority [1]  7/15
prison [3]  35/15 39/24 39/25
Prisons [4]  43/1 43/7 43/12 43/16
private [1]  23/21
privileged [1]  27/13
pro [2]  3/18 13/1
pro se [2]  3/18 13/1
probation [3]  12/19 40/13 40/19
proceed [2]  8/23 13/24
proceeded [1]  30/24
proceeding [1]  21/20
proceedings [3]  1/24 44/9 44/21
produced [1]  1/24
proffer [4]  8/1 24/3 28/1 28/4
program [3]  43/2 43/6 43/6
prohibited [1]  40/6
prompted [3]  15/5 26/25 29/5
pronouncement [1]  14/14
proof [4]  30/2 30/3 30/5 31/12
property [1]  40/12
prosecute [1]  41/14
protect [1]  20/12
provide [1]  40/18
provided [1]  12/19
provision [2]  7/10 7/11
PSI [5]  12/25 13/4 15/3 15/4 30/11
PSR [9]
public [4]  20/16 21/1 22/6 22/7
pulled [2]  27/22 38/22
purchased [1]  33/4
pure [1]  36/9
purity [1]  36/18
purposes [1]  22/3
pursuit [1]  26/4

**Q**

quality [1]  36/18
qualms [1]  35/21
questions [1]  13/21

**R**

railroaded [1]  23/9

raise [1]  18/22
ran [2]  29/18 30/21
range [4]  11/23 12/11 32/3 39/9
rate [7]  26/7 28/6 28/15 28/16 28/21
 30/24 39/4
rational [3]  5/6 5/14 5/15
RDAP [1]  43/5
read [7]  10/14 12/18 19/19 19/22
 24/20 25/13 27/17
reading [1]  26/9
ready [1]  7/14
realized [1]  27/22
realizing [2]  43/6 43/14
reasons [4]  3/19 16/20 37/7 42/7
recall [1]  27/3
received [1]  25/6
recently [1]  35/16
recess [2]  42/16 44/6
recited [1]  10/16
reckless [5]  28/24 29/5 30/19 35/22
 42/11
recklessly [1]  39/5
recognition [1]  23/14
Recognizing [1]  4/3
recommend [7]  32/5 37/9 38/4 39/20
 43/5 43/12 43/14
recommendation [7]  5/18 5/20 8/6
 11/24 38/9 42/25 43/15
recommended [2]  6/23 39/15
record [9]
recorded [1]  1/24
recording [1]  33/8
recovered [1]  33/18
red [2]  26/2 30/21
redacted [1]  28/2
reduces [1]  14/14
refused [1]  33/19
relation [1]  26/10
relationship [2]  3/20 15/18
relay [1]  5/23
release [10]
released [1]  35/16
relied [2]  5/1 7/24
relief [1]  4/5
rely [1]  28/10
remind [1]  35/25
remotely [1]  27/18
rendered [1]  14/13
rendering [1]  4/13
rented [1]  33/1
report [16]
reporter [4]  2/8 2/9 10/3 44/24
represent [6]  3/15 21/2 23/8 23/17
 23/19 41/15
represented [2]  15/17 20/15
representing [2]  9/15 23/13
request [2]  10/4 43/11
requesting [2]  4/6 14/3
Residential [1]  43/2
resolve [1]  23/4
resources [1]  11/12
responded [1]  33/7
responsibility [3]  10/21 11/16 12/2
result [2]  7/3 12/5

retaliation [1]  35/12
retrieve [1]  32/25
return [1]  6/22
returning [1]  33/10
revenge [1]  35/18
review [3]  7/24 7/25 25/8
reviewed [1]  25/7
reviewing [1]  16/5
rid [1]  39/22
rights [2]  9/24 20/12
Rinku [2]  2/3 3/6
rise [1]  44/7
RMR [2]  2/8 44/24
RMR-CRR [1]  44/24
Rob [6]  18/14 20/2 20/8 21/11 22/5
 22/10
robber [1]  38/21
robbery [1]  38/25
Room [1]  2/10
rounds [3]  41/7 41/8 41/9
rubber [1]  22/2
rule [3]  8/13 18/6 22/11
ruled [1]  19/10
RV [2]  35/24 36/1

**S**

safety [1]  30/24
Salopek [3]  2/8 44/23 44/24
satisfying [1]  10/6
Saturday [1]  4/1
savvy [1]  34/5
saw [5]  25/23 27/6 27/7 28/5 38/2
scenario [1]  36/22
scene [2]  28/6 28/14
scheduled [1]  4/8
school [1]  19/2
se [2]  3/18 13/1
search [4]  33/17 35/5 36/4 40/11
second [3]  3/11 34/13 42/6
Section [2]  4/12 38/15
self [1]  40/21
self-employment [1]  40/21
selling [1]  36/21
sense [1]  35/8
sentence [29]
sentenced [1]  39/24
sentences [1]  14/9
sentencing [17]
series [2]  32/22 35/8
serious [2]  38/11 37/7
services [1]  37/1
seven [4]  14/7 33/5 35/25 36/7
severed [1]  24/7
shall [4]  40/5 40/6 40/7 40/8
sheriff's [2]  27/21 33/6
shooting [5]  33/7 33/12 33/16 35/13
 35/14
shot [1]  33/9
sic [3]  21/22 22/6 22/7
sign [1]  11/15
signature [1]  16/8
signed [5]  16/25 17/2 17/18 17/20
 24/3 33/21 38/8
simple [1]  4/10

**S**

situation **[4]** 5/6 13/13 15/1 39/1
sixty **[1]** 9/25
sixty-page **[1]** 9/25
slam **[1]** 30/22
slanted **[1]** 24/6
slowly **[1]** 20/4
smart **[2]** 34/5 34/24
someone's **[1]** 28/18
something's **[1]** 10/6
soon **[1]** 31/14
sound **[1]** 28/18
sounds **[1]** 37/25
source **[3]** 32/23 33/25 34/14
south **[1]** 28/17
SOUTHERN **[1]** 1/2
special **[3]** 40/9 41/2 41/3
specific **[1]** 32/19
specified **[1]** 32/25
speed **[9]**
speeding **[2]** 26/4 28/19
Speer **[1]** 41/8
spellings **[1]** 20/5
spent **[1]** 9/3
spoke **[2]** 32/1 33/25
Springfield **[1]** 41/6
square **[1]** 24/17
squarely **[1]** 12/3
squiggly **[1]** 17/17
stamp **[1]** 22/2
stand **[1]** 18/22
standard **[1]** 40/8
standing **[3]** 9/15 15/18 20/20
state **[4]** 9/20 14/11 30/15 33/7
statement **[1]** 19/18
statements **[1]** 10/16
states **[15]**
States vs **[1]** 3/4
statute **[1]** 21/23
statutory **[1]** 14/14
stay **[1]** 23/20
stenography **[1]** 1/24
STEP **[5]** 4/9 4/12 9/7 14/12 15/8
Stockton **[3]** 33/12 33/14 35/15
Stockton's **[2]** 35/10 35/10
stop **[5]** 15/1 26/4 27/21 30/18 31/1
storm **[1]** 9/13
strategy **[4]** 8/13 8/16 19/15 38/11
strategy-wise **[1]** 8/13
strength **[1]** 36/17
studio **[2]** 33/8 33/17
subject **[1]** 30/16
submit **[2]** 16/20 40/11
subsequent **[1]** 14/14
substances **[1]** 40/8
successfully **[2]** 35/23 40/15
sufficient **[3]** 24/2 37/24 38/16
Suite **[2]** 2/4 2/7
Sunday **[2]** 11/14 17/19
supervised **[5]** 40/2 40/3 40/5 40/9
  41/4
supply **[2]** 32/23 33/25
support **[1]** 36/21
supports **[1]** 24/3

Supreme **[1]** 14/12
surprised **[1]** 24/15
surveillance **[2]** 33/10 34/17
surveilling **[1]** 27/5
suspended **[2]** 30/20 31/5
suspicions **[1]** 38/1
sustain **[1]** 39/10
sworn **[1]** 18/23
system **[1]** 37/2

**T**

table **[1]** 3/9
tactical **[1]** 39/19
take **[4]** 6/15 8/10 8/12 26/3
taken **[1]** 20/17
talk **[5]** 10/20 13/10 19/14 19/16
  40/24
talked **[1]** 13/15
talking **[1]** 30/12
tap **[1]** 34/13
target **[2]** 32/24 33/3
tasked **[1]** 36/17
tell **[3]** 11/14 19/8 35/6
ten-year **[1]** 5/4
term **[1]** 38/10
testified **[1]** 14/6
testimony **[2]** 21/20 31/14
testing **[1]** 36/17
Thank **[4]** 18/4 19/24 37/13 43/17
theft **[1]** 38/22
thereafter **[2]** 33/21 34/8
thereby **[1]** 20/15
therein **[1]** 42/7
think **[24]**
thinks **[1]** 37/6
Thirdly **[1]** 20/18
thought **[6]** 12/8 12/10 16/9 17/11
  17/17 42/18
throwing **[1]** 14/7
thus **[1]** 30/22
tied **[1]** 28/25
time **[16]**
times **[3]** 10/15 10/15 14/7
timing **[1]** 16/11
tinker **[1]** 8/15
top **[1]** 36/24
tossed **[1]** 31/15
totally **[1]** 21/7
tough **[1]** 5/7
tow **[3]** 27/21 27/23 34/11
trackers **[3]** 34/8 34/9 35/2
tractor **[1]** 34/9
traffic **[4]** 26/6 27/21 30/18 31/1
trafficking **[1]** 36/24
trailers **[1]** 34/10
tranquilizer **[1]** 36/13
transactions **[1]** 32/24
transcript **[8]** 1/13 1/24 9/25 10/4
  10/15 13/16 24/21 44/20
trappings **[1]** 39/14
treatment **[2]** 40/15 40/16
trial **[32]**
Tribuiani **[6]** 2/2 3/6 6/7 6/11 7/4 25/9
trouble **[2]** 10/5 36/25

truck **[2]** 27/22 27/23
truth **[2]** 10/14 28/18
turning **[1]** 37/1
two-level **[4]** 25/20 27/19 38/19
  42/10

**U**

U.S **[2]** 2/3 21/12
U.S. **[3]** 14/17 18/15 41/10
U.S. 742 **[1]** 14/17
U.S. attorney **[1]** 18/15
U.S. currency **[1]** 41/10
U.S.C. **[1]** 4/12
U.S.C. Section **[1]** 4/12
Ultimately **[2]** 33/25 34/15
Um **[2]** 6/21 29/13
Um-hum **[2]** 6/21 29/13
unable **[1]** 3/24
unbeknownst **[1]** 20/22
uncharged **[1]** 37/20
uncomfortable **[1]** 16/1
unconstitutional **[1]** 11/9
undercover **[2]** 32/22 34/18
understand **[9]**
understanding **[7]** 5/7 5/14 9/4 32/4
  35/7 35/15 41/18
understood **[3]** 4/22 4/23 14/8
unethical **[1]** 23/16
UNITED **[14]**
unlikely **[2]** 10/2 10/17
unpaid **[1]** 41/2
unrelated **[1]** 35/15
us **[2]** 5/21 8/5
USSG **[1]** 42/11
utilize **[1]** 8/16
utilized **[4]** 33/23 34/9 34/10 34/14

**V**

vacuum **[1]** 5/13
valid **[1]** 24/22
variance **[5]** 5/22 6/4 7/17 15/12 32/6
vehicle **[11]**
vehicles **[1]** 35/2
video **[3]** 9/11 25/25 33/10
videotape **[1]** 25/23
violent **[1]** 37/6
virtue **[1]** 15/11
visited **[1]** 17/19
visual **[1]** 9/10
voluntarily **[4]** 10/1 10/6 10/8 24/20
voluntariness **[1]** 23/1
voluntary **[2]** 14/22 24/20
vs. **[1]** 14/17

**W**

waited **[1]** 15/2
waive **[7]** 40/22 41/1 41/5 42/19
  42/21 42/22 43/19
waived **[1]** 43/21
waiver **[2]** 41/17 41/19
waiving **[2]** 42/18 42/19
walked **[1]** 34/18
warrant **[3]** 33/17 35/5 36/4
warranted **[1]** 37/8

52

## W

**watched [2]**  25/25 32/24
**watching [1]**  9/14
**Wax [13]**
**Wax's [1]**  30/11
**week [1]**  3/24
**weeks [1]**  34/25
**weighed [1]**  36/7
**West [1]**  2/4
**whatsoever [2]**  15/7 15/13
**who's [3]**  3/9 24/9 36/21
**wiggle [1]**  10/18
**wiggling [1]**  10/21
**William [1]**  1/14
**Williams [1]**  3/25
**willing [1]**  8/20
**Winchester [1]**  41/9
**wire [2]**  33/22 34/13
**wise [1]**  8/13
**wishes [1]**  19/18
**withdraw [24]**
**withdrawal [2]**  14/4 16/12
**witness [1]**  18/23
**word [1]**  35/8
**work [1]**  4/24
**worse [2]**  9/18 28/17
**worth [3]**  36/7 43/8 43/16
**WPD [1]**  1/4
**wrestled [1]**  5/11
**written [3]**  3/14 40/20 42/12

## Y

**yard [1]**  34/11