UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF FLORIDA

FORT LAUDERDALE DIVISION

CASE NO. 18-80153-CR-WPD


UNITED STATES OF AMERICA,               .
                                        .
            Plaintiff,                  . Fort Lauderdale, Florida
                                        . November 2, 2018
            v.                          . 10:59 a.m.
                                        .
DELSON MARC,                            .
                                        .
            Defendant.                  .
. . . . . . . . . . . . . . . . .

                    -   -   -   -   -

        Transcript of Motion to Suppress Hearing had

        before the Honorable William P. Dimitrouleas,

            United States District Judge.

                    -   -   -   -   -

Proceedings recorded by mechanical stenography, transcript
produced by computer.

```
APPEARANCES:

For the Government:    Rinku T. Tribuiani
                       Assistant U.S. Attorney
                       Unite States Attorney's Office
                       500 S. Australian Avenue
                       Suite 400
                       West Palm Beach, Florida  33401
                              and
                       John J. Parnofiello
                       State Attorney's Office
                       401 N. Dixie Highway
                       West Palm Beach, Florida  33401


For the Defendant:     Robert C. Buschel, Esq.
                       Buschel Gibbons, P.A.
                       100 S.E. 3rd Avenue
                       Suite 1300
                       Fort Lauderdale, Florida  33394


Court Reporter:        Francine C. Salopek, RMR, CRR
                       Official Court Reporter
                       United States District Court
                       299 E. Broward Blvd., Room 207
                       Fort Lauderdale, Florida  33301
                       (305)301-3276

                          -   -   -   -   -
```

1          **FRIDAY, NOVEMBER 2, 2018, 10:59 A.M.**

2               *(The Judge entered the courtroom)*

3          THE COURT:  Please be seated.

4          United States vs. Delson Marc.

5          If counsel would announce their appearances for the

6     record.

7          MS. TRIBUIANI:  Rinku Tribuiani and John Parnofiello

8     on behalf of the United States.  Good morning, Your Honor.

9          MR. PARNOFIELLO:  Good morning, Judge.

10         MR. BUSCHEL:  Good morning, Judge.  Robert Buschel on

11    behalf of Delson Marc, who is seated in this courtroom.

12         THE COURT:  All right.  We're here for a motion to

13    suppress.  Both sides ready to proceed?

14         MS. TRIBUIANI:  Yes, Your Honor.

15         MR. BUSCHEL:  Yes, sir.

16         THE COURT:  The government may call its first witness.

17         MS. TRIBUIANI:  Your Honor, by stipulation, the

18    government would start by offering into evidence a lease

19    agreement executed by Defendant Delson Marc.

20              *(Government's Exhibit Number 1 marked for*

21    *identification)*

22         THE COURT:  All right.  So is that Government's

23    Exhibit 1?

24         MS. TRIBUIANI:  Yes, it is.

25         THE COURT:  All right.  That will be received.

4

OLIVER - DIRECT/TRIBUIANI

1          *(Government's Exhibit Number 1 admitted into evidence)*

2              MS. TRIBUIANI:  Your Honor, the government calls

3      Detective Corey Oliver.

4              ROOM CLERK:  Please raise your right hand.

5          *(COREY OLIVER, GOVERNMENT'S WITNESS, WAS SWORN)*

6              ROOM CLERK:  Thank you.  You may be seated.

7              THE WITNESS:  Thank you.

8              THE COURT:  Please state your name.  Please spell your

9      name for the record.

10             THE WITNESS:  Detective Corey Oliver, O-L-I-V-E-R.

11                        **DIRECT EXAMINATION**

12     BY MS. TRIBUIANI:

13     Q.  Sir, what is your occupation?

14     A.  I work for the Palm Beach County Sheriff's Office.

15     Q.  How long have you been with the Palm Beach County Sheriff's

16     Office?

17     A.  Twelve years.

18     Q.  What is your current assignment?

19     A.  I work for the violent crimes gang unit division.

20     Q.  Back on July 13th, 2018, were you also in the gang unit?

21     A.  Yes.

22     Q.  And on that day, sir, were you conducting a follow-up

23     investigation at a tractor-trailer lot?

24     A.  Yes.

25     Q.  Specifically, where were you?

OLIVER - DIRECT/TRIBUIANI

```
1    A.  759 Benoist Farms Road, Doerr's storage lot.

2    Q.  Is that a facility named Doerr's Trailers?

3    A.  Yes.

4    Q.  Were you at that time assisted by other agents?

5    A.  At that time, I was with Detective Drummin and Agent Combs.

6    Q.  And specifically, who is Agent Combs?

7    A.  He is a certified canine handler.

8    Q.  And what was your assignment that day at Doerr's Trailers

9    on July 13th?

10   A.  I was conducting a follow-up investigation that -- that

11   occurred the day prior, when Delson Marc was apprehended at

12   that location.

13   Q.  So Delson Marc was arrested at Doerr's Trailers on

14   July 13th?

15   A.  Yes.

16   Q.  And what was your assignment on July -- excuse me -- he was

17   arrested on July 12th.  What was your assignment on July 13th?

18   A.  To conduct a follow-up into his storage facility at that

19   location.

20   Q.  Now, Doerr's Trailers, that area, is it open to the public?

21   A.  Yes.

22   Q.  Is it accessible to the public?

23   A.  Yes.

24   Q.  Can anyone from the public walk into that open space?

25   A.  Yes.
```

OLIVER - DIRECT/TRIBUIANI

1   Q.  Were people required to check in with the management before

2   they walked into the open space?

3   A.  No.

4   Q.  What kind of business is Doerr's Trailers?

5   A.  It's a storage lot, I guess, liking a parking storage lot

6   for trailers, containers, recreational vehicles, things like

7   that.

8   Q.  When I hear parking spot or parking lots, I think of

9   clearly marked demarcated lines separating spots.  Is that the

10  kind of features that Doerr's Trailers had?

11  A.  No.

12  Q.  Describe the area.

13  A.  A lot of the area is basically just dirt.  There's some

14  shell rocks.  There's certain areas of concrete there.

15  Q.  Now, you've testified that the area is open and accessible

16  to the public, and despite that, did you still speak to the

17  property manager in order to gain their permission to access

18  the open space tow yard?

19  A.  Yes, I did.

20  Q.  Did the manager give you permission to access the entire

21  open space tow yard?

22  A.  Yes, he did.

23  Q.  Did you then approach Delson Marc's white RV?

24  A.  Yes, I did.

25  Q.  And how did you know that this was Delson Marc's white RV?

FRANCINE C. SALOPEK, OFFICIAL COURT REPORTER
(305)301-3276

OLIVER - DIRECT/TRIBUIANI

1   A.  I -- they're identified by his -- the lot itself is

2   identified by his business.  And also, the management verified

3   that those were his items.

4   Q.  Was the area surrounding Delson Marc's RV exposed and

5   accessible to the public?

6   A.  Yes, it was.

7   Q.  Was there any enclosure surrounding Delson Marc's RV?

8   A.  No.

9   Q.  Did the area immediately around Delson's RV look like the

10  rest of the open area?

11  A.  Yes.

12  Q.  Describe the condition of the RV from the exterior.

13  A.  It appeared that it hadn't been utilized in years.  There

14  was some overgrown shrubbery along the south side of it.  The

15  windows were boarded up on the east side of the recreational

16  vehicle.  Like I said, it appeared that it hadn't been utilized

17  in years.  The grass, there was, like, plants growing around it

18  also on the north side of it.

19  Q.  Did the RV have a license plate?

20  A.  Yes.

21  Q.  Did it have a VIN number?

22  A.  Yes.

23  Q.  From the exterior of the RV, could you tell if it had

24  access to running water?

25  A.  From the outside of it?  It didn't appear that it had

OLIVER - DIRECT/TRIBUIANI

1    access to running water.

2    Q.  Was there any indication to you that anybody was living in

3    the RV?

4    A.  No.

5    Q.  Did Detective Combs deploy his certified canine, Kaya?

6    A.  Yes, he did.

7    Q.  And did Kaya alert towards the RV indicating that she was

8    detecting the odor that she was trained to detect?

9    A.  Yes.

10   Q.  As a result, did you apply for and receive a state search

11   warrant?

12   A.  Yes, I did.

13           MS. TRIBUIANI:  Your Honor, by stipulation, at this

14   time, I would offer Government's Exhibit 2, a search warrant,

15   into evidence.

16           *(Government's Exhibit Number 2 marked for*

17   *identification)*

18           THE COURT:  Okay.  Two will be received.

19           *(Government's Exhibit Number 2 admitted into evidence)*

20   BY MS. TRIBUIANI:

21   Q.  All right, sir, you've got Government's 2 there in front of

22   you, and what is this?

23   A.  That's the search warrant that I applied for.

24   Q.  Okay.  And what time did you receive that search warrant?

25   A.  That was signed at -- right here it says 1440 hours, it

OLIVER - DIRECT/TRIBUIANI

1  looks like.

2  Q.  After you received the search warrant, did you then begin

3  to search the RV?

4  A.  Yes.  After the search warrant was signed by the judge,

5  uhm, I began to conduct our -- or furthering our investigation

6  into searching the recreational vehicle.

7  Q.  How did you make entry?

8  A.  We had to pry the -- it's like an access door on the side,

9  the main door, we had to pry it open.

10  Q.  During the course of your search, in general terms, what

11  did you find?

12  A.  As soon as we began searching -- Detective Hermanson was

13  also assisting with the search of that recreational vehicle.

14  There was a cabinet area immediately to the left when you walk

15  in up on the top shelf that had a green shopping bag.

16          Inside of the green shopping bag were several items,

17  which included a firearm, a black handgun, a -- it was like a

18  pouch, like a cigar pouch that contained approximately 40

19  capsules of suspected heroin, ammunition, magazines for

20  firearms, and some other weapon accessories.

21  Q.  After you discovered the firearm and ammunition, what did

22  you do?

23  A.  As soon as these items were located, I backed out of the

24  location and applied for another search warrant.

25  Q.  Why?

OLIVER - DIRECT/TRIBUIANI

1   A.  Because on the initial search warrant, I did not have

2   firearms listed on it.

3           *(Discussion had off the record between counsel)*

4           MS. TRIBUIANI:  Your Honor, at this time, I would move

5   Government's Exhibit 3 into evidence by stipulation, a second

6   search warrant.

7           *(Government's Exhibit Number 3 marked for*

8   *identification)*

9           THE COURT:  All right.  Three will be received.

10          *(Government's Exhibit Number 3 admitted into evidence)*

11  BY MS. TRIBUIANI:

12  Q.  All right, sir, you've got Government's Exhibit 3 in front

13  of you.  What is this?

14  A.  That's the second search warrant that I applied for.

15  Q.  Now, during the course of your search, were photographs

16  taken of the exterior and the interior of the RV?

17  A.  Yes.

18          MS. TRIBUIANI:  Your Honor, I would move Government's

19  Exhibit 4A through 4Q, a composite exhibit, into evidence by

20  stipulation.

21          *(Government's Exhibit Numbers 4A through 4Q marked for*

22  *identification)*

23          THE COURT:  All right.  There being no objection, 4

24  will be received.

25          *(Government's Exhibit Number 4 admitted into evidence)*

OLIVER - DIRECT/TRIBUIANI

1          THE WITNESS:  Thank you.

2     BY MS. TRIBUIANI:

3     Q.  All right, sir, let's go through these photographs starting

4     with 4A.  And if you could just tell us what each photograph

5     shows.

6     A.  All right.  The 4A photograph is the white recreational

7     vehicle.  There's also an Astro van there, but the white

8     recreational vehicle, that's the vehicle that we're talking

9     about.

10    Q.  Okay.  And 4B?

11    A.  That's the white recreational vehicle with the door open.

12    Q.  4C?

13    A.  That's the rear of the recreational vehicle, which was

14    facing the east.

15    Q.  And does that photograph depict the license plate of the

16    vehicle?

17    A.  Yeah, you can partially see it.

18    Q.  4D?

19    A.  That's the front -- I'm sorry -- that's the front of the

20    recreational vehicle with the door open.

21    Q.  4E?

22    A.  That's a picture of the door.

23    Q.  And is that the door that was breached to make entry?

24    A.  Yes, ma'am.

25    Q.  4F.

OLIVER - DIRECT/TRIBUIANI

1    A.  That's the initial view when you open the entry door that

2    we had to gain access to.  As soon as you walk in, that's what

3    you see.

4    Q.  4G.

5    A.  This is inside of the rec -- or recreational vehicle.  This

6    is -- if you were to walk in through the front door, you'd look

7    to the left, and this is the area, this is the floor area.

8    Q.  And, sir, just to be clear, the photograph 4G shows what

9    appears to be quite a bit of trash on the floor.  Was this

10   photograph taken before your search or after your search?

11   A.  This is how it looked before our search.

12   Q.  4H?

13   A.  That's just another photograph of the area inside the

14   recreational vehicle.

15   Q.  4I.

16   A.  In this photograph, if you look up to the top left portion,

17   there's like a cabinet area with no doors on it.  You can see

18   the green bag.  That's the green bag that the firearm and

19   suspected narcotics and ammunition was located in.

20   Q.  And then towards the back of 4I, you can see a partial

21   window.  Is the rest of that window boarded up?

22   A.  Yes.

23   Q.  4J?

24   A.  That's a -- it's kind of like a homemade table, I guess,

25   that's underneath the cabinet.  It was like a packaging station

OLIVER - DIRECT/TRIBUIANI

1    kind of, I guess you could say.  There's some gloves there with

2    a -- like a white plate with some unknown suspected -- or

3    unknown suspected packaging substance inside that bag, white

4    powder.

5    Q.   And is there also a box of baking soda?

6    A.   Yes.

7    Q.   4K?

8    A.   That's just another view of the inside of the recreational

9    vehicle.

10   Q.   4L?

11   A.   That's a closer view of the green bag that contained the

12   firearm, ammunition, and suspected narcotics.

13   Q.   4M?

14   A.   That's another view of the green bag that contained those

15   items.

16   Q.   4N?

17   A.   That's an up-close view of the green bag that contained the

18   firearm, ammunition, and suspected narcotics.

19   Q.   4O?

20   A.   That's another close view of it.

21   Q.   4P.

22   A.   This is a picture of the driver compartment.  Uhm,

23   basically, if you come in through the main door that we made

24   entry into, if you were to look to the right, this is what you

25   would see.  Above the two seats, there's a shelf there.

OLIVER - DIRECT/TRIBUIANI

1    Q.  4Q.

2    A.  On top of this -- on top of this shelf, there was --

3    there's a metal bowl there, there's some packaging materials

4    that are consistent with narcotics sales, clear baggies,

5    there's latex gloves.  There was a scale, I believe.

6    Q.  Sir, inside the defendant's RV, was there a kitchen?

7    A.  No.

8    Q.  Was there a stove?

9    A.  No.

10   Q.  A bathroom?

11   A.  No.

12   Q.  Any toiletries?

13   A.  No.

14   Q.  Any evidence that anybody was living there?

15   A.  No.

16          MS. TRIBUIANI:  May I have a moment, Judge?

17          THE COURT:  Cross-examination.

18          MS. TRIBUIANI:  Just one moment, your Honor?  One

19   moment?

20          THE COURT:  Oh, I thought -- go ahead.

21          (Discussion had off the record between counsel)

22          MS. TRIBUIANI:  I tender the witness.

23          THE COURT:  Cross-examination.

24          MR. BUSCHEL:  Thank you, Judge.

25

OLIVER - CROSS/BUSCHEL

1                        **CROSS-EXAMINATION**

2    BY MR. BUSCHEL:

3    Q.   Detective, you didn't have keys to the RV?

4    A.   No, not that day, I did not.

5    Q.   Did it require keys to open the RV?

6    A.   Yes.

7    Q.   Okay.  And you got that from?  You didn't have it that day.

8    You all pried open the door, correct?

9    A.   That day we pried open the door.

10   Q.   Any keys to start the RV?

11   A.   No.

12   Q.   Did the manager provide keys to open the RV?

13   A.   No.

14   Q.   To start the RV?

15   A.   No.

16   Q.   Do you remember the name of the manager or landlord?

17   A.   It's a -- I think it's Braswell *(phonetic)* or something.  I

18   have the name in the paperwork.  I forgot what it is.

19   Q.   Did he walk around the lot with you?  Was he with you

20   during the search, particularly the dog, when the dog was doing

21   the search?

22   A.   Not the initial search.  He basically came over and he

23   verified which items -- which area was Mr. Marc's in his lease

24   agreement and which items were his on that property.

25   Q.   Okay.  In the warrant, you talked about this RV.  Was it --

OLIVER - CROSS/BUSCHEL

1   you testified on direct that this didn't appear to work or

2   drive.

3   A.   No.

4   Q.   Meaning you agree?

5   A.   *(No response)*

6   Q.   You agree that it does not operate?

7   A.   Oh, I agree that it does not, yes.

8   Q.   Okay.  And the license plate, it was expired?  The tag?

9   A.   Yes.

10  Q.   Okay.  Are you aware of any pole camera that was there as

11  pursuant to the -- an investigation by you all?

12  A.   Yes.

13  Q.   Okay.  And it was of the lot, correct?

14  A.   I believe it was on another portion of the lot.  But I

15  don't -- I don't have that -- I was not part of that

16  investigation.

17  Q.   Okay.  Were you there for the dog sniff?

18  A.   Yes.

19  Q.   Okay.  This dog, Kaya, the warrant says that the dog

20  sniffed, quote/unquote, the cabin entrance, correct?

21  A.   Yes.

22  Q.   Okay.  You want the dog -- the dog should smell inside,

23  sniff inside the RV, not the surrounding area, correct?

24  A.   I wouldn't be able to answer that question, because I'm not

25  a -- I'm not certified to handle narcotics -- a narcotics

OLIVER - REDIRECT/TRIBUIANI

1  canine, let alone a canine in general.

2  Q.  But the dog seems to be putting its nose, as you indicated

3  in your application, up against the door --

4  A.  Yes.

5  Q.  -- to smell inside.

6  A.  And that's what Agent Combs relayed to me.

7  Q.  Okay.  Very good.

8          MR. BUSCHEL:  Thank you, Judge.

9          THE COURT:  Redirect?

10                    **REDIRECT EXAMINATION**

11  BY MS. TRIBUIANI:

12  Q.  Sir, just to be clear -- and feel free to turn to your

13  affidavit if you need to refresh your memory -- did the dog

14  sniff the air around the RV?

15  A.  *(No response)*

16  Q.  I'm looking at the bottom of page 5 of 12 in your second

17  search warrant, Government's 3.

18  A.  The second one?

19          Wait.  I gotta find it.

20          Are you talking about where it says:

21          "Kaya began sniffing the cabin entrance door to

22      the white RV, and Agent Combs observed a behavior

23      change and heard an audible respiratory change.  Kaya

24      pushed her nose hard against the bottom side of the

25      door and sniffed more frantic.  Kaya then began to

```
 1          bracket back and forth between the RV camper and the
 2          white van.  Kaya then spun, placed her nose hard
 3          against the RV door.  Kaya came to a final response
 4          alert, indicating that she was detecting the odors
 5          which she is trained to detect."
 6     Q.  The bottom of page 5, the last sentence there?  Did Kaya
 7     first begin sniffing the free air around Marc's assigned
 8     parking spots?
 9     A.  Yes.
10     Q.  Okay.  And then after that sniff, did Kaya make her way
11     towards each one of those structures?
12     A.  Yes.
13     Q.  Was Kaya ever inside Marc's RV, or was she sniffing the
14     exterior of Marc's RV?
15     A.  The exterior.  She never went in.
16              MS. TRIBUIANI:  Nothing further.
17              THE COURT:  Thank you, Detective.  You may step down.
18     You're excused.
19              THE WITNESS:  Thank you.
20              (Witness excused)
21              THE COURT:  The government may call its next witness.
22              MS. TRIBUIANI:  The government rests.
23              THE COURT:  Mr. Buschel?
24              MR. BUSCHEL:  Nothing for Mr. Marc.  Argument?
25              THE COURT:  And Mr. Marc understands he has a
```

19

1   constitutional right to testify?

2             *(Discussion had off the record between counsel and*

3   *client)*

4             MR. BUSCHEL:  He understands, Judge.

5             THE COURT:  Any objection to my having a colloquy with

6   him?

7             *(Discussion had off the record between counsel and*

8   *client)*

9             THE DEFENDANT:  Excuse me, sir?

10            THE COURT:  You understand you have a constitutional

11  right to testify?

12            THE DEFENDANT:  Yes, sir.

13            THE COURT:  You have a constitutional right not to

14  testify.  Do you understand that?

15            THE DEFENDANT:  Yes, sir.

16            THE COURT:  And there may be strategy reasons for or

17  against your testifying.  Do you understand that?

18            THE DEFENDANT:  Yes, sir.

19            THE COURT:  Your lawyer's been to law school, he's

20  tried a lot of cases, he gives you the benefit of his legal

21  advice, but it's your life; you don't have to follow the

22  advice.  Do you understand that?

23            THE DEFENDANT:  Yes, sir.

24            THE COURT:  And whatever decision you make, you're

25  going to be stuck with that decision.  Do you understand that?

20

```
1              THE DEFENDANT:  Um-hum.

2              THE COURT:  You have to answer yes or no.

3              MR. BUSCHEL:  Answer yes.

4              THE DEFENDANT:  Yes, sir.

5              THE COURT:  For example, if you decided to testify,

6  and if you turned out to be a lousy witness, and I denied the

7  motion to suppress, you can't complain about that, because you

8  decided to testify.  Do you understand that?

9              THE DEFENDANT:  Yes, sir.

10             THE COURT:  On the other hand, if you decide not to

11  testify, and if I deny the motion to suppress, you can't come

12  back later on and say, "Oh, Judge, if you would have just heard

13  my testimony, you would have granted the motion to suppress."

14  Do you understand that?

15             THE DEFENDANT:  Yes, sir.

16             THE COURT:  And have you had enough time to think

17  about this and talk about it with your lawyer?

18             THE DEFENDANT:  Yes, sir.

19             THE COURT:  And do you agree with the strategy of not

20  testifying in the motion to suppress?

21             THE DEFENDANT:  Yes, sir.

22             THE COURT:  Argument, Mr. Buschel?

23             MR. BUSCHEL:  Thank you, Judge.

24             (Discussion had off the record between counsel and

25  client)
```

```
 1          MR. BUSCHEL:  Judge, the motion to suppress should be
 2   granted for the following reasons:  The law on the matter is
 3   this.  A dog sniff is a search, and the Court must consider the
 4   four corners of the search warrant affidavit.  If the car is
 5   not movable, which seems to be the unrefutable (sic) testimony,
 6   the RV is not movable, then it is a structure, and the Court
 7   should consider it a structure.
 8          I will deal with the lease, which we didn't talk about
 9   during the cross-examination.  But -- I'm sorry -- first, I
10   want to say that the warrant itself actually says:
11          "Kaya pushed her nose hard against the bottom
12       side of the door and sniffed more frantic.  Kaya then
13       began to bracket back and forth between the RV camper
14       and the white van."
15          And that's critical, because if it's not smelling
16   inside the van, I don't think that -- or the RV, then there is
17   no probable cause to put in the warrant.  Without the dog
18   sniff, there is no warrant -- there is no probable cause to
19   support the warrant.  And I think that's abundantly clear from
20   the affidavit itself.
21          The government and I agreed to put in the lease.  The
22   lease agreement does prove standing of the actual lot, and we
23   know that the RV is owned by Mr. Marc.
24          The lease itself says that there is some type of
25   inspection that's granted to the landlord.  The landlord wasn't
```

1    present; it seemed to be a manager.  The lease was there to --

2    purpose of this inspection is to stop by there to make sure

3    that no one's making repairs -- or to make repairs, according

4    to the lease.  If the lot itself is not -- if -- but the tenant

5    is not allowed to make repairs.

6            So I'm saying that the lease itself says the

7    landlord's allowed to make repairs, but the tenant is not

8    allowed to make repairs, change oil, change tires, do anything

9    there.  What I'm suggesting is that the lot is a leased lot,

10   and it belongs to Mr. Marc.  Therefore, there needed to be

11   probable cause for the police to come upon that lot.

12           If the RV is a structure, now there is a curtilage.

13   And so now we have the *Collins* case, which the United States

14   Supreme Court recently ruled upon, saying a motorcycle

15   underneath a tarp in a curtilage, the officer can't just lift

16   up the tarp and look underneath it.  That is a search within

17   the curtilage.

18           Here we --

19           THE COURT:  Curtilage of a residence or curtilage of a

20   structure?

21           MR. BUSCHEL:  Curtilage of a residence in that

22   situation.

23           THE COURT:  What's the law on whether structures have

24   curtilage?  I thought a curtilage would just apply to a

25   residence.

1          MR. BUSCHEL:  I put in my memo -- I cite to the

2     Florida burglary statute.  It defines curtilage.  It applies to

3     both structure and dwelling.  And I believe that you can have a

4     curtilage to a structure as well.

5          The key here is -- the key here, the case law I cited

6     clearly says, if the car is not mobile, it becomes a -- it's a

7     structure.  We know an RV can be used for a structure.

8          THE COURT:  Well, is there a difference between what a

9     Florida statute defines as curtilage and what is curtilage for

10    the Fourth Amendment to the United States Constitution?

11         MR. BUSCHEL:  There could -- sure -- there could be.

12    I don't think there is.  I give it as something that we all --

13    that police, detectives, particularly state police detectives

14    would -- should consider when thinking about a structure and

15    curtilage.

16         The point is also --

17         THE COURT:  If a police officer thought that a

18    curtilage would only apply to a residence, why wouldn't the

19    good-faith exception to the search warrant requirement allow

20    this search?

21         MR. BUSCHEL:  I would also concede -- I'm not prepared

22    to concede that this wouldn't be a residence.  An RV is built

23    for that purpose, and the only reason they know that it wasn't

24    that purpose is once they opened the door and saw that it was

25    disheveled and that it would be uninhabitable.  Certainly

1    someone could sleep in there.  Granted, there's no running

2    water, et cetera.  I concede that.  But when you look at an RV,

3    when you look at this type of camper, you don't presume it

4    doesn't -- it isn't a residence; you presume the purpose of it

5    is that someone can sleep there overnight, and so there's an

6    expectation of privacy.

7             And if we get to the point where you're saying, well,

8    what's the good faith of the detective, the good faith default

9    should be, this a recreational vehicle that people sleep in;

10   therefore, I should presume it's a residence before I just

11   conclude it's uninhabitable to sleep in.

12            THE COURT:  Any further argument?

13            MR. BUSCHEL:  No.  Thank you, Judge.

14            THE COURT:  Ms. Tribuiani.

15            MS. TRIBUIANI:  Your Honor, Delson Marc's recreational

16   vehicle is not a home.  Marc was prevented by the terms of the

17   lease agreement, Government's Exhibit 1, from residing in his

18   RV.  Page 2 of that document, number 2 specifically states:

19            "Tenant agrees to use the premise exclusively for

20       the storage of customer-owned truck and/or trailer."

21            This area was not zoned residential; it was a

22   commercial area.

23            Further, Government's 1, page 2, number 3 of the lease

24   agreement states:

25            "Tenant understands and agrees that the use of

1      electricity is not allowed."

2              So not only did this structure not have running water,

3      it was also not permitted to have electricity.

4              THE COURT:  Isn't there a propane tank outside of it,

5      though?

6              MS. TRIBUIANI:  There may have been, your Honor.  I

7      don't know what it was used for.  And considering the

8      delapidated nature of the RV, it could have just been junk.  We

9      don't know whether it was filled or its purpose.

10             Now, the photographs of the RV, again, show its

11     condition.  It was used for storage.  And in this case, it was

12     used for Mr. Marc to store his firearm and his ammunition.

13             Because the RV is not a home, it does not have any

14     curtilage.  Mr. Marc did not have a right to exclude anybody

15     from that open accessible area.

16             The case that the defense cites, *Florida vs. Jardines*,

17     clearly applies to a home.  Again, an uninhabited RV is not a

18     home.

19             I also have some additional cases for Your Honor that

20     I'd like to pass up.  And defense counsel has a copy of these

21     as well.

22             Your Honor, beginning with the Supreme Court's

23     decision in *United States vs.* Dunn -- I'm sure the Court's

24     familiar with this case -- the Court came up with basically a

25     four-factor test to determine whether a particular area

1    qualifies as curtilage.

2         Number one, the proximity of the area claimed to be

3    curtilage to the home; two, whether the area is included within

4    an enclosure surrounding the home; three, the nature of the

5    uses to which the area is put; and, four, the steps taken by

6    the resident to protect the area from observation by people

7    passing by.

8         Again, the underlying premise of *Dunn* is that

9    curtilage applies to a home.  And even using Mr. Buschel's

10   definition of home or residence, the defense still does not

11   meet these four factors set forth in *Dunn*.  The testimony is

12   that Mr. Marc took absolutely no steps, no precautions to

13   protect the area surrounding his home from observation by

14   people passing by.  And, again, that's if the Court is inclined

15   to believe the defense's theory in this case.

16        Next, in *United States vs. Perilla* -- I understand

17   it's a district court case, but it gets to the very heart of

18   the question that the Court first asked.  And that is, the

19   Court determined that an area surrounding a business has never

20   been considered part of the business itself, and the concept of

21   curtilage is limited to the home.

22        So if the Court finds, again, that this RV is not a

23   home, that ends the inquiry.

24        Lastly, *United States vs. Wymer* is also a district

25   court case.  And this is a case that actually involved an RV.

1    And in this case, the testimony was that the defendant actually

2    lived in his RV for part of the year.  But, again, the Court

3    determined that a government intrusion that amounts to a

4    search, if conducted in or around a home, does not necessarily

5    constitute a search if conducted on commercial property.  There

6    is a diminished expectation of privacy in those activities.

7          And the Court, most importantly, went on to say that:

8          "Even assuming the RV was Wymer's primary

9       residence from August to December, Wymer made no

10      showing that the area immediately surrounding the RV

11      qualified as curtilage.  Living in an RV parked on

12      commercial premises does not automatically convert

13      some portion of those premises into an area so

14      intimately tied to the home itself that it should be

15      placed under the home's umbrella of the Fourth

16      Amendment protection."

17         Lastly, Your Honor, I just want to point out that

18   although the lease agreement lists some parking spaces for

19   Mr. Marc, the Court will notice that those spaces are not --

20   there's no dimensions given for those spaces.  What that, in

21   essence, means is that Doerr's Trailers is literally leasing

22   the space underneath a vehicle.  And if a vehicle parks a few

23   feet away from another vehicle, it's only because the driver

24   does not want to have an accident, not because there's any

25   curtilage surrounding a vehicle.

```
 1            Lastly, your Honor, again, I would rely for appellate
 2   purposes on Leon.  The officers here clearly acted in good
 3   faith.  They did everything they were supposed to do, including
 4   acquiring two different search warrants for the property.
 5            THE COURT:  Anything further, Mr. Buschel?
 6            MR. BUSCHEL:  If I may, just a few.
 7            The one point I do want to make to the Court is, even
 8   if there is no curtilage around the RV, the dog's invasive
 9   sniff into the RV is a search pursuant to Jardines.
10            THE COURT:  Well, I mean, isn't that the case on any
11   traffic stop, when a narcotics canine dog alerts to a car, the
12   dog is smelling the odors that are coming out of the car?  But
13   Jardines, it seems to me, you know, said that you can't use a
14   dog to smell what's coming out of a home.  I don't know that
15   you can't use a dog to smell what's coming out of a car.
16            MR. BUSCHEL:  A car is different, Judge.  You have the
17   automobile exception.  If the Court accepts that it's a car,
18   then police are allowed to have permission during a traffic
19   stop due to the movement of the car.
20            THE COURT:  The Carroll Doctrine only says they don't
21   have to get a warrant.  To me, there's no difference between a
22   search of a car based on the Carroll Doctrine and the search of
23   a car based on a search warrant.  They both require probable
24   cause.  And I don't see the difference between the Carroll
25   Doctrine basis for a search and a search that is based on a
```

29

1   canine alerting to a car that's put in a search warrant.  To

2   me, the *Carroll* Doctrine says because the car's movable, they

3   don't have to go get a warrant.

4          MR. BUSCHEL:  Right.

5          THE COURT:  But the same principle applies, and that

6   is, they have to have probable cause in either situation to

7   believe that there's a crime being committed or evidence of a

8   crime in there.

9          MR. BUSCHEL:  Right.  But, again, I think there's a

10  distinction between the car and a structure.  We know this must

11  be a structure.  You get some increased sense of expectation of

12  privacy in a structure or a residence versus a car.

13         THE COURT:  How about a homeless person that's living

14  in their car?  I mean, does that mean that because the homeless

15  person's living in the car, and that's their residence, that

16  police can't use a canine dog to effectuate a *Carroll* Doctrine

17  search?

18         MR. BUSCHEL:  I think it really does come down to that

19  the automobile -- whether some of this stuff is bleeding into

20  whether one has to get a warrant, and whether officers need to

21  get a warrant or not is determinative of that.  So if you were

22  living in a structure, in the shed, are they allowed to just

23  come up to someone's shed if there's reason to believe that

24  this shed is being used -- could be used for a residence, for

25  someone to stay there?

30

1          THE COURT:  Well, if it's a gray area, if the police

2    aren't sure whether or not they can do a *Carroll* Doctrine

3    search of a car that's being used by a homeless person, but in

4    an abundance of caution, they go and they get a search warrant

5    for it, why wouldn't *Leon* say that the magistrate was justified

6    in relying on the police officer's belief that that search was

7    okay?

8          MR. BUSCHEL:  I think because circum-- well, the -- if

9    the officers didn't express, articulate that there's a reason

10   to believe that a homeless person was living in their car and,

11   indeed, that was their residence, I might be having the same

12   conversation with the Court, saying they should have, even

13   though they went to get a warrant.

14         Here you have something by design, a recreational

15   vehicle, by design.  It's meant to house people for albeit

16   short periods of time or for trips.  And we have a particular

17   unique circumstance where the evidence is this RV didn't move.

18   And so the Supreme Court says we shouldn't make distinctions

19   based on monetary or financial, whether it's a glorious house

20   that has curtilage, a large curtilage, or whether somebody is

21   living in an RV.

22         THE COURT:  I mean, it would seem to me that the judge

23   in the Northern District of Ohio, if he denied the motion to

24   suppress on that RV, he would certainly deny it on this case,

25   don't you think?

1           MR. BUSCHEL:  Probably.  But we're in the Southern

2    District of Florida.

3           THE COURT:  It's only persuasive on me.

4           MR. BUSCHEL:  Yes.

5           THE COURT:  All right.  I'm going to deny the motion

6    to suppress.  I'll enter a written order as soon as I can get

7    around to it.

8           The defense filed a motion for *Brady* and *Giglio*.

9    What's the government's position on that?

10          MS. TRIBUIANI:  Your Honor, I'm aware of my *Giglio*

11   obligations.  And if, in fact, the CI does testify at trial, we

12   will certainly turn over all of the relevant material.

13          Now, the defense is asking for a laundry list of

14   items, including tax returns and other cases in which the CI

15   was involved.  They're not entitled to that information at all.

16   But I will certainly turn over and disclose any criminal

17   history for the CI, along with receipts of any payments or

18   instructions that he was given by his handlers in this case.

19          THE COURT:  Mr. Buschel?

20          MR. BUSCHEL:  That's sufficient, Judge.  I just wanted

21   to cover Mr. Marc's interests.

22          THE COURT:  All right.  So I'll grant the motion to

23   compel if the CI testifies.

24          Anything else we need to discuss?

25          MR. BUSCHEL:  Yes, Judge.

1           The Court yesterday indicated we may or may not be

2   going to trial on Monday based upon a civil case that you were

3   going to hear about this morning.

4           THE COURT:  They announced ready.  And what I told

5   them was that we would pick the jury on the criminal case

6   first, then pick a jury in the civil case, and then recess that

7   civil case until the next week.  So what I would plan on doing

8   is bringing in 46 or so jurors and picking a jury on Mr. Marc's

9   case, excuse that jury till Tuesday, and then we would resume

10  Mr. Marc's case on Tuesday, and then hopefully finish it next

11  week.  And I'll have the civil jury come back -- normally it

12  would be Monday, but Monday's a holiday, so come back the next

13  Tuesday to finish their trial.

14          So it really doesn't impact you at all, because the

15  jury that is being selected for Mr. Marc won't even know

16  anything about the civil case.  They may know that when we get

17  done with the criminal case, they're going to -- the remnants

18  are going to stick around and get picked for the civil case,

19  but the 12 jurors and the two alternates on Mr. Marc's case

20  will be excused until the next day.

21          So that's my preference as to how we handle it.  And

22  then that kind of gets the civil case's foot in the door, so if

23  there's another criminal case next week, then they get to

24  finish their case first before the criminal case goes.

25  Otherwise, the criminal case could bump them.

1          Any other questions?

2          MS. TRIBUIANI:  Your Honor, as a housekeeping matter,

3  I've got a proposed letter that allows my agents to bring in

4  the firearm and ammunition and drugs.  May I pass that up to

5  the Court?

6          THE COURT:  Okay.

7          And, Mr. Buschel, did you have a chance to talk

8  Mr. Marc to see if he wants to have the challenges at sidebar

9  without him being present or the challenges in open court so he

10  can hear what's going on?

11          MR. BUSCHEL:  I haven't, Judge, and I apologize.

12  We'll see him, I guess this evening, since that's when I'm told

13  he'll be transferred back to his facility in Pompano.

14          THE COURT:  All right.  So just let me know Monday.

15          And what do we have Monday?  We've got two --

16          ROOM CLERK:  Just the change of plea, if it goes.  Two

17  changes of plea on Monday at nine.

18          THE COURT:  Right.

19          I asked the civil lawyers to come at nine o'clock.

20  I've got a change of plea that's set for nine o'clock on

21  Monday.  But the defense attorney's in trial in Ft. Pierce in

22  front of Judge Cohn.  And I talked to Judge Cohn yesterday at

23  the magistrate's investiture ceremony, and he doesn't know for

24  sure whether the case is going to finish today.

25          So if Judge Cohn's Ft. Pierce case doesn't finish

1  today, then they're going to finish on Monday, and the lawyer

2  won't be here, so I won't be able to do the change of plea on

3  Monday.

4          So what I told the civil lawyers, what I'm telling you

5  guys, is come at nine o'clock, and if Judge Cohn finished the

6  case, then I'll be taking the change of plea for half an hour.

7  We'll start at 9:30.  If Judge Cohn didn't finish the case,

8  then the lawyer's in Ft. Pierce, and I'll take the change of

9  plea on Tuesday, and we'll start at nine o'clock.

10          MS. TRIBUIANI:  Yes, sir.

11          THE COURT:  Anything else we need to discuss?

12          MR. BUSCHEL:  No.  Thank you, Judge.

13          THE COURT:  Let me go ahead and sign this letter for

14  Ms. Tribuiani.

15          MS. TRIBUIANI:  So, Your Honor, just to confirm then,

16  we don't need to have any witnesses here on Monday.  We will

17  start on Tuesday.

18          THE COURT:  Correct.

19          MS. TRIBUIANI:  All right.

20          THE COURT:  And that assumes that the civil case

21  doesn't settle this afternoon.  But I don't think they're going

22  to settle, so I think we're safe in assuming that.

23          And we'll be in recess.

24          ROOM CLERK:  All rise.

25          *(The Judge exited the courtroom)*

```
 1              (Proceedings concluded at 11:43 a.m.)

 2                        -  -  -  -  -

 3

 4

 5

 6                     INDEX OF WITNESSES

 7   GOVERNMENT'S WITNESS                        PAGE

 8   Corey Oliver
     Direct by Ms. Tribuiani                      4
 9   Cross by Mr. Buschel                         15
     Redirect by Ms. Tribuiani                    17
10

11                        -  -  -  -  -

12                     INDEX OF EXHIBITS

13   GOVERNMENT'S EXHIBITS            MARKED    ADMITTED

14   1                                  3           4
     2                                  8           8
15   3                                 10          10
     4A through 4Q                     10          10
16

17                        -  -  -  -  -

18              C E R T I F I C A T E

19       I hereby certify that pursuant to Section 753,

20   Title 28, United States Code, the foregoing is a true and

21   correct transcript from the record of proceedings in the

22   above-entitled matter.

23
         /s/Francine C. Salopek                 7-21-2022
24   Francine C. Salopek, RMR-CRR              Date
     Official Court Reporter
25
```

MR. BUSCHEL: [26]
MR. PARNOFIELLO: [1]  3/9
MS. TRIBUIANI: [20]
ROOM CLERK: [4]  4/4 4/6 33/16 34/24
THE COURT: [55]
THE DEFENDANT: [11]
THE WITNESS: [4]  4/7 4/10 11/1 18/19

**/**

/s/Francine [1]  35/23

**1**

10 [4]  35/15 35/15 35/15 35/15
100 [1]  2/9
10:59 [2]  1/8 3/1
11:43 [1]  35/1
12 [2]  17/16 32/19
12th [1]  5/17
1300 [1]  2/9
13th [4]  4/20 5/9 5/14 5/17
1440 hours [1]  8/25
15 [1]  35/9
17 [1]  35/9
18-80153-CR-WPD [1]  1/4

**2**

2018 [3]  1/7 3/1 4/20
2022 [1]  35/23
207 [1]  2/12
28 [1]  35/20
299 [1]  2/12

**3**

301-3276 [1]  2/13
305 [1]  2/13
3276 [1]  2/11
33301 [1]  2/13
33394 [1]  2/10
33401 [2]  2/4 2/7
3rd [1]  2/9

**4**

40 [1]  9/18
400 [1]  2/4
401 [1]  2/6
46 [1]  32/8
4A [5]  10/19 10/21 11/4 11/6 35/15
4B [1]  11/10
4C [1]  11/12
4D [1]  11/18
4E [1]  11/21
4F [1]  11/25
4G [2]  12/4 12/8
4H [1]  12/12
4I [2]  12/15 12/20
4J [1]  12/23
4K [1]  13/7
4L [1]  13/10
4M [1]  13/13
4N [1]  13/16
4O [1]  13/19

4P [1]  13/21
4Q [4]  10/19 10/21 14/1 35/15

**5**

500 [1]  2/3

**7**

7-21-2022 [1]  35/23
753 [1]  35/19
759 [1]  5/1

**9**

9:30 [1]  34/7

**A**

a.m [3]  1/8 3/1 35/1
above [2]  13/25 35/22
above-entitled [1]  35/22
absolutely [1]  26/12
abundance [1]  30/4
abundantly [1]  21/19
accepts [1]  28/17
access [6]  6/17 6/20 7/24 8/1 9/8 12/2
accessible [4]  5/22 6/15 7/5 25/15
accessories [1]  9/20
accident [1]  27/24
according [1]  22/3
acquiring [1]  28/4
acted [1]  28/2
activities [1]  27/6
admitted [5]  4/1 8/19 10/10 10/25 35/13
advice [2]  19/21 19/22
affidavit [3]  17/13 21/4 21/20
afternoon [1]  34/21
Agent [4]  5/5 5/6 17/6 17/22
Agent Combs [4]  5/5 5/6 17/6 17/22
agents [2]  5/4 33/3
agree [4]  16/4 16/6 16/7 20/19
agreement [6]  3/19 15/24 21/22 24/17 24/24 27/18
agrees [2]  24/19 24/25
air [2]  17/14 18/7
albeit [1]  30/15
alert [2]  8/7 18/4
alerting [1]  29/1
alerts [1]  28/11
allow [1]  23/6
allowed [6]  22/5 22/7 22/8 25/1 28/18 29/22
allows [1]  33/3
alone [1]  17/1
alternates [1]  32/19
although [1]  27/18
Amendment [2]  23/10 27/16
AMERICA [1]  1/6
ammunition [7]  9/19 9/21 12/19 13/12 13/18 25/12 33/4
amounts [1]  27/3
announce [1]  3/5
announced [1]  32/4
answer [3]  16/24 20/2 20/3
apologize [1]  33/11
appearances [2]  2/1 3/5
appellate [1]  28/1

application [1]  17/3
applied [3]  8/23 9/24 10/14
applies [4]  23/2 25/17 26/9 29/5
apply [3]  8/10 22/24 23/18
apprehended [1]  5/11
approach [1]  6/23
approximately [1]  9/18
area [27]
areas [1]  6/14
aren't [1]  30/2
argument [3]  18/24 20/22 24/12
arrested [2]  5/13 5/17
articulate [1]  30/9
assigned [1]  18/7
assignment [4]  4/18 5/8 5/16 5/17
Assistant [1]  2/2
assisted [1]  5/4
assisting [1]  9/13
assumes [1]  34/20
assuming [2]  27/8 34/22
Astro [1]  11/7
Attorney [1]  2/2
attorney's [3]  2/3 2/6 33/21
audible [1]  17/23
August [1]  27/9
Australian [1]  2/3
automatically [1]  27/12
automobile [2]  28/17 29/19
Avenue [2]  2/3 2/9
aware [2]  16/10 31/10

**B**

bag [8]
baggies [1]  14/4
baking [1]  13/5
basis [1]  28/25
bathroom [1]  14/10
Beach [4]  2/4 2/7 4/14 4/15
becomes [1]  23/6
began [5]  9/5 9/12 17/21 17/25 21/13
begin [2]  9/2 18/7
beginning [1]  25/22
behavior [1]  17/22
belief [1]  30/6
believe [7]  14/5 16/14 23/3 26/15 29/7 29/23 30/10
belongs [1]  22/10
benefit [1]  19/20
Benoist [1]  5/1
black [1]  9/17
bleeding [1]  29/19
Blvd [1]  2/12
boarded [2]  7/15 12/21
bottom [4]  17/16 17/24 18/6 21/11
bowl [1]  14/3
box [1]  13/5
bracket [2]  18/1 21/13
Brady [1]  31/8
Braswell [1]  15/17
breached [1]  11/23
Broward [1]  2/12
built [1]  23/22
bump [1]  32/25
burglary [1]  23/2
Buschel [10]

**B**

Buschel's [1]  26/9
business [4]  6/4 7/2 26/19 26/20

**C**

cabin [2]  16/20 17/21
cabinet [3]  9/14 12/17 12/25
call [2]  3/16 18/21
calls [1]  4/2
camera [1]  16/10
camper [3]  18/1 21/13 24/3
canine [7]  5/7 8/5 17/1 17/1 28/11
 29/1 29/16
capsules [1]  9/19
car [17]
car's [1]  29/2
Carroll [6]  28/20 28/22 28/24 29/2
 29/16 30/2
case's [1]  32/22
cause [5]  21/17 21/18 22/11 28/24
 29/6
caution [1]  30/4
ceremony [1]  33/23
certified [3]  5/7 8/5 16/25
certify [1]  35/19
cetera [1]  24/2
challenges [2]  33/8 33/9
chance [1]  33/7
check [1]  6/1
CI [4]  31/11 31/14 31/17 31/23
cigar [1]  9/18
circum [1]  30/8
circumstance [1]  30/17
cite [1]  23/1
cited [1]  23/5
cites [1]  25/16
civil [10]
claimed [1]  26/2
clear [4]  12/8 14/4 17/12 21/19
client [3]  19/3 19/8 20/25
close [2]  13/17 13/20
closer [1]  13/11
Code [1]  35/20
Cohn [4]  33/22 33/22 34/5 34/7
Cohn's [1]  33/25
Collins [1]  22/13
colloquy [1]  19/5
Combs [5]  5/5 5/6 8/5 17/6 17/22
commercial [3]  24/22 27/5 27/12
committed [1]  29/7
compartment [1]  13/22
compel [1]  31/23
complain [1]  20/7
composite [1]  10/19
computer [1]  1/24
concede [3]  23/21 23/22 24/2
concept [1]  26/20
conclude [1]  24/11
concluded [1]  35/1
concrete [1]  6/14
condition [2]  7/12 25/11
conduct [2]  5/18 9/5
conducted [2]  27/4 27/5
conducting [2]  4/22 5/10

confirm [1]  34/15
consistent [1]  14/4
constitute [1]  27/5
Constitution [1]  23/10
constitutional [3]  19/1 19/10 19/13
contained [4]  9/18 13/11 13/14 13/17
containers [1]  6/6
conversation [1]  30/12
convert [1]  27/12
copy [1]  25/20
Corey [4]  4/3 4/5 4/10 35/8
corners [1]  21/4
counsel [7]  3/5 10/3 14/21 19/2 19/7
 20/24 25/20
County [2]  4/14 4/15
court [25]
Court's [2]  25/22 25/23
courtroom [3]  3/2 3/11 34/25
cover [1]  31/21
CR [1]  1/4
crime [2]  29/7 29/8
crimes [1]  4/19
criminal [6]  31/16 32/5 32/17 32/23
 32/24 32/25
critical [1]  21/15
cross [5]  14/17 14/23 14/25 21/9 35/9
cross-examination [4]  14/17 14/23
 14/25 21/9
CRR [2]  2/11 35/24
curtilage [24]
customer [1]  24/20
customer-owned [1]  24/20

**D**

Date [1]  35/24
December [1]  27/9
decide [1]  20/10
decided [2]  20/5 20/8
decision [3]  19/24 19/25 25/23
default [1]  24/8
defendant [4]  1/10 2/8 3/19 27/1
defendant's [1]  14/6
defense [6]  25/16 25/20 26/10 31/8
 31/13 33/21
defense's [1]  26/15
definition [1]  26/10
delapidated [1]  25/8
DELSON [11]
Delson's [1]  7/9
demarcated [1]  6/9
denied [2]  20/6 30/23
deny [3]  20/11 30/24 31/5
depict [1]  11/15
deploy [1]  8/5
Describe [2]  6/12 7/12
design [2]  30/14 30/15
despite [1]  6/16
detect [2]  8/8 18/5
detecting [2]  8/8 18/4
detective [8]
Detective Combs [1]  8/5
Detective Corey [2]  4/3 4/10
Detective Drummin [1]  5/5
Detective Hermanson [1]  9/12
detectives [2]  23/13 23/13

determinative [1]  29/21
determine [1]  25/25
determined [2]  26/19 27/3
difference [3]  23/8 28/21 28/24
dimensions [1]  27/20
diminished [1]  27/6
Dimitrouleas [1]  1/14
direct [3]  4/11 16/1 35/8
dirt [1]  6/13
disclose [1]  31/16
discovered [1]  9/21
discuss [2]  31/24 34/11
Discussion [5]  10/3 14/21 19/2 19/7
 20/24
disheveled [1]  23/25
distinction [1]  29/10
distinctions [1]  30/18
district [8]
division [2]  1/3 4/19
Dixie [1]  2/6
Doctrine [6]  28/20 28/22 28/25 29/2
 29/16 30/2
document [1]  24/18
Doerr's [8]
dog [16]
dog's [1]  28/8
door [18]
doors [1]  12/17
drive [1]  16/2
driver [2]  13/22 27/23
drugs [1]  33/4
Drummin [1]  5/5
Dunn [3]  25/23 26/8 26/11
dwelling [1]  23/3

**E**

east [2]  7/15 11/14
effectuate [1]  29/15
electricity [2]  25/1 25/3
enclosure [2]  7/7 26/4
enter [1]  31/6
entitled [2]  31/15 35/22
entrance [2]  16/20 17/21
entry [4]  9/7 11/23 12/1 13/24
Esq [1]  2/8
essence [1]  27/21
et [1]  24/2
et cetera [1]  24/2
evening [1]  33/12
evidence [11]
examination [6]  4/11 14/17 14/23
 14/25 17/10 21/9
exception [2]  23/19 28/17
exclude [1]  25/14
exclusively [1]  24/19
excuse [3]  5/16 19/9 32/9
excused [3]  18/18 18/20 32/20
executed [1]  3/19
exhibit [15]
Exhibit 1 [2]  3/23 24/17
Exhibit 2 [1]  8/14
Exhibit 3 [2]  10/5 10/12
Exhibit 4A [1]  10/19
EXHIBITS [2]  35/12 35/13
exited [1]  34/25

**E**

expectation [3]  24/6 27/6 29/11
expired [1]  16/8
exposed [1]  7/4
express [1]  30/9
exterior [5]  7/12 7/23 10/16 18/14
 18/15

**F**

facility [3]  5/2 5/18 33/13
facing [1]  11/14
fact [1]  31/11
factor [1]  25/25
factors [1]  26/11
faith [4]  23/19 24/8 24/8 28/3
Farms [1]  5/1
features [1]  6/10
filed [1]  31/8
filled [1]  25/9
final [1]  18/3
financial [1]  30/19
finish [7]  32/10 32/13 32/24 33/24
 33/25 34/1 34/7
finished [1]  34/5
firearm [7]  9/17 9/21 12/18 13/12
 13/18 25/12 33/4
firearms [2]  9/20 10/2
floor [2]  12/7 12/9
FLORIDA [10]
Florida vs. Jardines [1]  25/16
follow-up [3]  4/22 5/10 5/18
foot [1]  32/22
foregoing [1]  35/20
forgot [1]  15/18
FORT [4]  1/3 1/7 2/10 2/13
four-factor [1]  25/25
Fourth [2]  23/10 27/15
Francine [3]  2/11 35/23 35/24
frantic [2]  17/25 21/12
free [2]  17/12 18/7
FRIDAY [1]  2/15
front [6]  8/21 10/12 11/19 11/19 12/6
 33/22
Ft. [3]  33/21 33/25 34/8
Ft. Pierce [3]  33/21 33/25 34/8
furthering [1]  9/5

**G**

gain [2]  6/17 12/2
gang [2]  4/19 4/20
general [2]  9/10 17/1
gets [2]  26/17 32/22
Gibbons [1]  2/8
Giglio [2]  31/8 31/10
gives [1]  19/20
glorious [1]  30/19
gloves [2]  13/1 14/5
good-faith [1]  23/19
gotta [1]  17/19
government [8]
government's [21]
Government's 1 [1]  24/23
Government's 2 [1]  8/21
Government's 3 [1]  17/17

grant [1]  31/22
granted [4]  20/13 21/2 21/25 24/1
grass [1]  7/17
gray [1]  30/1
green [7]  9/15 9/16 12/18 12/18 13/11
 13/14 13/17
growing [1]  7/17

**H**

half [1]  34/6
hand [2]  4/4 20/10
handgun [1]  9/17
handle [2]  16/25 32/21
handler [1]  5/7
handlers [1]  31/18
he'll [1]  33/13
hear [3]  6/8 32/3 33/10
heard [2]  17/23 20/12
Hearing [1]  1/13
heart [1]  26/17
hereby [1]  35/11
Hermanson [1]  9/12
heroin [1]  9/19
Highway [1]  2/6
history [1]  31/17
holiday [1]  32/12
home [14]
home's [1]  27/15
homeless [4]  29/13 29/14 30/3 30/10
homemade [1]  12/24
Honor [17]
Honorable [1]  1/14
hopefully [1]  32/10
hour [1]  34/6
hours [1]  8/25
house [2]  30/15 30/19
housekeeping [1]  33/2
hum [1]  20/1

**I**

I'd [1]  25/20
I'll [5]  31/6 31/22 32/11 34/6 34/8
I'm [13]
I've [2]  33/3 33/20
identification [4]  3/21 8/17 10/8 10/22
identified [2]  7/1 7/2
immediately [3]  7/9 9/14 27/10
impact [1]  32/14
inclined [1]  26/14
included [2]  9/17 26/3
including [2]  28/3 31/14
increased [1]  29/11
indeed [1]  30/11
INDEX [2]  35/6 35/12
indicated [2]  17/2 32/1
indicating [2]  8/7 18/4
indication [1]  8/2
information [1]  31/15
initial [3]  10/1 12/1 15/22
inquiry [1]  26/23
inspection [2]  21/25 22/2
instructions [1]  31/18
interests [1]  31/21
interior [1]  10/16
intimately [1]  27/14

intrusion [1]  27/3
invasive [1]  28/8
investigation [5]  4/23 5/10 9/5 16/11
 16/16
investiture [1]  33/23
items [7]  7/3 9/16 9/23 13/15 15/23
 15/24 31/14

**J**

Jardines [3]  25/16 28/9 28/13
John [2]  2/5 3/7
judge [25]
Judge Cohn [4]  33/22 33/22 34/5 34/7
Judge Cohn's [1]  33/25
July [6]  4/20 5/9 5/14 5/16 5/17 5/17
July 12th [1]  5/17
July 13th [4]  4/20 5/9 5/14 5/17
junk [1]  25/8
jurors [2]  32/8 32/19
jury [6]  32/5 32/6 32/8 32/9 32/11
 32/15
justified [1]  30/5

**K**

Kaya [13]
key [2]  23/5 23/5
keys [4]  15/3 15/5 15/10 15/12
kitchen [1]  14/6

**L**

landlord [3]  15/16 21/25 21/25
landlord's [1]  22/7
large [1]  30/20
Lastly [3]  26/24 27/17 28/1
latex [1]  14/5
LAUDERDALE [4]  1/3 1/7 2/10 2/13
laundry [1]  31/13
law [4]  19/19 21/2 22/23 23/5
lawyer [2]  20/17 34/1
lawyer's [2]  19/19 34/8
lawyers [2]  33/19 34/4
lease [12]
leased [1]  22/9
leasing [1]  27/21
legal [1]  19/20
Leon [2]  28/2 30/5
letter [2]  33/3 34/13
license [3]  7/19 11/15 16/8
life [1]  19/21
lift [1]  22/15
liking [1]  6/5
limited [1]  26/21
lines [1]  6/9
list [1]  31/13
lists [1]  27/18
literally [1]  27/21
location [3]  5/12 5/19 9/24
lousy [1]  20/6

**M**

magazines [1]  9/19
magistrate [1]  30/5
magistrate's [1]  33/23
main [2]  9/9 13/23
management [2]  6/1 7/2

**M**

manager [5]  6/17 6/20 15/12 15/16
 22/1
MARC [17]
Marc's [13]
marked [6]  3/20 6/9 8/16 10/7 10/21
 35/13
material [1]  31/12
materials [1]  14/3
matter [3]  21/2 33/2 35/22
mean [4]  28/10 29/14 29/14 30/22
Meaning [1]  16/4
means [1]  27/21
meant [1]  30/15
mechanical [1]  1/24
meet [1]  26/11
memo [1]  23/1
memory [1]  17/13
metal [1]  14/3
mobile [1]  23/6
moment [3]  14/16 14/18 14/19
Monday [9]
Monday's [1]  32/12
monetary [1]  30/19
morning [4]  3/8 3/9 3/10 32/3
motion [11]
motorcycle [1]  22/14
movable [3]  21/5 21/6 29/2
move [3]  10/4 10/18 30/17
movement [1]  28/19
MR [2]  15/2 35/9
Mr. [21]
Mr. Buschel [5]  18/23 20/22 28/5
 31/19 33/7
Mr. Buschel's [1]  26/9
Mr. Marc [10]
Mr. Marc's [5]  15/23 31/21 32/8 32/10
 32/19
MS [7]  4/12 8/20 10/11 11/2 17/11
 35/8 35/9
Ms. [2]  24/14 34/14
Ms. Tribuiani [2]  24/14 34/14

**N**

name [4]  4/8 4/9 15/16 15/18
named [1]  5/2
narcotics [7]  12/19 13/12 13/18 14/4
 16/25 16/25 28/11
nature [2]  25/8 26/4
nine [5]  33/17 33/19 33/20 34/5 34/9
nine o'clock [4]  33/19 33/20 34/5 34/9
normally [1]  32/11
north [1]  7/18
Northern [1]  30/23
nose [4]  17/2 17/24 18/2 21/11
notice [1]  27/19
November [2]  1/7 3/1
number [11]
number 2 [1]  24/18
number 3 [1]  24/23
Numbers [1]  10/21

**O**

o'clock [4]  33/19 33/20 34/5 34/9

**O-L-I-V-E-R** [1]  4/10
objection [2]  10/23 19/5
obligations [1]  31/11
observation [2]  26/6 26/13
observed [1]  17/22
occupation [1]  4/13
odor [1]  8/8
odors [2]  18/4 28/12
offer [1]  8/14
offering [1]  3/18
Office [4]  2/3 2/6 4/14 4/16
officer [2]  22/15 23/17
officer's [1]  30/6
officers [3]  28/2 29/20 30/9
Official [2]  2/11 35/24
Oh [3]  14/20 16/7 20/12
Ohio [1]  30/23
oil [1]  22/8
Oliver [4]  4/3 4/5 4/10 35/8
one's [1]  22/3
open [17]
operate [1]  16/6
order [2]  6/17 31/6
overgrown [1]  7/14
overnight [1]  24/5
owned [2]  21/23 24/20

**P**

P.A [1]  2/8
packaging [3]  12/25 13/3 14/3
page [5]  17/16 18/6 24/18 24/23 35/7
page 2 [2]  24/18 24/23
page 5 [2]  17/16 18/6
Palm [4]  2/4 2/7 4/14 4/15
paperwork [1]  15/18
parked [1]  27/11
parking [5]  6/5 6/8 6/8 18/8 27/18
parks [1]  27/22
Parnofiello [2]  2/5 3/7
part [3]  16/15 26/20 27/2
partial [1]  12/20
partially [1]  11/17
pass [2]  25/20 33/4
passing [2]  26/7 26/14
payments [1]  31/17
people [5]  6/1 24/9 26/6 26/14 30/15
Perilla [1]  26/16
periods [1]  30/16
permission [3]  6/17 6/20 28/18
permitted [1]  25/3
person [3]  29/13 30/3 30/10
person's [1]  29/15
persuasive [1]  31/3
phonetic [1]  15/17
photograph [7]  11/4 11/6 11/15 12/8
 12/10 12/13 12/16
photographs [3]  10/15 11/3 25/10
pick [2]  32/5 32/6
picked [1]  32/18
picking [1]  32/5
picture [2]  11/22 13/22
Pierce [3]  33/21 33/25 34/8
Plaintiff [1]  1/7
plan [1]  32/7
plants [1]  7/17

plate [4]  7/19 11/15 13/2 16/8
plea [6]  33/16 33/17 33/20 34/2 34/6
 34/9
point [4]  23/16 24/7 27/17 28/7
pole [1]  16/10
police [8]
Pompano [1]  33/13
portion [3]  12/16 16/14 27/13
position [1]  31/9
pouch [2]  9/18 9/18
powder [1]  13/4
precautions [1]  26/12
preference [1]  32/21
premise [2]  24/19 26/8
premises [2]  27/12 27/13
prepared [1]  23/21
present [2]  22/1 33/9
presume [3]  24/3 24/4 24/10
prevented [1]  24/16
pried [2]  15/8 15/9
primary [1]  27/8
principle [1]  29/5
privacy [3]  24/6 27/6 29/12
probable [5]  21/17 21/18 22/11 28/23
 29/6
proceed [1]  3/13
proceedings [3]  1/24 35/1 35/21
produced [1]  1/24
propane [1]  25/4
property [4]  6/17 15/24 27/5 28/4
proposed [1]  33/3
protect [2]  26/6 26/13
protection [1]  27/16
prove [1]  21/22
provide [1]  15/12
proximity [1]  26/2
pry [2]  9/8 9/9
public [5]  5/20 5/22 5/24 6/16 7/5
purposes [1]  28/2
pursuant [3]  16/11 28/9 35/19
pushed [2]  17/24 21/11

**Q**

qualified [1]  27/11
qualifies [1]  26/1
question [2]  16/24 26/18
questions [1]  33/1
quote [1]  16/20
quote/unquote [1]  16/20

**R**

raise [1]  4/4
ready [2]  3/13 32/4
rear [1]  11/13
reasons [2]  19/16 21/2
rec [1]  12/5
receipts [1]  31/17
receive [2]  8/10 8/24
received [5]  3/25 8/18 9/2 10/9 10/24
recently [1]  22/14
recess [2]  32/6 34/23
record [8]
recorded [1]  1/24
recreational [15]
Redirect [3]  17/9 17/10 35/9

**R**

refresh [1]  17/13
relayed [1]  17/6
relevant [1]  31/12
rely [1]  28/1
relying [1]  30/6
remember [1]  15/16
remnants [1]  32/17
repairs [5]  22/3 22/3 22/5 22/7 22/8
Reporter [3]  2/11 2/11 35/24
required [1]  6/1
requirement [1]  23/19
residence [13]
resident [1]  26/6
residential [1]  24/21
residing [1]  24/17
respiratory [1]  17/23
response [3]  16/5 17/15 18/3
rest [2]  7/10 12/21
rests [1]  18/22
result [1]  8/10
resume [1]  32/9
returns [1]  31/14
Rinku [2]  2/2 3/7
rise [1]  34/24
RMR [2]  2/11 35/24
RMR-CRR [1]  35/24
Road [1]  5/1
Robert [2]  2/8 3/10
rocks [1]  6/14
Room [1]  2/12
ruled [1]  22/14
RV [50]

**S**

S.E [1]  2/9
safe [1]  34/22
sales [1]  14/4
Salopek [3]  2/11 35/23 35/24
saw [1]  23/24
scale [1]  14/5
school [1]  19/19
search [40]
searching [2]  9/6 9/12
seats [1]  13/25
second [4]  10/5 10/14 17/16 17/18
Section [1]  35/19
selected [1]  32/15
sense [1]  29/11
sentence [1]  18/6
settle [2]  34/21 34/22
shed [3]  29/22 29/23 29/24
shelf [3]  9/15 13/25 14/2
shell [1]  6/14
Sheriff's [2]  4/14 4/15
shopping [2]  9/15 9/16
short [1]  30/16
shrubbery [1]  7/14
sic [1]  21/5
side [6]  7/14 7/15 7/18 9/8 17/24
  21/12
sidebar [1]  33/8
sides [1]  3/13
sign [1]  34/13

signed [2]  8/25 9/4
situation [2]  22/22 29/6
sleep [4]  24/1 24/5 24/9 24/11
smell [4]  16/22 17/5 28/14 28/15
smelling [2]  21/15 28/12
sniff [7]  16/17 16/23 17/14 18/10 21/3
  21/18 28/9
sniffed [3]  16/20 17/25 21/12
sniffing [3]  17/21 18/7 18/13
soda [1]  13/5
someone's [1]  29/23
soon [4]  9/12 9/23 12/2 31/6
south [1]  7/14
SOUTHERN [2]  1/2 31/1
space [5]  5/24 6/2 6/18 6/21 27/22
spaces [3]  27/18 27/19 27/20
spell [1]  4/8
spot [1]  6/8
spots [2]  6/9 18/8
spun [1]  18/2
standing [1]  21/22
starting [1]  11/3
state [4]  2/6 4/8 8/10 23/13
states [15]
States vs [1]  3/4
States vs. Dunn [1]  25/23
States vs. Perilla [1]  26/16
States vs. Wymer [1]  26/24
station [1]  12/25
statute [2]  23/2 23/9
stay [1]  29/25
stenography [1]  1/24
step [1]  18/17
steps [2]  26/5 26/12
stick [1]  32/18
stipulation [4]  3/17 8/13 10/5 10/20
stop [3]  22/2 28/11 28/19
storage [6]  5/1 5/18 6/5 6/5 24/20
  25/11
store [1]  25/12
stove [1]  14/5
strategy [2]  19/16 20/19
structure [14]
structures [2]  18/11 22/23
stuck [1]  19/25
stuff [1]  29/19
substance [1]  13/3
sufficient [1]  31/20
suggesting [1]  22/9
Suite [2]  2/4 2/9
support [1]  21/19
suppress [9]
Supreme [3]  22/14 25/22 30/18
surrounding [8]
suspected [6]  9/19 12/19 13/2 13/3
  13/12 13/18
SWORN [1]  4/5

**T**

table [1]  12/24
tag [1]  16/8
take [1]  34/8
taken [3]  10/16 12/10 26/5
talk [3]  20/17 21/8 33/7
talked [2]  15/25 33/22

talking [2]  11/8 17/20
tank [1]  25/4
tarp [2]  22/15 22/16
tax [1]  31/14
tell [2]  7/23 11/4
telling [1]  34/4
tenant [4]  22/4 22/7 24/19 24/25
tender [1]  14/22
terms [2]  9/10 24/16
test [1]  25/25
testified [2]  6/15 16/1
testifies [1]  31/23
testify [7]  19/1 19/11 19/14 20/5 20/8
  20/11 31/11
testifying [2]  19/17 20/20
testimony [4]  20/13 21/5 26/11 27/1
Thank [10]
theory [1]  26/15
think [12]
thinking [1]  23/14
thought [3]  14/20 22/24 23/17
tied [1]  27/14
till [1]  32/9
time [7]  5/4 5/5 8/14 8/24 10/4 20/16
  30/16
tires [1]  22/8
Title [1]  35/20
toiletries [1]  14/12
top [4]  9/15 12/16 14/2 14/2
tow [2]  6/18 6/21
towards [3]  8/7 12/20 18/11
tractor [1]  4/23
tractor-trailer [1]  4/23
traffic [2]  28/11 28/18
trailer [2]  4/23 24/20
trailers [8]
trained [2]  8/8 18/5
transcript [3]  1/13 1/24 35/21
transferred [1]  33/13
trash [1]  12/9
trial [4]  31/11 32/2 32/13 33/21
Tribuiani [11]
trips [1]  30/16
truck [1]  24/20
true [1]  35/20
Tuesday [5]  32/9 32/10 32/13 34/9
  34/17
Twelve [1]  4/17
Twelve years [1]  4/17

**U**

U.S [1]  2/2
uhm [2]  9/5 13/22
Um [1]  20/1
Um-hum [1]  20/1
umbrella [1]  27/15
underlying [1]  26/8
underneath [4]  12/25 22/15 22/16
  27/22
understand [8]
understands [3]  18/25 19/4 24/25
uninhabitable [2]  23/25 24/11
uninhabited [1]  25/17
unique [1]  30/17
unit [2]  4/19 4/20

41

U

Unite [1]  2/3
UNITED [12]
unknown [2]  13/2 13/3
unquote [1]  16/20
unrefutable [1]  21/5
up-close [1]  13/17
us [1]  11/4
utilized [2]  7/13 7/16

V

van [4]  11/7 18/2 21/14 21/16
vehicle [20]
vehicles [1]  6/6
verified [2]  7/2 15/23
versus [1]  29/12
view [6]  12/1 13/8 13/11 13/14 13/17
 13/20
VIN [1]  7/21
violent [1]  4/19
vs. [4]  25/16 25/23 26/16 26/24

W

Wait [1]  17/19
walk [5]  5/24 9/14 12/2 12/6 15/19
walked [1]  6/2
warrant [27]
warrants [1]  28/4
water [4]  7/24 8/1 24/2 25/2
weapon [1]  9/20
week [3]  32/7 32/11 32/23
West [2]  2/4 2/7
white [10]
William [1]  1/14
window [2]  12/21 12/21
windows [1]  7/15
witness [7]  3/16 4/5 14/22 18/20
 18/21 20/6 35/7
witnesses [2]  34/16 35/6
work [3]  4/14 4/19 16/1
WPD [1]  1/4
written [1]  31/6
Wymer [2]  26/24 27/9
Wymer's [1]  27/8

Y

yard [2]  6/18 6/21
you'd [1]  12/6

Z

zoned [1]  24/21